JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 616-1246
Fax: (202) 305-7000
Email: jeffrey.robins @usdoj.gov
JAMES J. WALKER
Trial Attorney
*Counsel for Official Capacity Federal Agency Defendants*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA SARAHI RUEDA VIDAL, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Case No. 2:18-cv-9276- DMG-PLA <br><br> **DEFENDANTS' NOTICE OF MOTION & MEORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS COMPLAINT** <br><br> **Judge**: Hon. Dolly M. Gee <br> **Courtroom**: 8C <br> **Hearing**: Friday, April 12, 2019 <br> **Time**: 9:30am |

2:18-cv-9276- DMG-PLA

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................2

    I.     Overview of Deferred Action.................................................2

    II.    Factual Background..............................................................9

ARGUMENT ..................................................................................................10

    I.     Standard of Review .......................................................... 10

          Motion to Dismiss under Rule 12(b)(1) ......................................... 10

          Motion to Dismiss under Rule 12(b)(6) ......................................... 11

    II.    The Court lacks jurisdiction over Plaintiff's challenge to the discretionary denial of her DACA request ..................................................... 12

          A.    The Court lacks jurisdiction under 8 U.S.C. § 1252(g) .................. 13

          B.    Judicial review of Plaintiffs' claims is also barred under 5 U.S.C. § 701(a)(2), because the discretionary denial of DACA plainly invokes the agency's prosecutorial discretion .........................................14

    III.   In the alternative, Plaintiff fails to state a claim regarding the process by which USCIS denied her request for DACA ......................................18

          A.    Regulations, the DACA SOP, and USCIS's Internal FAQs permit straight discretionray DACA denials .........................................18

          B.    There is no constitutionally protected interest in DACA...........20

          Plaintiff fails to state a cognizable retaliation claim under the APA ...................................................................... 21

    IV.   The Court lacks jurisdiction over Plaintiff's Count 8 – Declaratory Judgment ...........................................................................22

CONCLUSION..................................................................................23

1
2

# TABLE OF AUTHORITIES

## CASES

3
4

*Ariz. Dream Act Coal. v. Brewer,*
  757 F.3d 1053 (9th Cir. 2014) ..................................................................... 3

5
6

*Ariz. Dream Act Coal. v. Brewer,*
  855 F.3d 957 (9th Cir. 2017) ..................................................................... 13

7
8

*Arizona v. United States,*
  132 S. Ct. 2492 (2012) ............................................................................... 2

9
10

*Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015) ............................................................... 13, 15

11
12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................. 11

13
14

*Bd. of Regents of State Colleges v. Roth,*
  408 U.S. 564 (1972) ................................................................................. 20

15
16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................. 11

17
18

*Blantz v. Cal. Dep't of Corr. & Rehab.,*
  727 F.3d 917 (9th Cir. 2013) ..................................................................... 20

19
20

*Block v. Cmty. Nutrition Inst.,*
  467 U.S. 340 (1984) ............................................................................. 12, 13

21
22

*Botezatu v. INS,*
  195 F.3d 311 (7th Cir. 1999) ..................................................................... 14

23
24

*Carranza v. I.N.S.,*
  277 F.3d 65 (1st Cir. 2002) ....................................................................... 19

25
26

*Clegg v. Cult Awareness Network,*
  18 F.3d 752 (9th Cir. 1994) ....................................................................... 11

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Fabian-Lopez v. Holder*,
   No. 11-71513, 540 F. App'x 760 (9th Cir. Apr. 29, 2013) ............................................ 14

*Fiedler v. Clark*,
   714 F.2d 77 (9th Cir. 1983) ............................................................................................... 22

*Flores-Panso v. Asher*,
   No. C13-1923-TSZ, 2014 WL 1338073 (W.D. Wash. Apr. 2, 2014) .......................... 14

*Gerhart v. Lake Cnty., Mont.*,
   637 F.3d 1013 (9th Cir. 2011) .................................................................................. 20, 21

*Hartman v. Moore*,
   547 U.S. 250 (2006) ........................................................................................................... 21

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ................................................................................................. *passim*

*ICC v. Bhd. of Locomotive Eng'rs*,
   482 U.S. 270 (1987) ........................................................................................................... 15

*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) .......................................................................................... 22

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ........................................................................................................... 11

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ........................................................................................................... 14

*Mack v. South Bay Beer Distribs., Inc.*,
   798 F.2d 1279 (9th Cir. 1986) .......................................................................................... 12

*Mada-Luna v. Fitzpatrick*,
   813 F.2d 1006 (9th Cir. 1987) .......................................................................................... 19

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ............................................................................................ 12

iv

*Martinez v. Napolitano*,
    704 F.3d 620 (9th Cir. 2012) ..................................................................22

*Mendez-Garcia v. Lynch*,
    840 F.3d 655 (9th Cir. 2016) ..................................................................20

*Morales de Soto v. Lynch*,
    824 F.3d 822 (9th Cir. 2016) ............................................................12, 17

*Nicholas v. INS*,
    590 F.2d 802 (9th Cir. 1979) ............................................................16, 17

*Parks School of Bus., Inc. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) ..................................................................12

*Pasquini v. Morris*,
    700 F.2d 658 (11th Cir. 1983) ................................................................16

*Perales v. Casillas*,
    903 F.2d 1043 (5th Cir. 1990) ................................................................16

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
    908 F.3d 476 (9th Cir. 2018) ..................................................................14

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) .......................................................................*passim*

*Rodriguez v. Sessions*,
    No. 15-72487, 2017 WL 695192 (9th Cir. Feb. 22, 2017)........................14

*Romeiro de Silva v. Smith*,
    773 F.2d 1025 (9th Cir. 1985) ................................................................16

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ................................................................11

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir.1986) ..................................................................10

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) ......................................................................... 22

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ............................................................ 3

*Town of Castle Rock, Colo. V. Gonzales*,
    545 U.S. 756 (2005) ......................................................................... 20

*United States v. Armstrong*,
    517 U.S. 456 (1996) ................................................................. 15, 17

*United States v. Lee*,
    274 F.3d 485 (8th Cir. 2001) ..................................................... 16, 19

*Vasquez v. Aviles*,
    639 F. App'x 898 (3d Cir. 2016) ..................................................... 14

*Vilchiz-Soto v. Holder*,
    688 F.3d 642 (9th Cir. 2012) ........................................................... 14

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ......................................................... 11

*Wayte v. United States*,
    470 U.S. 598 (1985) ......................................................................... 15

*Whisnant v. United States*,
    400 F.3d 1177 (9th Cir. 2005) ......................................................... 11

## STATUTES

5 U.S.C. § 552(b)(7)(E) ........................................................................... 6

5 U.S.C. § 701(a) ................................................................................... 12

5 U.S.C. § 701(a)(1) .............................................................................. 12

5 U.S.C. § 701(a)(2) ......................................................................... 15, 16

8 U.S.C. § 1103(a)(1) .............................................................................. 2

8 U.S.C. § 1182(a)(6)(A)(i) ............................................................................. 2

8 U.S.C. § 1227(a)(1)(B) ................................................................................. 2

8 U.S.C. § 1252 ....................................................................................... 13, 23

8 U.S.C. § 1252(a)(5) ..................................................................................... 23

8 U.S.C. § 1252(b)(9) ..................................................................................... 23

8 U.S.C. § 1252(g) ............................................................................. 13, 14, 15

28 U.S.C. § 1361 ............................................................................................ 13

28 U.S.C. § 1651 ............................................................................................ 13

28 U.S.C. § 2241 ............................................................................................ 13

## REGULATIONS

8 C.F.R. § 1.3(a)(4)(vi) ..................................................................................... 7

8 C.F.R. § 103.2(b)(1) ...................................................................................... 7

8 C.F.R. § 103.2(b)(16) ........................................................................ 7, 8, 19

8 C.F.R. § 274a.12(c)(14) ............................................................................ 3, 7

8 C.F.R. § 287.3 ............................................................................................. 22

8 C.F.R. § 287.8 ............................................................................................. 22

## RULES

Federal Rule of Civil Procedure 12(b)(1) ....................................................... 1

Federal Rule of Civil Procedure 12(b)(6) ........................................... 1, 11, 12

2:18-cv-9276- DMG-PLA

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 12, 2019 9:30 a.m., or as soon thereafter as the parties may be heard, Defendants U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection, U.S. Border Patrol, Lee Francis Cissna and Kathy Baran, in their official capacities ("Federal Agency Defendants") will bring for hearing a motion to dismiss. The hearing will take place before the Dolly M. Gee in Courtroom 8C, 350 W 1st Street, Suite 4311 Los Angeles, CA, 90012.

This motion is based on the memorandum of points and authorities attached hereto, all pleadings, papers and files in this action, and such oral argument as may be presented at the hearing on the motion. This motion is also made following conferences between counsel for the Plaintiffs and Federal Agency Defendants pursuant to L.R. 7-3, which took place via telephone on February 26, 2019.

DATED: March 2, 2019                          Respectfully Submitted,

                                              JOSEPH H. HUNT
                                              Assistant Attorney General
                                              WILLIAM C. PEACHEY
                                              Director
                                              */s/ Jeffrey S. Robins*
                                              JEFFREY S. ROBINS
                                              Deputy Director
                                              United States Department of Justice
                                              Civil Division
                                              Office of Immigration Litigation
                                              District Court Section
                                              Washington, D.C. 20044
                                              Tel.: (202) 616-1246
                                              Fax: (202) 305-7000
                                              Email: jeffrey.robins @usdoj.gov
                                              JAMES J. WALKER
                                              Trial Attorney
                                              *Counsel for Federal Agency Defendants*

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Plaintiff Claudia Sarahi Rueda Vida ("Plaintiff") is challenging the decision of the U.S. Citizenship and Immigration Services ("USCIS") to deny her request for deferred action for childhood arrivals ("DACA"). *See* ECF Dkt. No. 1. Defendants U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection, U.S. Border Patrol, Lee Francis Cissna and Kathy Baran, in their official capacities (the "Federal Agency Defendants")[1] move the Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

Plaintiff's complaint alleges that Federal Agency Defendants' denial of her DACA request violated the APA, "the Fifth Amendment's guarantees of due process and equal protection," and was "in retaliation for political speech in violation of the First Amendment." ECF Dkt. No. 1 at 1. In her 181 paragraph complaint, Plaintiff reiterates and restates her claims in various formulations with several legal citations. Stated succinctly, Plaintiff alleges that Federal Agency Defendants violated the APA, First Amendment, and Fifth Amendment because: (1) she was not given notice and an opportunity to respond to USCIS's notice of denial, (2) USCIS failed to give her any explanation for its decision, and (3) the fact that USCIS departed from "DACA's binding procedures" and "USCIS's past practice" means that Federal Agency Defendants "violated the First Amendment's prohibition against relations for political speech and the Fifth Amendment's guarantee of equal protection." *Id*. at 4.

---

[1] Plaintiff is also asserting *Bivens* claims against individual federal defendants in their personal capacity. Undersigned counsel does not represent these individuals. This motion is only being filed by the Federal Agency Defendants, who are sued in their official capacity in Count Nos. 1 (Administrative Procedure Act, Arbitrary and Capricious Action), 2 (Administrative Procedure Act, Unconstitutional Action), and 8 (Declaratory Judgment, All Causes of Action).

1

Plaintiff's claims ultimately fail because they are based on selective citation to USCIS policy and guidance, ignore controlling Supreme Court and Ninth Circuit authorities that recognize USCIS's discretion over DACA determinations and lack of judicial review over those determinations, misapply authority addressing the process by which USCIS terminates an individual's DACA, and make conclusory and speculative allegations regarding the nature and context of USCIS's decision. Moreover, the agency guidance and records submitted in support of this motion demonstrate that Plaintiff has no legitimate entitlement to the process or DACA she ultimately seeks, and that USCIS's denial of Plaintiff's DACA was an unremarkable and permissible exercise of discretion.

Plaintiff's complaint challenges the Government's prosecutorial discretion authority in the form of deferred action, which this Court lacks jurisdiction to review. Accordingly, the Court should dismiss the complaint.  If the Court found jurisdiction to hear these challenges, dismissal would still be required because the complaint fails to state a claim on which relief can be granted.

## BACKGROUND

### I.   Overview of Deferred Action

The Immigration and Nationality Act ("INA") charges the Secretary of DHS "with the administration and enforcement" of the INA and "all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). Individuals are removable if, inter alia, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012); *see* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled . . . is inadmissible."); *id.* at § 1227(a)(1)(B) ("Any alien who is present in the United States in violation of this chapter or any other law of the United States . . . is deportable"). Removal is a civil, not criminal, matter. *Arizona*, 132 S. Ct. at 2499.

 The federal government cannot practicably remove every removable alien. As a result, "[a] principal feature of the removal system is the broad discretion exercised by

immigration officials." *Arizona*, 132 S. Ct. at 2499. DHS, "as an initial matter, must decide whether it makes sense to pursue removal at all." *Id*. "At each stage the Executive has discretion to abandon the endeavor." *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 483 (1999) ("*AADC*"). As with other agencies exercising enforcement discretion, DHS must balance a number of factors that are within its expertise. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Deferred action is one of the ways in which DHS exercises prosecutorial discretion. Deferred action is "a regular practice" in which the Secretary exercises her discretion "for humanitarian reasons or simply for [her] own convenience," to notify an alien of a non-binding decision to forbear from seeking his removal for a designated period. *See AADC*, 525 U.S. at 483-84; 8 C.F.R. § 274a.12(c)(14) ("an act of administrative convenience to the government which gives some cases lower priority"). Through "[t]his commendable exercise in administrative discretion, developed without express statutory authorization," *AADC*, 525 U.S. at 484 (citations omitted), a removable individual may remain present in the United States so long as DHS continues to defer removal.

Deferred action does not confer lawful immigration status. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1058-59 (9th Cir. 2014). An individual with deferred action remains removable at any time, and DHS has the prosecutorial discretion to terminate deferred action unilaterally. *See AADC*, 525 U.S. at 484-85; *Texas v. United States*, 809 F.3d 134, 199 (5th Cir. 2015) (King, J., dissenting) (explaining that the terms "lawful presence" and "deferred action" mean "nothing more than DHS's tentative decision, revocable at any time, not to remove an individual for the time being – i.e., the decision to exercise prosecutorial discretion").

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano announced the policy now known as DACA.  *See* ECF Dkt. No. 1 ¶ 15 n.1, citing June 15, 2012 Memorandum from Janet Napolitano to ICE, CBP, and USCIS, "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as

2:18-cv-9276- DMG-PLA

Children" ("DACA Memo"), available at https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretionindividuals-who-came-to-us-as-children.pdf (last visited Mar. 1, 2019). DACA made deferred action—a temporary postponement of the removal of individuals unlawfully present in the United States—available to "certain young people who were brought to this country as children" in violation of the immigration laws.  DACA Memo at 1.  After completion of a background check, successful requestors would receive deferred action for a period of two years, subject to renewal.  *Id.* at 2-3.  The DACA Memo stated that deferred action was an "exercise of prosecutorial discretion," *id.* at 1, and that requests would "be decided on a case by case basis," *id.* at 2.  The Memo expressly cautioned that DACA "confer[red] no substantive right, immigration status or pathway to citizenship.  Only the Congress, acting through its legislative authority, can confer these rights." *Id.* at 3.

In August 2012, USCIS published on its website a webpage entitled, "Frequently Asked Questions," which is now archived on the USCIS webpage, as amended.  *See* ECF Dkt. No. 1 ¶ 23 n.4, citing USCIS, "DACA Frequently Asked Questions" ("DACA FAQs"), available at https://www.uscis.gov/archive/frequently-asked-questions (last visited Mar. 1, 2019). These FAQs provide guidance on the DACA policy and state, in part: "Individuals who can demonstrate through verifiable documentation that they meet these guidelines will be considered for deferred action. Determinations will be made on a case-by-case basis under the DACA guidelines." DACA FAQs Q:2. The FAQs also explain that "[e]ach request for consideration of DACA will be reviewed on an individual, case-by-case basis," *id.* at Q:7, and that the DACA guidelines must be met for consideration of DACA, but that "U.S. Citizenship and Immigration Services (USCIS) retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met." *Id.* at Q:28.[2]

---

[2] The instructions for the DACA request form (I-821D) contain similar language. "USCIS considers deferring action (including Renewal of deferred action) on a case-by-case basis, based on the guidelines in the What is a Childhood Arrival for Purposes of This Form

Through an internal USCIS guidance document entitled the "National Standard Operating Procedures (SOP); Deferred Action for Childhood Arrivals (DACA)," or "DACA SOP," USCIS has provided officers in the Service Center Operations directorate with procedural guidance regarding DACA adjudications. *See* ECF Dkt. No. 1 ¶ 43, citing April 4, 2013 DACA SOP, *available at* https://cliniclegal.org/sites/default/files/attachments/daca_sop_4-4-13.pdf (last visited Mar. 1, 2019).[3]

In a section titled "Request for Evidence (RFE) versus Notice of Intent to Deny (NOID)," the DACA SOP states:

> Officers will NOT deny a DACA request solely because the DACA requestor failed to submit sufficient evidence with the request (unless there is sufficient evidence in our records to support a denial). As a matter of policy, officers will issue an RFE or a Notice of Intent to Deny (NOID).

> If additional evidence is needed, issue an RFE whenever possible.

> When an RFE is issued, the response time given shall be 87 days. A list of DACA RFE call-ups and the actual templates can be found in Appendix D.

> When a NOID is issued, the response time given shall be 33 days.

---

section of these instructions. Deferred action is a discretionary determination to defer removal of an individual as an act of prosecutorial discretion." *See* Form I-821D Instructions (Jan. 9, 2017) at 1 (original emphasis omitted), *available at* https://www.uscis.gov/sites/default/files/files/form/i-821dinstr.pdf (last visited Mar. 1. 2019). Immediately before listing the referenced guidelines, the form instructions state that "[a]n individual may be *considered* for Initial DACA if he or she: . . . ." *Id*. at 1 (emphasis added). *See also id*. at 11 ("Even if you satisfy the threshold criteria for consideration of DACA, USCIS may deny your request if it determines, in its unreviewable discretion, that an exercise of prosecutorial discretion is not warranted in your case.").

[3] Although official-capacity Federal Agency Defendants assert that an August 23, 2013 version of the DACA SOP applied to the adjudication of Plaintiff's DACA request, the provisions referenced herein are unchanged.

DACA SOP at 45. This provision calls for RFE or NOID issuance, rather than denial, where the requestor has generally failed to submit sufficient evidence, or additional evidence is needed.

In a section titled "Denials – After RFE or NOID," the DACA SOP states:

> In general, the officer shall issue a denial whenever the requestor's response to a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) is insufficient to establish eligibility. There may be exceptions when a NOID or second RFE is appropriate after an initial RFE.

DACA SOP at 105. Contrary to Plaintiff's implication, this provision does not address denials where no RFE or NOID is issued.

The DACA SOP does call for an adjudicator to "issue an RFE," "[i]f additional information [regarding the proscribed guidelines] is needed for DACA consideration." DACA SOP at 48. The DACA SOP also calls for supervisory review "[i]n instances where an individual is unable to establish he or she warrants a favorable exercise of prosecutorial discretion under this process, and no other checkbox applies except 'You have not established that you warrant a favorable exercise of prosecutorial discretion,'" and "[i]n novel, complex, or sensitive cases, or cases that require a paragraph denial, supervisors will refer the case to HQSCOPS, through the normal chain of command." DACA SOP at 106. There is, however, no guidance in the DACA SOP – including in Appendix J "Notice of Intent to Deny Policy" – that calls for RFE or NOID issuance in the case of a requestor who establishes that the guidelines are met but who may not warrant a favorable exercise of discretion.

As a document that includes procedures for adjudicators,[4] the DACA SOP identifies discrete internal procedures that adjudicators should follow. *See* ECF Dkt. No.

---

[4] *See* DACA SOP at 16. ("This SOP describes the procedures Service Centers are to follow when adjudicating DACA requests.  This SOP includes the procedures for processing Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and Form I-765, Application for Employment Authorization.   It also describes the procedures for adjudicating advance parole requests for individuals whose removal has been deferred

2:18-cv-9276- DMG-PLA

1 ¶ 49, citing DACA SOP at 101-102, 104. Many of these steps are redacted pursuant to 5 U.S.C. § 552(b)(7)(E) as law enforcement information regarding techniques and procedures that is not subject to disclosure under the Freedom of Information Act. However, the unredacted provisions of the procedures that Plaintiff cites for this proposition make clear the ministerial nature of these procedures. *See* DACA SOP at 103 "Check the fee payment information for Form I-765. See Chapter 5 regarding NSF processing and handling procedures;" *id*. at 104 ("Put in ROP [Record of Proceeding] order and place a pink coversheet on the left-hand side of the file.").

While the DACA policy and related guidance did not arise from statute and have not been implemented by regulation, there are certain regulations that appear to intersect with the administration of DACA.[5] Here, Plaintiff relies on 8 C.F.R. § 103.2(b)(16) to allege that a DACA requestor must be advised and given the opportunity to rebut where a decision "will be adverse to the applicant . . . and is based on derogatory information considered by [USCIS] and of which the applicant . . . is unaware." *See* ECF Dkt. No. 1 ¶ 46, citing 8 C.F.R. § 103.2(b)(16). On its plain language, that regulation applies only to "benefit requests." *See* 8 C.F.R. § 103.2(b)(1). A "benefit request" is any "application, petition, motion, appeal, or other request relating to an immigration or naturalization benefit, whether such request is filed on a paper form or submitted in an electronic format, provided such request is submitted in a manner prescribed by DHS for such purpose." *Id*. at § 1.2. DACA is not an immigration benefit. *See* DACA Memorandum at

---

under DACA and who need to travel outside of the United States for educational, employment, or humanitarian purposes.")

[5] In fact, eligibility for work authorization and treatment as lawfully present do not flow to DACA recipients from DACA itself, but were based on pre-existing regulations that are triggered whenever DHS grants deferred action. *See* 8 C.F.R. § 274a.12(c)(14) ("alien who has been granted deferred action" may obtain work authorization in certain circumstances); *see also*, *e.g.*, *id*. § 1.3(a)(4)(vi) (alien with "deferred action" is considered "lawfully present" for purposes of applying for Social Security benefits).

2 ("Prosecutorial discretion . . . is especially justified here); *id.* at 3 ("This memorandum confers no substantive right, immigration status or pathway to citizenship."); White House Office of Communications, "One Year Anniversary of Implementation of Deferred Action policy for Dreamers," (Aug. 15, 2013), 2013 WL 4168409 at *2 ("DACA is not an immigration benefit.")

A 2013 USCIS policy memorandum generally extended the NOID and RFE to deferred action requests. *See* U.S. Citizenship and Immigration Services, Policy Memorandum, "Subject: Requests for Evidence and Notices of Intent to Deny," (June 3, 2013), 2013 WL 2729808, *1 ("The guidance in this PM applies not only to applications and petitions, but also to requests for consideration of deferred action and to other adjudications not classified as benefit requests."). Importantly, however, that memo recognized that USCIS "has the discretion in some instances to issue a denial without first issuing an RFE or NOID." *Id.* And while the memo generally can be read to extend the requirement of 8 C.F.R. § 103.2(b)(16) to deferred action requests, the memorandum states upfront that "there may be special circumstances where the general principles do not apply. In such instances, there will be accompanying special instructions that will provide alternate guidance. In the absence of special instructions, officers must follow these general principles." *Id.*

USCIS has issued special instructions that provide alternate guidance in the context of DACA requests. In response to the question "Should centers deny a DACA request without first issuing an RFE or NOID?" the guidance identifies circumstances where no RFE or NOID is required and establishes a process for further guidance in other situations. *See* Exhibit A, USCIS Internal DACA FAQ's – NOID vs. Denial (last updated Sept. 2, 2015) ("If you believe a straight denial is appropriate for a particular case that does not fall within one of these categories identified above, please send a Request for Adjudicative Guidance to the HQSCOPSDACA mailbox.").

Following litigation that resulted in the injunction of a 2014 policy that would have expanded DACA and created a new policy known as Deferred Action for Parents of

8

Americans ("DAPA"), and threatened litigation to the DACA memo itself, then-Acting Secretary of Homeland Security issued a memorandum directing an orderly wind down of the DACA policy.  *See* ECF Dkt. No. 1 ¶ 20, n.3, *citing* https://www.dhs.gov/news/ 2017/09/05/memorandum-rescission-daca (DACA Rescission Memo). As the Secretary explained, "[t]aking into consideration the Supreme Court's and the Fifth Circuit's rulings in the ongoing litigation, and the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated." DACA Rescission Memo at 4.  Invoking her "authority in establishing national immigration policies and priorities," she rescinded the DACA Memo, *id*. at 4, and instructed that deferred action going forward should be provided "only on an individualized[,] case-by-case basis," *id*. at 2. The memo also states that "USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion." *Id*. at 1, n.1.

In subsequent litigation over the rescission of DACA, however, Donald Neufeld, Associate Director of Service Center Operations for USCIS, explained that there had been specific DACA requests that were denied solely in USCIS's discretion. *See* Exhibit B, *Vidal, et al., v. Duke, et al*., Case No. 1:16-CV-04756 (E.D.N.Y), Neufeld Deposition Excerpt (Oct. 18, 2017) at 170-189.

## II.    Factual Background

Plaintiff alleges that she was born in Mexico, was brought to the United States at the age of six, and that she has lived and gone to school continuously here for the last seventeen years. ECF Dkt. No. 1 ¶ 66. Plaintiff is the subject of removal proceedings before the Executive Office for Immigration review, and her next hearing date is August 20, 2019.[6]

---

[6] Plaintiff's removal proceedings and next hearing date are confirmed by contacting the EOIR's case status phone number, 1-800-898-7180.

9

2:18-cv-9276- DMG-PLA

Plaintiff requested DACA on June 19, 2017. ECF Dkt. No. 1 ¶ 82. She asserts that she "met and continues to meet" the eligibility criteria for consideration of DACA. *Id*. ¶ 84. On August 22, 2017, in accordance with USCIS procedures (*see* Exhibit A), a USCIS adjudicator requested administrative guidance from Headquarters Service Center Operations (HQSCOPS) to answer the question of whether the requestor should be granted DACA given that she "lives at the stash house where CBP arrested her parents while in possession of cocaine and bulk cash." *See* Exhibit C, USCIS Request for Adjudicatory Guidance. That request, and the resulting response, make no mention of Plaintiff's activism, nor do they identify her as not warranting prosecutorial discretion based on her interactions with police or otherwise deem her a public safety threat. *Id*. Rather, the request for adjudicative guidance recommended a straight denial. *Id*. ("Since the requestor has lived into adulthood at both addresses being targeted by the investigation, it is very likely that she is aware of her parents' criminal activities and is a beneficiary of the profits from their TCO [Transnational Criminal Organization].  As such, it appears that her case does not warrant prosecutorial discretion."). HQSCOPS concurrent with the adjudicator's recommendation and USCIS denied Plaintiff's DACA request on October 19, 2017. *See* Exhibit D, Rueda DACA Denial. The denial states, "[y]ou have not established that you warrant a favorable exercise of prosecutorial discretion." *Id*.

## ARGUMENT

### I.    Standard of Review

#### A. Motion to Dismiss under Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the Court lacks subject matter jurisdiction to adjudicate the claims. Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting jurisdiction. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists").

2:18-cv-9276- DMG-PLA

The Court must presume that it lacks subject matter jurisdiction until the plaintiff proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

In evaluating a Rule 12(b)(1) motion, the question of whether the Court must accept the complaint's allegations as true turns on whether the challenge is facial or factual. A facial attack is one in which subject matter jurisdiction is challenged solely on the allegations in the complaint, attached documents, and judicially noticed facts. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). In a facial attack, the moving party asserts that the lack of federal subject matter jurisdiction appears on the "face of the complaint." *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003). In the case of a facial attack, the Court is required to accept as true all factual allegations set forth in the complaint. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

### B. Motion to Dismiss under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662. A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id*. at 1949. If the facts allow a court only to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id*. Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id*. at 1950.

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.1994). However, exhibits attached to the complaint, as well as matters of public record, may be

2:18-cv-9276- DMG-PLA

considered in determining whether dismissal was proper. *See Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b) (6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id*.

Defendants request that the Court take judicial notice of documents discussed above that are either filed in support of this motion that are matters of public record, or are explicitly referenced or quoted in plaintiff's complaint. *See* DACA Memorandum, DACA FAQ, DACA SOP, Form 821-D Instructions; Ex. A - USCIS Internal DACA FAQ's – NOID vs. Denial; DACA Rescission Memo; Ex. B - Neufeld Deposition Excerpt; Ex. C - USCIS Request for Adjudicative Guidance; Ex. D - Rueda DACA Denial.

## II.    The Court lacks jurisdiction over Plaintiff's challenge to the discretionary denial of her DACA request.

Not all agency actions are subject to judicial review under the APA. *See* 5 U.S.C. § 701(a) ("This chapter applies, according to the provisions thereof, except to the extent that-- (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law"); *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345, 351 (1984) (Subsection 701(a)(1) "withdraws the cause of action to the extent the relevant statute 'preclude[s] judicial review.'"). In determining whether the first exception applies (whether a particular statute precludes judicial review), courts look to the "express language" in the statutory provision, the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved. *Block*, 467 U.S. at 345. With respect to the second exception, whether agency action is committed to agency discretion by law, the Supreme Court has cautioned that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is

a decision generally committed to an agency's absolute discretion" and is not amenable to judicial review. *See Heckler*, 470 U.S. at 831; *see also Morales de Soto v. Lynch*, 824 F.3d 822, 828 (9th Cir. 2016) (discussing the *Heckler* decision and noting that "the exercise of prosecutorial discretion is a type of government action uniquely shielded from and unsuited to judicial intervention"); *Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015) (discussing the *Heckler* decision and explaining that "[i]n making immigration enforcement decision, the executive considers a variety of factors"), *cert. denied*, 136 S. Ct. 900 (2016), *reh'g denied*, 136 S. Ct. 1250 (2016).

Here, both exceptions to the presumption of judicial review under the APA are implicated: (1) 8 U.S.C. § 1252 precludes judicial review, and (2) even in the absence of this provision, decisions regarding prosecutorial discretion are agency actions committed to agency discretion by law.

### A. The Court lacks jurisdiction under 8 U.S.C. § 1252(g).

Through the INA, as amended by the REAL ID Act and codified at 8 U.S.C. § 1252(g), Congress explicitly precluded judicial review of any challenge arising from any decision or action to commence removal proceedings. That statute states, in relevant part:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The Supreme Court has explained that 8 U.S.C. § 1252(g) was "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9; *cf. Ariz. Dream Act Coal. v. Brewer*, 855 F.3d at 957, 967 (9th Cir. 2017) (explaining that deferred action is an exercise of the Secretary's prosecutorial discretion not to commence proceedings or execute removal orders against an alien), *petition for cert. filed*, (U.S. Mar. 29, 2017) (No. 16-1180).

13

2:18-cv-9276- DMG-PLA

Applying 8 U.S.C. § 1252(g), the Ninth Circuit has specifically held that there is no subject matter jurisdiction to review a determination of whether an individual should be granted DACA. *See*, *e.g.*, *Vilchiz-Soto v. Holder*, 688 F.3d 642, 644 (9th Cir. 2012) ("[W]e lack jurisdiction to review petitioners' contention that the agency abused its discretion in denying the motion to reopen to seek prosecutorial discretion based on the recent order of President Obama."); *Rodriguez v. Sessions*, No. 15-72487, 2017 WL 695192, at *1 (9th Cir. Feb. 22, 2017); *Fabian-Lopez v. Holder*, No. 11-71513, 540 F. App'x 760, 761 n.2 (9th Cir. April 29, 2013); *cf. Flores-Panso v. Asher*, No. C13-1923-TSZ, 2014 WL 1338073, at *3 (W.D. Wash. April 2, 2014) (adopting recommendation that district court lacked jurisdiction over a claim that a stay of removal was warranted to afford the petitioner time to seek DACA).  Moreover, when the Ninth Circuit found that it had jurisdiction over programmatic challenges to the DACA rescission policy, the Court specifically acknowledged that "individual 'no deferred action' decisions . . . fall exactly within Section 1252(g) as interpreted by the Court in *AADC*." *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 504 (9th Cir. 2018), citing *Vasquez v. Aviles*, 639 F. App'x 898 (3d Cir. 2016); *Botezatu v. INS*, 195 F.3d 311 (7th Cir. 1999); *id.* at 503-04 ("It seems quite clear, however, that *AADC* reads Section 1252(g) as responding to litigation over individual 'no deferred action' decisions, rather than a programmatic shift like the DACA rescission.").

This precedent applies directly to the present case and precludes judicial review of the discretionary decision to deny an initial DACA request. In sum, regardless of how Plaintiff frames the issue, 8 U.S.C. § 1252(g) precludes judicial review of the Government's exercise of its prosecutorial discretion.

**B. Judicial review of Plaintiffs' claims is also barred by 5 U.S.C. § 701(a)(2) because the discretionary denial of DACA plainly invokes the agency's prosecutorial discretion.**

There is no judicial review under the APA of decisions that "courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (quoting 5 U.S.C. § 701(a)(2)). These decisions are typically unreviewable because there is "no meaningful standard against which to judge the agency's exercise of

discretion." *Chaney*, 470 U.S. at 830. This bar applies even when "the agency gives a 'reviewable' reason for otherwise unreviewable action." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987) ("BLE").

The decisions committed to executive discretion include "an agency's exercise of enforcement power." *Chaney*, 470 U.S. at 831. Such judgments involve "a complicated balancing of factors which are peculiarly within [an agency's] expertise," including "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall priorities, and, indeed, whether the agency has enough resources to undertake the action at all." *Id*. As there is "no meaningful standard against which to judge the agency's exercise of discretion" in weighing these factors, an agency's exercise of enforcement powers is "presumed immune from judicial review under § 701(a)(2)." *Id.* at 830, 832.

An agency's decision to enforce the law against a particular individual is likewise presumptively unreviewable. Just as "the decision whether or not to prosecute" presumptively "rests entirely in [the prosecutor's] discretion," *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation omitted), an agency's decision to bring a civil enforcement action is generally not open to judicial scrutiny. Considerations such as the *Chaney* factors are equally present in enforcement decisions as in non-enforcement decisions. *See Chaney*, 470 U.S. at 831; *see also Wayte v. United States*, 470 U.S. 598, 607-8 (1985) ("[T]he decision to prosecute is particularly ill-suited to judicial review").

One form of prosecutorial discretion is deferred action, a "discretionary and reversible" decision to notify an alien that DHS has chosen not to seek his removal for a specific period of time. *Arpaio v. Obama*, 797 F.3d 11, 17 (D.C. Cir. 2015). Like other agency non-enforcement decisions, grants of deferred action rest on a complex balancing of policy considerations that cannot serve as a "meaningful standard against which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 831. The converse is equally true: denials of deferred action are committed to agency discretion. *See AADC*,

525 U.S. at 485 (treating "'no deferred action' decisions" as "discretionary determinations"). Because "[g]ranting an illegally present alien permission to remain and work in this country" is fundamentally "a dispensation of mercy," there are "no standards by which judges may patrol its exercise." *Perales v. Casillas*, 903 F.2d 1043, 1051 (5th Cir. 1990) (INS's decision not to grant pre-hearing voluntary departures and work authorizations to a group of aliens was non-justiciable).

Even in situations in which an agency has promulgated regulations or provided internal guidance, decisions involving the exercise of prosecutorial discretion are generally not subject to judicial review. *See Romeiro de Silva v. Smith*, 773 F.2d 1021 (9th Cir. 1985) (Immigration and Naturalization Service ("INS") Operating Instructions on deferred action were not reviewable even though they provided a list of eligibility criteria, because the ultimate decision was discretionary); *see Pasquini v. Morris*, 700 F.2d 658, 659 (11th Cir. 1983) (INS Operating Instructions regarding deferred action did not confer substantive rights on an alien and courts could not review a claim that INS failed to comply with these internal instructions); *cf. United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) (reversing a finding that a criminal defendant can force the Department of Justice to comply with its death penalty protocol).

The Ninth Circuit has held that similar internal policy guidance on deferred action in the revised 1981 INS operating instructions was discretionary and unreviewable. *Romeiro de Silva*, 773 F.2d at 1025. That holding contrasts with the Ninth Circuit's prior holding in *Nicholas v. INS*, 590 F.2d 802 (9th Cir. 1979). In *Nicholas*, the Ninth Circuit found jurisdiction to hear a challenge to a denial of deferred action because the five express humanitarian factors in the 1978 Operating Instructions, along with the directive nature of the language ("'In Every case'" where relief is appropriate, the District Director 'Shall recommend' deferred action"), made it "obvious that this procedure exists out of consideration for the convenience of the petitioner, and not that of the INS." *Id*. at 806-07. The Ninth Circuit specifically noted that "the Instruction plainly contemplates a

2:18-cv-9276- DMG-PLA

scheme where the status would preclude any deportation as long as the relevant humanitarian factors are still compelling." *Id*. at 807.

Following *Nicholas*, the INS changed the deferred action referral language from "shall recommend" to "may, in his discretion, recommend," but left the humanitarian factors to be considered substantively the same. *Romeiro de Silva*, 773 F.2d at 1023 n.1. In challenge to this changed language similar to Plaintiffs' challenge here, the Ninth Circuit held that the district court lacked jurisdiction because, with the change from "shall" to "may," "it is no longer possible to conclude that [the instruction] is intended to confer any benefit upon aliens, rather than [to operate] merely for the INS's own convenience." *Id*. at 1024-25. Like the 1981 INS instructions, the DACA SOP does not contain a mandatory "shall" that curtails its discretion, but rather repeatedly states that an individual who meets DACA criteria *may be considered* for a DACA grant.

Thus, individual DACA decisions fall squarely within the category of agency discretion for which judicial review is improper. *See Chaney*, 470 F.3d at 830; *see also Morales de Soto v. Lynch*, 824 F.3d 822, 828 (9th Cir. 2016) (noting that "the exercise of prosecutorial discretion is a type of government action uniquely shielded from and unsuited to judicial intervention"). In Plaintiff's case, there is no legal question with regard to the DACA guidelines because the guidelines merely allow an individual to seek a discretionary administrative grace in the form of DACA. DACA is unlike immigration benefits whose eligibility criteria are delineated in a statute or regulation, and as to which courts have found that the non-discretionary denial of benefits may be reviewed.

Here, Plaintiff is challenging USCIS's exercise of its enforcement power not to defer an ongoing enforcement action against her. This is a classic challenge to DHS's exercise of its prosecutorial discretion. *See Chaney*, 470 U.S. at 831. This type of enforcement decision involves a balancing of factors committed to agency discretion by law, including how to allocate agency resources. *See id.*; *Armstrong*, 517 U.S. at 464. The question for DHS was not whether it *could* exercise its discretion in favor of Plaintiff, but rather whether it *should* do so. Because this type of discretionary determination is

17

2:18-cv-9276- DMG-PLA

committed to DHS discretion by law, this Court lacks jurisdiction to review Plaintiff's claims.

**III.   In the alternative, Plaintiff fails to state a claim regarding the process by which USCIS denied her request for DACA.**

Even if the Court finds that it has jurisdiction over Plaintiff's claims against the Official Capacity Federal Agency Defendants, the Court should dismiss the claims because Plaintiff fails to state a claim for a procedural violation of USCIS's policies and regulations, or of the U.S. Constitution.

**A. Regulations, the DACA SOP, and USCIS's Internal FAQs permit straight discretionary DACA denials.**

Plaintiff's argument that Defendants' internal procedures require issuance of notice and an opportunity to respond to the solely discretionary denial of her DACA is incorrect, and is based on a selective reading of those procedures. The plain language of the DACA SOP includes no such requirement. See DACA SOP at 45, 48, 106. The plain language of the regulation at 8 C.F.R. § 103.2(b)(16) does not apply to a request for deferred action, which is not an immigration benefit. See DACA Memorandum at 2 ("Prosecutorial discretion . . . is especially justified here); *id*. at 3 ("This memorandum confers no substantive right, immigration status or pathway to citizenship."); White House Office of Communications, "One Year Anniversary of Implementation of Deferred Action policy for Dreamers," (Aug. 15, 2013), 2013 WL 4168409 at *2 ("DACA is not an immigration benefit."); *see* 8 C.F.R. § 274a.12(c)(14)(noting that deferred action is "an act of administrative convenience to the government which gives some cases lower priority."). A USCIS guidance memorandum would extend that regulation to requests for deferred action requests; however, there is an exception for specific guidance. USCIS's internal DACA FAQ provides that specific guidance here, and allows adjudicators to submit a request for adjudicatory guidance to headquarters for approval to pursue a straight discretionary denial without a NOID or RFE. See Ex. A, USCIS Internal FAQ. The agency's records reflect that the agency followed the internal FAQ in this case. *See* Ex.

D. Additionally, the agency's records belie Plaintiff's conclusory allegations that the denial of her DACA request was based on consideration of her activism, or as Plaintiff also alleges, that USCIS otherwise considered her to be a public safety threat or enforcement priority under the DACA SOP. *Id*. ("Since the requestor has lived into adulthood at both addresses being targeted by the investigation, it is very likely that she is aware of her parents' criminal activities and is a beneficiary of the profits from their TCO. As such, it appears that her case does not warrant prosecutorial discretion.").

In addition, the *Accardi* doctrine is inapplicable in the context of internal operating guidelines that preserve the exercise of agency discretion. *See Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1009 (9th Cir. 1987) (finding amended Operating Instructions were "general statements of policy" because the instructions preserved the agency's flexibility and opportunity to make discretionary determinations); *id*. ("a directive must not establish a binding norm and must leave agency officials free to consider the individual facts in the various cases that arise and to exercise discretion") (internal citations and quotations omitted). Courts have declined to apply the *Accardi* doctrine in matters of prosecutorial discretion. *Carranza v. I.N.S.*, 277 F.3d 65, 72-3 (1st Cir. 2002) (declining to apply *Accardi* doctrine in habeas challenge to alleged "failure of the INS to exercise individualized discretion in its decision to initiate deportation proceedings," and observing that "[w]hether or not the INS exercised its discretion is therefore beside any relevant point" as "petitioner did not have a right to demand the exercise of this discretion in the first place"); *United States v. Lee*, 274 F.3d 485, 492-93 (8th Cir. 2001) ("Courts have agreed that individuals have no enforceable rights under another internal DOJ policy known as the Petite policy, which restricts federal prosecution of individuals already prosecuted under state law for the same act or acts. Prosecutorial discretion has been treated differently than other types of agency discretion, and the special nature of prosecution is the reason that the *Accardi* doctrine has not been applied to criminal law enforcement policies and procedures."). Moreover, Plaintiff's claims that Official Capacity Federal Agency Defendants' actions are insufficiently explained or improperly

19

depart from prior agency are simply inapposite – Plaintiff has not sufficiently alleged that there was any change in agency policy that would support such a cause of action as to her individual DACA adjudication. *See* ECF Dkt. No. 1 ¶¶ 105-111. Finally, Plaintiff's reliance on other cases for the proposition that the DACA SOP gives rise to non-discretionary policies and procedures is of no assistance to her, given that those cases involved a different set of DACA SOP provisions regarding DACA termination rather initial DACA requests. *Id*. ¶ 112.

### B. There is no constitutionally protected interest in DACA.

Plaintiff baldly asserts that "Defendants' policy and process must be rational and conform to constitutional procedural due process . . . ." ECF Dkt No. 1 ¶ 122. However, Plaintiff falls to allege, nor can she establish, a protected constitutional interest in the receipt of DACA or in the adjudicatory process because the ultimate result sought – deferred action – is discretionary, and because the Government never expressed a mutual intention to confer a protected benefit in DACA. To the contrary, as described above, the DACA Memo explicitly disclaims as much. *See* DACA Memo at 3 (stating that it "confers no substantive right, immigration status or pathway to citizenship.  Only the Congress, acting through its legislative authority, can confer these rights."); *see also* Form I-821D Instructions at 11.

The "Due Process Clause does not protect everything that might be described as a 'benefit.'" *Castle Rock*, 545 U.S. at 756. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of *entitlement* to it." *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *see also Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) (underscoring that aliens cannot claim a cognizable due process interest in discretionary immigration relief or benefits). Even a practice of "generously" granting a "wholly and *expressly* discretionary state privilege" does not create a legal entitlement to that benefit. *Gerhart v. Lake Cnty., Mont.*, 637 F.3d

20

1013, 1020-21 (9th Cir. 2011) (citations omitted) ("A person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government.").

As discussed above, nothing in the DACA memoranda, public Q&A documents, USCIS regulations, the DACA SOP, Form I-821D instructions, or internal FAQs indicate any promise of benefits or entitlement to DACA or notice and an opportunity to respond to a discretionary DACA denial. *See supra* 18-19. Because Plaintiff challenges only denial of a discretionary temporary grant of deferred action from removal, Plaintiff fails to state a procedural due process claim.

### C. Plaintiff fails to state a cognizable retaliation claim under the APA.

Plaintiff also claims that USCIS's discretionary denial of her DACA violated "the First Amendment's prohibition against adverse government action done in retaliation for constitutionally protected political speech and activity." ECF Dkt. No. 1 ¶ 121. Here too, Plaintiff's claim is without merit; and the Court lacks jurisdiction to review Official Capacity Federal Agency Defendants' discretionary decision. To prevail on her First Amendment claims, Plaintiff must show but-for causation; in other words, but for the alleged retaliation, the challenged enforcement action "would [not] have been taken." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).

Plaintiff challenges USCIS's discretionary denial of her DACA request. However, because USCIS has the discretion to deny Plaintiff's DACA request even if she meets the threshold guidelines, Plaintiff cannot allege the necessary causation. Additionally, to the extent that Plaintiff alleges that a pattern and practice of other immigration enforcement actions buttress her causation claim, ECF Dkt. No. 1 ¶ 97, those allegations do not involve DACA requests, nor do they account for USCIS's authority to exercise prosecutorial discretion in DACA adjudications. Finally, agency records directly refute Plaintiff's conclusory allegations, and demonstrate that her activism was not a factor that USCIS considered in denying her DACA request. *See supra* 19. Accordingly, the Court should find that Plaintiff fails to state a retaliation claim under the APA.

2:18-cv-9276- DMG-PLA

**IV.    The Court lacks jurisdiction over Plaintiff's Count 8 – Declaratory Judgment.**

Plaintiff's Count 8 separately seeks a declaration "that Defendants have violated the DACA SOP; the APA; the Fifth Amendment; 8 C.F.R. §§ 287.3 and 287.8; the Fourth Amendment; and the First Amendment." The jurisdictional basis for this count is not clear, as the Declaratory Judgment Act is purely procedural and does not expand the Court's jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("[T]he operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.") (internal citation omitted); *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court. It only permits the district court to adopt a specific remedy when jurisdiction exists.").

Here, because Plaintiff's substantive counts are subject to dismissal for lack of jurisdiction and failure to state a claim, the declaratory-judgment count must be dismissed too. Additionally, given the absence of allegations against Official Capacity Federal Agency Defendants under the Fourth Amendment or 8 C.F.R. §§ 287.3 and 287.8, the corresponding declaratory judgment claims are subject to dismissal. To the extent that the Court believes that Plaintiffs' claims under the Fourth Amendment or 8 C.F.R. §§ 287.3 and 287.8 are viable against Official Capacity Federal Agency Defendants, it separately lacks jurisdiction over those claims, which Congress has channeled into and Plaintiff may challenge in the course of her removal proceedings. *See* 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9); *J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016); *cf. Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (holding, in the context of an APA claim, that it does not matter how the claim "is framed" for purposes of determining whether the claim is channeled through the petition for review process).

//

//

2:18-cv-9276- DMG-PLA

## **CONCLUSION**

In sum, Plaintiff has failed to establish jurisdiction for this Court to consider her challenge to USCIS's discretionary denial of her DACA request. Congress expressly precluded such jurisdiction through 8 U.S.C. § 1252(g). Plaintiff also fails to show that, in respect to USCIS's denial of her DACA request, she was entitled to any additional process based on the DACA guidance, a regulation, or the Constitution. For these reasons, the Court should dismiss Plaintiff's claims against the Official Capacity Federal Agency Defendants for lack of jurisdiction or for failure to state a claim.

DATED: March 2, 2019

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director

*/s/ Jeffrey S. Robins*
JEFFREY S. ROBINS
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 616-1246
Fax: (202) 305-7000
Email: jeffrey.robins @usdoj.gov

JAMES J. WALKER
Trial Attorney

*Counsel for Federal Agency Defendants*

2:18-cv-9276- DMG-PLA