ARNOLD & PORTER KAYE SCHOLER LLP
JOHN C. ULIN (SBN 165524)
john.ulin@arnoldporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199

JABA TSITSUASHVILI (SBN 309012)
jaba.tsitsuashvili@arnoldporter.com
601 Massachusetts Avenue NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA SARAHI RUEDA VIDAL,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION; U.S. BORDER PATROL; LEE FRANCIS CISSNA, Director of USCIS, in his official capacity; KATHY A. BARAN, Director of USCIS California Service Center, in her official and individual capacities; ANDREW K. BOLTON, DANIEL BRIGHTMAN, and DOES 1 through 10, USCIS agents and U.S. Border Patrol officers, in their individual capacities,<br><br>Defendants. | No. 2:18-cv-09276-DMG (PLAx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO AGENCY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [Docket No. 39]**<br><br>Judge: Hon. Dolly M. Gee<br>Courtroom: 8C<br>Hearing: May 31, 2019<br>Time: 9:30 a.m. |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................1

II.  BACKGROUND ...................................................................................2

    A. The DACA program ..........................................................................2

    B. Ms. Rueda's background, arrest, and DACA application ............................4

III. ARGUMENT .......................................................................................6

    A. Standard of review ...........................................................................6

    B. The Court has jurisdiction. ................................................................7

       1.  Section 1252(g) does not apply ......................................................7

       2.  Section 701(a)(2) does not apply. ..................................................10

    C. Ms. Rueda has stated APA and constitutional claims. ..............................13

       1.  Ms. Rueda has stated *Accardi* claims under the APA. ......................13

          a.  Under the DACA Memo, Defendants "should" have granted Ms. Rueda DACA, and no explanation or policy exists for this departure from policy and practice. ..................14

          b.  Under the DACA SOP, Defendants should have issued Ms. Rueda an RFE or NOID. ................................................16

       2.  Ms. Rueda has stated a claim that Defendants adopted an arbitrary policy and did not engage in "reasoned decisionmaking." ..................................................................16

       3.  Ms. Rueda has stated a retaliation claim ........................................18

       4.  Ms. Rueda has stated a due process claim. .....................................20

       5.  Ms. Rueda has stated an equal protection claim. ..............................21

    D. The Court should grant leave to amend insufficiently pleaded claims. ........22

IV. CONCLUSION ...................................................................................22

i

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
AGENCY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007)...........................................................................................8

*Alcaraz v. INS*,
384 F.3d 1150 (9th Cir. 2004) ............................................................................8, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................7

*ASSE Intern., Inc. v. Kerry*,
803 F.3d 1059 (9th Cir. 2015) ................................................................................13

*Batalla Vidal v. Duke*,
2017 WL 5201116 (E.D.N.Y. Nov. 9, 2017) ...................................................11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................7

*Blair v. Bethel Sch. Dist.*,
608 F.3d 540 (9th Cir. 2010) ...................................................................................18

*Cal. Trout v. FERC*,
572 F.3d 1003 (9th Cir. 2009) .................................................................................15

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971)..................................................................................................11

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003) ...................................................................................18

*Coyotl v. Kelly*,
261 F. Supp. 3d 1328 (N.D. Ga. 2017).........................................................9, 11, 14

*Encino Motorcars, LLC v. Navarro*,
136 S. Ct. 2117 (2016)..............................................................................................16

*FCC v. Fox TV Stations, Inc.*,
556 U.S. 502 (2009)..................................................................................................17

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
AGENCY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Foman v. Davis*,
   371 U.S. 178 (1962).............................................................................................22

*Franco-Gonzalez v. Napolitano*,
   2011 WL 13117372 (C.D. Cal. July 18, 2011) .......................................................22

*Galvin v. Hay*,
   374 F.3d 739 (9th Cir. 2004) ..................................................................................12

*Gonzalez Torres v. DHS*,
   2017 WL 4340385 (S.D. Cal. Sept. 29, 2017) ..................................................9, 14

*Gonzalez Torres v. DHS*,
   2018 WL 1757668 (S.D. Cal. Apr. 12, 2018) .........................................................14

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*,
   761 F.3d 1027 (9th Cir. 2014) ...................................................................................7

*Heckler v. Chaney*,
   470 U.S. 821 (1985)................................................................................................12

*Inland Empire-Immigrant Youth Collective v. Nielsen*,
   2018 WL 1061408 (C.D. Cal. Feb. 26, 2018) ...........................................8, 9, 11, 14

*INS v. St. Cyr*,
   533 U.S. 289 (2001)................................................................................................11

*INS v. Yang*,
   519 U.S. 26 (1996)....................................................................................11, 15, 16

*Judulang v. Holder*,
   565 U.S. 42 (2011)..............................................................................14, 16, 17, 18

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ...................................................................................7

*Lozman v. City of Riviera Beach*,
   138 S. Ct. 1945 (2018)......................................................................................18, 20

*Madu v. U.S. Atty. Gen.*,
   470 F.3d 1362 (11th Cir. 2006) .................................................................................8

*McDonald v. Gonzales*,
   400 F.3d 684 (9th Cir. 2005) ..................................................................................14

*Morales de Soto v. Lynch*,
  824 F.3d 822 (9th Cir. 2016) ................................................................................ 12

*Nat'l Parks Conservation Assoc. v. EPA*,
  788 F.3d 1134 (9th Cir. 2015) .............................................................................. 17

*National Assoc. of Home Builders v. Norton*,
  340 F.3d 835 (9th Cir. 2003) ................................................................................ 14

*Ng v. INS*,
  804 F.2d 534 (9th Cir. 1986) ................................................................................ 16

*Nicholas v. INS*,
  590 F.2d 802 (9th Cir. 1979) ................................................................................ 12

*NRDC, Inc. v. EPA*,
  966 F.2d 1292 (9th Cir. 1992) .............................................................................. 17

*Nw. Env. Defense Ctr. v. Bonneville Power Admin.*,
  477 F.3d 668 (9th Cir. 2007) ................................................................................ 18

*Perry v. Sindermann*,
  408 U.S. 593 (1972)............................................................................................. 20

*Ragbir v. Homan*,
  -- F.3d --, 2019 WL 1811537 (2d Cir. Apr. 25, 2019) ................................... 10, 19

*Ramirez Medina v. DHS*,
  2017 WL 5176720 (W.D. Wash. Nov. 8, 2017)
  .........................................................................................................9, 11, 14, 20

*Ramos v. Nielsen*,
  321 F. Supp. 3d 1083 (N.D. Cal. 2018).................................................................. 15

*Regents v. DHS*,
  908 F.3d 476 (9th Cir. 2018) ........................................................................9, 13, 14

*Reno v. AADC*,
  525 U.S. 471 (1999)............................................................................................... 7

*Robbins v. Reagan*,
  780 F.2d 37 (D.C. Cir. 1985)................................................................................. 11

*Romeiro de Silva v. Smith*,
  773 F.2d 1021 (9th Cir. 1985) .............................................................................. 12

*Saravia for A.H. v. Sessions*,
    905 F.3d 1137 (9th Cir. 2018) ................................................................. 21

*Schnitzler v. U.S.*,
    761 F.3d 33 (D.C. Cir. 2014) ................................................................... 13

*Snyder & Assocs. Acquisitions LLC v. U.S.*,
    859 F.3d 1152 (9th Cir. 2017) ................................................................... 6

*Texas v. U.S.*,
    809 F.3d 134 (5th Cir. 2015) ................................................................... 13

*Trinidad y Garcia v. Thomas*,
    683 F.3d 952 (9th Cir. 2012) ................................................................... 20

*U.S. ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) ................................................................................ 14

*U.S. v. Hovsepian*,
    359 F.3d 1144 (9th Cir. 2004) ................................................................... 8

*U.S. v. One 1985 Mercedes*,
    917 F.2d 415 (9th Cir. 1990) ................................................................... 17

*Vasquez v. Rackauckas*,
    734 F.3d 1025 (9th Cir. 2013) ................................................................. 20

*Venetian Casino Resort, LLC v. EEOC*,
    530 F.3d 925 (D.C. Cir. 2008) ................................................................. 16

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000) ................................................................................ 21

*Wong v. U.S.*,
    373 F.3d 952 (9th Cir. 2004) ..................................................................... 7

**Statutes**

5 U.S.C. § 706 ......................................................................................... 11, 13

5 U.S.C. § 701(a)(2) .................................................................................... 10

6 U.S.C. § 202(5) ........................................................................................ 14

8 U.S.C. § 1252(g) ........................................................................... 7, 8, 9, 10

## Other Authorities

First Amendment ................................................................................. 1, 18

Fifth Amendment ............................................................................ 1, 20, 21

Rule 12(b)(1) .......................................................................................... 6, 7

Rule 12(b)(6) .......................................................................................... 6, 7

Rule 15(a)(2) ............................................................................................. 22

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
AGENCY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

# I.   INTRODUCTION

Plaintiff Claudia Sarahi Rueda Vidal ("Ms. Rueda") respectfully submits this opposition to the agency Defendants' motion to dismiss her first amended complaint. The Court should deny Defendants' motion in its entirety.  Ms. Rueda's claims challenging Defendants' compliance with the Administrative Procedure Act ("APA") and the Constitution with respect to the denial of her application for benefits under the Deferred Action for Childhood Arrivals ("DACA") program should proceed.

Defendants attempt to evade review of arbitrary and unconstitutional agency action by resorting to unavailing jurisdictional arguments.  Defendants' efforts are foreclosed by the text of the statutes, established law, a cursory review of Ms. Rueda's claims and Defendants' own brief, and the holdings of every court to address Defendants' same arguments in the DACA context.

Ms. Rueda's APA claims are similar to those on which those same courts have granted relief to individual DACA complainants.  They are premised on Defendants' failure to comply with their own binding policies, their irrational departure from a settled course of action, and their failure to engage in reasoned decisionmaking.  Ms. Rueda has sufficiently pleaded the various reasons she is entitled to relief on these commonplace APA claims.

Defendants' constitutional arguments fare no better.  The denial of Ms. Rueda's DACA application was a retaliatory First Amendment violation—part of Defendants' pattern and practice of adverse action against immigration activists, including the unlawful arrest and detention of Ms. Rueda herself.  Defendants also violated Ms. Rueda's right to due process by ignoring their own policies and procedures and taking adverse action against her without notice or an opportunity to respond.  And because Defendants denied Ms. Rueda's DACA application after granting DACA to all other similarly situated individuals—*i.e.*, those who meet the DACA program's objective criteria—Defendants violated Ms. Rueda's Fifth Amendment right to equal protection.

## II.     BACKGROUND

### A.     The DACA program

Defendants' DACA program has been in effect for nearly seven years, pursuant to DHS's June 15, 2012 DACA Memo.  The DACA Memo explains that the "Nation's immigration laws . . . are not designed to be blindly enforced without consideration given to the individual circumstances of each case," and that "additional measures are necessary to ensure that our enforcement resources are not expended on . . . low priority cases."  DACA's purpose is to protect "certain young people who were brought to this country as children and know only this country as home [because] these individuals lacked the intent to violate the law."  In short, these young people who meet the DACA Memo's objective criteria do not "meet [DHS's] enforcement priorities."  Dkt. 35, First Amended Complaint ("FAC") ¶ 15.  The criteria are:  came to the United States before the age of 16; continuously resided in the United States for at least five years preceding the date of the DACA Memo and was present in the United States on date of the DACA Memo; is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces; has not been convicted of a felony offense, a significant misdemeanor offense, or multiple misdemeanor offenses, and does not otherwise pose a threat to national security or public safety; and is not above the age of 30.  FAC ¶ 18.

The DACA Memo instructs that Defendants "should" grant DACA to "individuals who meet the above criteria."  Accordingly, since DACA's inception, these criteria have served as the determinative basis for USCIS's evaluation of individual DACA applications.  And on September 5, 2017, then-Acting Secretary of DHS Elaine Duke explained—consistent with these directives and practices—that "USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15,

2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
AGENCY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

2012 memorandum, but still had his or her application denied based solely upon discretion." FAC ¶ 19-22.

USCIS is tasked with implementing the DACA program, including collection of DACA applications, supporting documents, and fees; issuance of DACA approval and employment authorization notices; issuance of Requests for Evidence ("RFE") and Notices of Intent to Deny ("NOID"); and issuance of rejection, denial, and termination notices.  USCIS employees' discretion is heavily circumscribed by DHS's binding and non-discretionary policies and procedures for all government personnel implementing the DACA program, most significantly by the DACA Memo, the DACA Standard Operating Procedures ("DACA SOP"), and the DACA FAQ.  The DACA SOP reiterates the DACA Memo's objective and non-discretionary DACA criteria and sets forth well over a hundred pages of binding policies and procedures for processing DACA applications.  Among a host of other mandatory policies and procedures, the DACA SOP requires, "[a]s a matter of policy," that before denying a DACA application, a USCIS employee "will issue" the applicant an RFE and/or an NOID, and an opportunity to respond.  The DACA SOP remains effective and binding.  FAC ¶¶ 25-27, 99-100.

USCIS also has an "Internal DACA FAQ" document that refers back to the DACA Memo and DACA SOP.  FAC ¶¶ 98-102.  The Internal DACA FAQ lists specific scenarios in which an RFE or NOID is not required, none of which is applicable in this case.  The Internal DACA FAQ instructs USCIS employees that "[i]f you believe a straight denial is appropriate for a particular case that does not fall within one of [those] categories . . . please send a Request for Adjudicative Guidance ["RAG"] to the HQSCOPSDACA mailbox."  "Straight denial" is not defined.  Defendants have not provided the instructions for assessing RAGs.  Dkt. 39-1.

USCIS's evaluation of DACA applications is separate and independent from any removal proceedings in immigration court.  An individual (1) in removal proceedings, (2) with a final order of removal, or (3) with a voluntary departure order

may apply for and be approved for DACA and employment authorization and be considered lawfully present in the United States.  FAC ¶ 49.

DACA confers numerous benefits—most significantly, lawful presence and employment authorization—as part of Defendants' recognition that the United States "continue[s] to benefit . . . from the contribution of those young people who have come forward and want nothing more than to contribute to our country and our shared future."  FAC ¶ 31.  Since 2012, USCIS has approved DACA applications for over 700,000 young people, including over 200,000 Californians.  FAC ¶ 37.

### B.    Ms. Rueda's background, arrest, and DACA application

Claudia Rueda is a 24-year-old resident of Los Angeles, California.  She was born in Mexico and brought to the United States in 2001, when she was six years old.  She has lived and studied here continuously ever since.  She expects to earn a bachelor's degree at California State University in Los Angeles this summer, and is also a well-known community educator, activist, and immigrants' rights leader.  In short, she is the paradigmatic "Dreamer."  FAC ¶¶ 4, 70-73.

Ms. Rueda is a vocal and visible advocate for education, community-building, and demonstration—particularly on behalf of undocumented immigrant youth.  She leads protests, rallies, government petitions, and media initiatives highlighting injustices in our immigration and criminal laws, and among the agencies and individuals who enforce them.  FAC ¶ 73.

On April 24, 2017, Ms. Rueda's mother, Teresa Vidal-Jaime, was swept up as a collateral arrest during a criminal investigation of another member of their household.  Ms. Vidal-Jaime was not a person of interest in the criminal investigation, but because of her immigration status, immigration authorities placed her in immigration detention.  Like her mother, Ms. Rueda was not a target or person of interest in the investigation.  FAC ¶¶ 77-78.  Indeed, no one has ever suggested that she should be a person of interest in any criminal enterprise, and she has no

4

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
AGENCY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

criminal history except for two peaceful protest-related arrests that prosecutors did not pursue.  FAC ¶¶ 89, 93.

Ms. Rueda mobilized her community in protest of her mother's unjust arrest and detention.  She led a rally before ICE and the sheriffs who raided her home; organized a letter-writing campaign to ICE and CBP; set up a call line for people to contact ICE and CBP on her mother's behalf; spoke with the media in protest of her mother's arrest; and attended the Sheriff's Civilian Oversight Commission, where she again publicly spoke out against her mother's arrest.  In addition to these efforts, Ms. Rueda submitted a declaration that was served on ICE and considered by the immigration judge in her mother's bond hearing.  On May 12, 2017, Ms. Rueda was successful in helping to secure her mother's release on bond.  FAC ¶¶ 79-81.

On May 18, 2017, six days after she was reunited with her mother thanks in part to her own vocal advocacy, plainclothes immigration officers snatched Ms. Rueda without warning outside of her family's home.  At approximately 7:50 a.m., still wearing her pajamas, she went outside to move her family's car for street cleaning.  Before she could move it, three unmarked vehicles surrounded her on all sides.  Terrified, she got out of the car and put her hands up.  The officers surrounded her, asked her name in Spanish, said "that's her," handcuffed her, and put her into a white, unmarked van.  FAC ¶¶ 82-83.

Ms. Rueda is widely recognized for a photo of her sitting peacefully, with a fist in the air, at one of her past immigration demonstrations.  When she was arrested and detained, this photo went viral on the internet, as a "Free Claudia" campaign swept across Los Angeles and supporters flooded Defendants with requests for her release.  The *Los Angeles Times* was one of the media outlets that picked up and followed the story.  FAC ¶¶ 75-76.

An immigration judge ordered Ms. Rueda's release on her own recognizance after three weeks in immigration detention.  The Board of Immigration Appeals upheld the bond-free release order.  FAC ¶¶ 86-87.

Days later, Ms. Rueda submitted a complete, thorough, and honest DACA application to USCIS.  It included over a dozen letters from community and political leaders in support of her DACA application, including from United States Senator Kamala Harris and Los Angeles Mayor Eric Garcetti.  FAC ¶ 89.

Ms. Rueda met and continues to meet all of the objective DACA criteria that have governed USCIS's DACA determinations for years—and which DHS has repeatedly confirmed have not changed.  They include age, residency, and educational requirements, and the lack of any criminal convictions or national security or public safety threat.  No agency has ever asserted otherwise.  FAC ¶ 91.

Ms. Rueda attended the mandatory DACA background check, but then received no updates, correspondence, or requests from USCIS or any other agency for three months, until she received a one-line DACA denial notice without any explanation in October 2017.  FAC ¶ 43.

In response to this lawsuit, Defendants provided an Internal DACA FAQ document and redacted communications between USCIS and Border Patrol regarding Ms. Rueda and her DACA application.  Those communications show that USCIS's denial of Ms. Rueda's DACA application was based on (1) redacted information provided by Border Patrol after it conducted her retaliatory arrest; (2) Ms. Rueda's family associations; (3) USCIS's "rewrite [of] the analysis" based on those improper considerations; and (4) Ms. Rueda's RAP sheet ("Record of Arrests and Prosecutions").  The communications confirm that "there is no evidence [Ms. Rueda] has ever been directly involved in" any crime or any of the alleged conduct that led to her family members' arrests.  Dkt. 39-1; FAC ¶¶ 98, 102-103, 141.

## III.   ARGUMENT

### A.   Standard of review

In evaluating Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court must "accept as true all facts alleged in the complaint and construe them in the light most favorable to [Ms. Rueda]."  *Snyder*

1
2
3
4
5
6
7
8
9
10

*& Assocs. Acquisitions LLC v. U.S.*, 859 F.3d 1152, 1156-57 (9th Cir. 2017).  The Court must resolve Defendant's "facial attack" under Rule 12(b)(1) by "determin[ing] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  As a "general rule," the plaintiff is "master of a complaint for jurisdictional purposes." *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1040 (9th Cir. 2014).  The Court must deny Defendants' Rule 12(b)(6) motion if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

11

    **B.**    **The Court has jurisdiction.**

12

        **1.**    **Section 1252(g) does not apply.**

13
14
15
16
17
18
19
20

    Defendants' reliance on Section 1252(g) is misplaced.  It is contrary to the statute's plain text and established law because Ms. Rueda's statutory and constitutional challenge to USCIS's denial of her DACA application is not a challenge to any of the three discrete actions enumerated in Section 1252(g).  Every district court to squarely address this issue has rejected the same arguments that Defendants make here, and the Ninth Circuit has not undermined those decisions.  Moreover, even if Section 1252(g) did apply, Ms. Rueda's allegations fall within the Supreme Court's exception to the statute.

21
22
23
24
25
26
27
28

    Section 1252(g) must be "narrowly construed" and "applies only to three discrete actions[:] 'to *commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Wong v. U.S.*, 373 F.3d 952, 963-64 (9th Cir. 2004) (quoting *Reno v. AADC*, 525 U.S. 471, 482 (1999)) (emphasis in *AADC*).  The statute is not a "zipper clause," and its "mention of three discrete events along the road to deportation [is not] a shorthand way of referring to all claims arising from deportation proceedings." *Reno*, 525 U.S. at 482.  Moreover, it is telling that Congress used the phrase "arising from" in the statute, which only strips jurisdiction over claims with a tight "nexus" to

the three enumerated actions, in contrast to "broader language" such as "related to." *Aguilar v. ICE*, 510 F.3d 1, 10 (1st Cir. 2007) (citations omitted).

For these reasons, the Ninth Circuit has made clear that "even a claim closely related to the initiation of removal proceedings is not barred by [Section] 1252(g), so long as it does not challenge the decision to commence proceedings itself." *Inland Empire-Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408, at *15 (C.D. Cal. Feb. 26, 2018) ("*IEIYC II*"), *appeal pending* (citing *Alcaraz v. INS*, 384 F.3d 1150, 1160-61 (9th Cir. 2004)).

*U.S. v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004), is illustrative of Section 1252(g)'s narrow reach. There, "the only thing standing between [the immigrant] and deportation [was] the district court's order barring the INS from commencing deportation proceedings" on particular grounds. *Id.* at 1155. Because he sought "a description of the relevant law" (as applied to his criminal convictions) that would "form[] the backdrop against which the Attorney General later will exercise discretionary authority," the Ninth Circuit held that the district court had jurisdiction—even though the immigrant sought an injunction against the very commencement of removal proceedings. *Id.* Accordingly, in the DACA context, "[w]hile [Section 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions." *IEIYC II*, 2018 WL 1061408, at *16 (quoting *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006)).

Ms. Rueda's challenge to USCIS's unlawful denial of her DACA application does not arise from the commencement or adjudication of removal proceedings by another agency, nor obviously does it arise from the execution of a non-existent removal order. It arises from USCIS's administrative action in the evaluation of her DACA application, a process that operates separately and independently from any immigration court proceedings. Indeed, Defendants' own binding policies make clear

8

that an individual (1) in removal proceedings, (2) with a final order of removal, or (3) with a voluntary departure order may apply for and be approved for DACA.  FAC ¶ 30.  In other words, Ms. Rueda could bring these claims even if she was not in removal proceedings, and even if she is successful here, her removal proceedings will not automatically terminate.  Therefore, unsurprisingly, every district court (including three in this Circuit) to address individual DACA claims arising from USCIS's actions has rejected the applicability of Section 1252(g).  *See IEIYC II*, 2018 WL 1061408, at \*4-5; *Gonzalez Torres v. DHS*, 2017 WL 4340385, at \*4 (S.D. Cal. Sept. 29, 2017); *Ramirez Medina v. DHS*, 2017 WL 5176720, at \*6-7 (W.D. Wash. Nov. 8, 2017); *Coyotl v. Kelly*, 261 F. Supp. 3d 1328, 1338-40 (N.D. Ga. 2017).  The fact that those cases involved individuals who already had DACA is immaterial because the plaintiffs in all of those cases were also in removal proceedings—indeed, their claims were premised on the fact that USCIS was making DACA termination decisions based solely on the existence of those removal proceedings.  Yet Section 1252(g) did not apply.  The claims here are even more removed from Ms. Rueda's removal proceedings, so Section 1252(g) is irrelevant.

The cases that Defendants rely on (which were all decided before the DACA cases discussed above), *see* Dkt. 39 at 23, are inapposite.  Indeed, they show the distinction between claims that arise from the statute's three enumerated actions and those that do not.  The three Ninth Circuit decisions were all in the context of a petition for review from the Board of Immigration Appeals—meaning the petitioners were all directly challenging the execution of a removal order.  Similarly, the plaintiff in *Flores-Panso* sought the stay of an extant removal order.  This case does not come to the Court on a petition for review of a removal order, nor is Ms. Rueda attempting to frustrate the execution of a removal order.  Indeed, none exists.

Defendants' reliance on the Ninth Circuit's recent dicta in *Regents v. DHS*, 908 F.3d 476, 504 (9th Cir. 2018), is also misplaced.  There, the Ninth Circuit held only that Section 1252(g) did not strip the district court of jurisdiction over the plaintiffs'

challenge to the rescission of the DACA program.  The Ninth Circuit did not address or purport to overrule the on-point district court orders discussed above, nor did it cabin any of its several pronouncements regarding Section 1252(g)'s narrow reach.

In short, this Court has jurisdiction to review USCIS's actions with respect to Ms. Rueda's DACA application.  But even if the Court finds that Section 1252(g) applies, Ms. Rueda's claims present the sort of "outrageous" conduct that the Supreme Court has explained may be excepted from the statute's reach.  *AADC*, 525 U.S. at 491.  The following allegations in the FAC, individually or cumulatively, show a "plausible, clear inference" that the denial of Ms. Rueda's DACA application was based on outrageous or egregious government conduct that is not foreclosed from review by Section 1252(g), *Ragbir v. Homan*, -- F.3d --, 2019 WL 1811537, at *12 (2d Cir. Apr. 25, 2019):  (1) Defendants' officers targeted Ms. Rueda, put her in a van, and drove her to another city without a warrant, with no opportunity to contact her family or anyone else, in retaliation for her political speech and advocacy against immigration enforcement agencies, as part of a pattern and practice of such retaliation, FAC ¶¶ 82-83; (2) USCIS "rewr[o]te the analysis" of Ms. Rueda's DACA application on the basis of redacted information provided by the immigration enforcement agency that targeted Ms. Rueda for a retaliatory and unlawful arrest, FAC ¶ 141; (2) contrary to years of consistent agency practice, Defendants singled Ms. Rueda out for an adverse DACA determination even though she meets all of the DACA criteria solely on the basis of that redacted information and her family associations, FAC ¶ 142; and/or (3) Defendants effectively labeled Ms. Rueda a criminal on the basis of nothing and ignored DHS's DACA directives, FAC ¶ 142.

### 2.     Section 701(a)(2) does not apply.

Section 701(a)(2) does not apply if the Court can look to at least one of the following to assess an agency's action:  regulations; internal operating procedures; policy statements; usual practice; or judicial decisions.  *Alcaraz*, 384 F.3d at 1161-62;

*see Batalla Vidal v. Duke*, 2017 WL 5201116, at *11 (E.D.N.Y. Nov. 9, 2017) ("DHS's prior statements" regarding the operation of DACA provide law to apply).

Here, Defendants' brief spends six pages describing the various binding DACA policies and procedures, Dkt. 39 at 13-18, that are "not discretionary" and "applicable to all personnel" performing DACA-related functions, *Coyotl*, 261 F. Supp. 3d at 1334; *id.* ("confirmation from counsel for Defendants that '[DACA SOP] are the guidelines that [DACA] adjudicators are to apply'"). But then Defendants proceed to invoke the APA's "very narrow exception," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), to the "strong presumption in favor of judicial review of administrative action," *INS v. St. Cyr*, 533 U.S. 289, 298 (2001), which only applies where the agency has "*absolutely no guidance* as to how [] discretion is to be exercised," *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985) (emphasis added). In other words, to read Defendants' brief is to defeat their argument.

Courts have rejected Defendants' gambit over and over in DACA cases. *See IEIYC II*, 2018 WL 1061408, at *14-55; *Ramirez Medina*, 2017 WL 5176720, at *8; *Coyotl*, 261 F. Supp. 3d at 1340-41; *Batalla Vidal*, 2017 WL 5201116, at *11. Defendants cannot seriously contend—in the face of mounting judicial determinations and their own admissions—that the DACA Memo, DACA SOP, DACA FAQ, other DHS statements, memos, and policy directives, DHS's public statements, and USCIS's past practice do not provide law to apply with respect to DACA determinations.

Even if Defendants had unfettered discretion over similar deferred action decisions before DACA, their establishment of and adherence to binding procedures, definitions, restrictions, and practices bring their compliance squarely within the purview of 5 U.S.C. § 706. *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed

11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
AGENCY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

alteration of it) could constitute action that must be overturned" under the APA.).  In addition, it is "well-established that even where agency action is committed to agency discretion by law, review is still available to determine if the Constitution has been violated."  *Batalla Vidal*, 2017 WL 5201116, at \*11; *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) ("federal officials do not posses discretion to violate constitutional rights").

Against this backdrop, Defendants attempt to reframe Ms. Rueda's claims as a challenge to the exercise of prosecutorial discretion, rather than to USCIS's compliance with DACA policies, practices, and the Constitution.  Defendants' cases regarding challenges to discretionary decisions *not* to enforce are inapposite and shed no light on whether the DACA program is bereft of "judicially manageable standards" to judge Defendants' compliance with their own policies and practices.  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).[1]

Finally, Defendants' attempt to equate the DACA Memo and SOP with the 1981 deferred action instructions at issue in *Romeiro de Silva v. Smith*, 773 F.2d 1021 (9th Cir. 1985) ignores two dispositive distinctions.  First, like the 1978 version at issue in *Nicholas v. INS*, 590 F.2d 802 (9th Cir. 1979), DACA confers substantive benefits and is premised on humanitarian concerns.  The DACA Memo opens by explaining that DHS intends to protect "certain young people who were brought to this country as children and know only this country as home" and "lacked the intent to violate the law."  FAC ¶ 15.  Second, the DACA Memo and SOP are replete with mandatory language.  FAC ¶¶ 15, 19 ("necessary to ensure" non-prioritization; USCIS "should" grant DACA for "individuals who meet the [DACA Memo's] criteria"; "USCIS is directed to begin implementing this process within 60 days";

---

[1] *Morales de Soto v. Lynch*, 824 F.3d 822 (9th Cir. 2016) has no application here. There, to secure the favorable exercise of prosecutorial discretion, the plaintiff was challenging a valid reinstatement of removal issued in immigration court, and her claims were entirely bound up in what was happening in her removal proceedings. *Id.* at 825.  Ms. Rueda's claims are distinct from and independent of anything happening in immigration court.

"USCIS process shall also be available to individuals subject to a final order of removal"). *See Regents*, 908 F.3d at 502 ("on its face, 'should' is fully capable of expressing obligation or necessity"). Hence, the DACA SOP's objectively verifiable criteria have been the determinative basis for USCIS's DACA decisions since its inception. *Texas v. U.S.*, 809 F.3d 134, 171 (5th Cir. 2015). Indeed, DHS explained—consistent with the directives of the DACA Memo—that "USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria . . . but still had his or her application denied based solely upon discretion." FAC ¶ 22. Such "agency practice provide[s] a 'meaningful standard by which this court may review [the agency's] exercise of discretion.'" *ASSE Intern., Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015) (citations omitted).

In short, there is ample law to apply here. Ultimately, Defendants seek to evade review of agency action by improperly conflating the jurisdictional question (whether there is law to apply in the form of policies and practices) with the merits question (whether Defendants' actions were arbitrary, capricious, or unconstitutional). But "whether or not the government's policy and explanations are reasonable under the [APA] is a merits question, not a question of the court's jurisdiction." *Schnitzler v. U.S.*, 761 F.3d 33, 39 (D.C. Cir. 2014).

### C.   Ms. Rueda has stated APA and constitutional claims.

On the merits, Defendants rely on a selectively produced, redacted sliver of the administrative record to argue that all of Ms. Rueda's APA and constitutional claims should be dismissed. But Ms. Rueda's claims are based on established administrative and constitutional law. Defendants' motion should be denied in its entirety.

### 1.   Ms. Rueda has stated *Accardi* claims under the APA.

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a limited standard of review, but "courts retain a role, and an important one, in ensuring that

agencies have engaged in reasoned decisionmaking," including in the exercise of discretion.  *Judulang v. Holder*, 565 U.S. 42, 53 (2011).

One well-established basis on which an agency's action must be set aside is the agency's failure to abide by its own internal policies.  *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *National Assoc. of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003) ("Having chosen to promulgate the . . . [p]olicy, the [agency] must follow that policy.").  Several courts have set aside Defendants' individual DACA terminations for failure to abide by the program's policies.  *See IEIYC II*, 2018 WL 1061408; *Gonzalez Torres*, 2017 WL 4340385; *Ramirez Medina*, 2017 WL 5176720; *Coyotl*, 261 F. Supp. 3d 1328.

### a.  Under the DACA Memo, Defendants "should" have granted Ms. Rueda DACA, and no explanation or policy exists for this departure from policy and practice.

The DACA Memo instructs that Defendants "should" grant DACA to "individuals who meet the [DACA] criteria."  FAC ¶ 19.  Those criteria are "objective and non-discretionary."  *Gonzalez Torres v. DHS*, 2018 WL 1757668, at *9 (S.D. Cal. Apr. 12, 2018), *appeal pending*.  Therefore, the DACA Memo on its face requires Defendants to grant DACA to applicants who meet the criteria.  *See Regents*, 908 F.3d at 502 ("on its face, 'should' is fully capable of expressing obligation or necessity").  Because the DACA Memo and its criteria are a function of DHS's statutory obligation to "[e]stablish[] national immigration enforcement policies and priorities," 6 U.S.C. § 202(5), and because the DACA Memo explains that individuals who meet the criteria do not "meet our enforcement priorities," the DACA Memo is fairly read as requiring Defendants to grant DACA to a person who meets the criteria.  *See McDonald v. Gonzales*, 400 F.3d 684, 686-87 (9th Cir. 2005) ("Current INS policy is reflected in an INS memo" that "lists five factors for the agent to weigh [in making prosecutorial discretion decisions]. . . . Had these instructions been followed in [this] case, it is hard to imagine that [the petitioner] would today be facing removal.").  Nowhere in the administrative record or in

Defendants' briefing do they dispute that Ms. Rueda has always met all of the DACA criteria. This alone provides an adequate basis for the Court to hold that Defendants violated the APA.

Defendants argue that no such requirement exists because pursuant to USCIS's DACA FAQ, USCIS "retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met." Dkt. 39 at 14. But over a course of at least five years—including, importantly, the period during which Ms. Rueda's DACA application was under review—"USCIS [did not] identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion." FAC ¶¶ 19-22. Therefore, even crediting Defendants' assertion that USCIS retained the discretion to ignore the DACA criteria in making DACA determinations, the agency's departure from its "settled course of adjudication" in Ms. Rueda's case could constitute an APA violation, and the claim cannot be dismissed. *Yang*, 519 U.S. at 32; *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1109-16 (N.D. Cal. 2018) (citing *Cal. Trout v. FERC*, 572 F.3d 1003 (9th Cir. 2009)) (where an agency's "past practice evinces the existence of an implicit rule or policy," if there is a "plausible inference" of a departure from that implicit rule or policy, the agency's motion to dismiss an APA claim must be denied).

Defendants attempt to avoid this obvious APA claim by attaching a deposition excerpt from Donald Neufeld in another case. Dkt. 39-1. This effort to cast doubt on DHS's official public pronouncement by relying on double-hearsay fails. Indeed, Mr. Neufeld himself did not know of any such cases and could not "recall the specific circumstances" of any such purported case, or even how he came to learn of them or from whom. Dkt. 39-1 at 10-11 (dep. tr. at 181, 185). Defendants have not defeated the "plausible inference" that they departed from a "settled course of adjudication" in Ms. Rueda's case, and their motion to dismiss must be denied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b.    Under the DACA SOP, Defendants should have issued Ms. Rueda an RFE or NOID.

Under the DACA SOP, "[a]s a matter of policy, officers will issue an RFE or a[n NOID]" before denying a DACA application where USCIS needs more evidence to establish that the application should be granted.  FAC ¶ 51.  Defendants argue that this provision does not apply to Ms. Rueda's case because other policies permit denial without the issuance of an RFE or an NOID.  Dkt. 39 at 15, 17-18, 28.  Those policies, however, contradict the DACA SOP on their face, and this "unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice."  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (alterations, quotation marks, and citation omitted).  Indeed, "[t]o maintain two irreconcilable policies, one of which . . . apparently enables the agency . . . to circumvent the other . . . is arbitrary and capricious agency action."  *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 935 (D.C. Cir. 2008) (citing *Yang*, 519 U.S. at 32).  This alone requires that Defendants' motion be denied.

### 2.    Ms. Rueda has stated a claim that Defendants adopted an arbitrary policy and did not engage in "reasoned decisionmaking."

Even in the exercise of discretion, agencies must engage in "reasoned decisionmaking," and the Court must "examine[e] the reasons for agency decisions— or, as the case may be, the absence of such reasons."  *Judulang*, 565 U.S. at 52-53.  Agency policies and actions must be set aside if they do not demonstrate a reasoned evaluation of the "relevant factors."  *Id.* at 55 (quotation marks and citation omitted).  "The inclusion of an improper factor in reaching a discretionary decision is grounds for remand" to the agency.  *Ng v. INS*, 804 F.2d 534, 539 (9th Cir. 1986).  And immigration-related policies and decisions—including those at the discretion of the

agency—must be based on a person's "fitness to remain in the country." *Judulang*, 565 U.S. at 55.[2]

Here, Ms. Rueda has sufficiently pleaded APA violations because a sub silentio policy of denying DACA applications without notice or an opportunity to respond where there is "no evidence" of criminality—and where the decision is based not on any relevant factors or fitness to remain in the country, but on family association—is arbitrary, capricious, and an abuse of discretion, for several reasons.

*First*, any policy of denying DACA applications on the basis of family association is improper because it constitutes an irrational sub silentio departure from the DACA Memo and the entire program, which exist in order to avoid punishing young people for any alleged or purported transgressions of others. *See FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009) ("agency may not . . . depart from a prior policy sub silentio or simply disregard rules that are still on the books").

*Second*, given Defendants' years-long policy and practice of granting DACA to everyone who met the DACA Memo's objective criteria, a departure from that policy and practice where there is "no evidence" of any wrongdoing but only an unsubstantiated assumption that the applicant was "aware of" others' alleged criminal activities is arbitrary and capricious. *See NRDC, Inc. v. EPA*, 966 F.2d 1292, 1305 (9th Cir. 1992) (disparate treatment and departure from "normal . . . process based on . . . unsubstantiated assumption[s]" is "arbitrary and capricious"); *U.S. v. One 1985 Mercedes*, 917 F.2d 415, 422 (9th Cir. 1990) ("Where the government does not act in a consistent and predictable manner, it runs the risk of violating the [APA] and of having its action invalidated.").

*Third*, a policy or decision that ignores the DACA Memo's criteria (*i.e.*, the "relevant factors") and instead results in adverse action on the basis of family

---

[2] An agency must also "cogently explain why it has exercised its discretion in a given manner." *Nat'l Parks Conservation Assoc. v. EPA*, 788 F.3d 1134, 1142 (9th Cir. 2015). Therefore, USCIS's lack of any explanation in Ms. Rueda's DACA denial notice is a sufficient basis for holding that the agency violated the APA.

association and unsubstantiated assumptions about the applicant's "awareness" of the alleged activities of others is a "method of disfavoring deportable aliens . . . that neither focuses on nor relates to an alien's fitness to remain in the country," and therefore fails to demonstrate "reasoned decisionmaking"; it is arbitrary, capricious, and an abuse of discretion. *Judulang*, 565 U.S. at 52-55. Stated differently, Defendants' action does not demonstrate a "rational connection between the facts found and the choice made." *Nw. Env. Defense Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. 2007).

For these individually and cumulatively sufficient reasons, Defendants' motion to dismiss Ms. Rueda's APA claims must be denied.

### 3.    Ms. Rueda has stated a retaliation claim.

A First Amendment retaliation claim requires a showing that (1) the plaintiff engaged in a constitutionally protected activity; (2) the plaintiff was subjected to an adverse government action that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a causal relationship between the plaintiff's constitutionally protected activity and the adverse government action. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). The governmental defendant's knowledge of the plaintiff's engagement in the constitutionally protected activity, as well as the temporal proximity of the activity and the adverse action are probative of a causal relationship. *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003) (three to eight months supports inference of retaliation). The adverse action need not be otherwise impermissible if it was the product of "the existence and enforcement of an official policy motivated by retaliation." *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954-55 (2018).

The FAC is replete with facts demonstrating Ms. Rueda's political speech and other protected activities in protest of Defendants' actions generally and with respect to the arrest and detention of her mother specifically. FAC ¶¶ 72-80. Ms. Rueda was vocally criticizing the immigration enforcement agency Defendants, including at their

own events, and gaining media attention for doing so, between April 24 and May 12, 2017. Then, on May 18, 2017, the Border Patrol Defendants' officers surrounded her early in the morning with three unmarked cars and no warrant, proclaiming "that's her" and shuttling her to an immigration detention center hundreds of miles away without any opportunity to contact family or anyone else. FAC ¶¶ 83-85. Given the timing and the manner of these actions, there is a "plausible, clear inference" that they were in retaliation for Ms. Rueda's protected activities. *Ragbir*, -- F.3d --, 2019 WL 1811537, at *12. Indeed, these actions are consistent with Defendants' pattern and practice of deliberately targeting immigration activists for adverse action since early 2017. FAC ¶¶ 109-114.

Three months later, on August 21, 2017, an officer from that arresting agency emailed USCIS regarding Ms. Rueda. Dkt. 39-1 at 17. That email is entirely redacted, but the USCIS employee responded: "I will rewrite my analysis then" regarding Ms. Rueda's DACA application. *Id.* That is a direct link between the retaliatory arrest and the DACA denial. The portions of the resulting emails that Defendants have produced do not cite Ms. Rueda's activism as the reason for her DACA denial; but they were directly influenced by and the result of a redacted email from the office that conducted her retaliatory and unlawful arrest, they seemingly do not include the actual Request for Adjudicatory Guidance sent to HQSCOPS, they did reference Ms. Rueda's protest-related arrests, and they are obviously not the entire administrative record of the review and analysis of Ms. Rueda's DACA application. *Id.* Given this direct link between the arrest and the DACA denial, Ms. Rueda's retaliation claim cannot be dismissed at this stage—the full administrative record must be produced, and Ms. Rueda's constitutional claims against the arresting officers (whose response to the FAC is forthcoming on June 9, 2019) must be tested.

Moreover, Defendants' argument that Ms. Rueda's retaliation claim should be dismissed because USCIS could have denied her DACA application in any event for absolutely no reason or any reason at all, Dkt. 39 at 31 (which is wrong, for the

myriad reasons discussed in this opposition), fails because the general permissibility of an adverse action does not defeat a retaliation claim upon a showing of "the existence and enforcement of an official policy motivated by retaliation." *Lozman*, 138 S. Ct. at 1954-55. That is precisely the showing made by the allegations of (1) a retaliatory and unlawful arrest (2) as part of a pattern and practice of adverse action against immigration activists. Defendants' motion to dismiss Ms. Rueda's retaliation claim must be denied.

### 4.     Ms. Rueda has stated a due process claim.

Defendants mischaracterize Ms. Rueda's due process claim as an argument that she has a constitutional entitlement to DACA. Dkt. 39 at 30-31. That is not the claim. Rather, Defendants' public pronouncements and actions—in the form of the DACA Memo and their policy and practice of granting DACA to every applicant who met the DACA criteria—created a "mutually explicit understanding" that applications would be assessed on the basis of the DACA criteria, relevant factors, and reasoned decisionmaking. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *see Ramirez Medina*, 2017 WL 5176720, at *9 ("These criteria established a quid pro quo from the federal government to the potential applicants."). And the "Constitution itself" confers the "narrow liberty interest" of Defendants' "strict compliance" with the terms of the DACA program, including, at the very least, the issuance of pre-denial notice and an opportunity to respond. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012).

That is particularly true before Defendants took adverse action against Ms. Rueda on the basis of her family associations and unsubstantiated assumptions—not even assumptions of wrongdoing, but of possible "awareness" of others' alleged wrongdoing. *See Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013). Recently, the Ninth Circuit held that after there has been a determination that an immigrant does not pose a threat to public safety, a subsequent arrest and detention based on alleged gang affiliation, without notice and an opportunity to respond, is a procedural

due process violation.  *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). This case presents a similar scenario:  an immigration judge determined that Ms. Rueda is not a safety threat and ordered her released on her own recognizance (an order that the Board of Immigration Appeals affirmed).  FAC ¶¶ 86-87.  Shortly thereafter, Defendants took adverse action against her by denying her DACA application on the basis of alleged criminal associations without any procedural protections.  Indeed, here the violation of the right to respond is more egregious because there is not (nor could there be) any allegation or evidence that Ms. Rueda herself is a member of a gang or criminal organization, or has committed a crime. Defendants' motion to dismiss Ms. Rueda's due process claim must be denied.

### 5.    Ms. Rueda has stated an equal protection claim.

A plaintiff may maintain an equal protection violation under the Fifth Amendment as a "class of one" by alleging that she has irrationally or discriminately been treated differently from others similarly situated, regardless of the "subjective motivation" of the different treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000).  As explained above, consistent with the DACA Memo's directive that Defendants "should" grant DACA to individuals who meet the objective DACA criteria, during the time period when Ms. Rueda applied for DACA, Defendants had not been able to identify any "denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion."  FAC ¶¶ 19-22.  But Ms. Rueda—who meets all of the DACA criteria— had her DACA application denied (without even receiving an RFE or an NOID pursuant to the DACA SOP).  Whether this was on the basis of her political speech, her family association, or some combination of the two, the denial constitutes irrationally different treatment (for all of the reasons discussed above) from so many others similarly situated.  And Defendants' own emails make clear that the discrimination was intentional—USCIS "rewrote" the analysis of Ms. Rueda's

DACA application based on her family association after receiving an email from the agency that unlawfully targeted and unlawfully arrested her.

Defendants mischaracterize this claim as a "selective enforcement" claim. It is not. It is a claim about the denial of benefits granted to other similarly situated individuals, because it is premised on the DACA denial—not for anything happening in immigration court, which is where "enforcement" occurs. As already explained, USCIS's evaluation of DACA applications is separate and independent from any removal proceedings in immigration court. Moreover, none of the considerations that apply to selective enforcement claims applies here because DACA determinations are not made without any administrable standards. To the contrary, as already discussed above, DACA determinations are made subject to objective and non-discretionary standards and policies. Defendants' motion to dismiss Ms. Rueda's equal protection claim must be denied.

### D. The Court should grant leave to amend insufficiently pleaded claims.

Pursuant to Rule 15(a)(2), Ms. Rueda respectfully requests leave to amend any claims that the Court holds are insufficiently pleaded. "Requests for leave should be granted with extreme liberality. A court should not deny leave to amend except in the presence of bad faith, undue delay, prejudice to the opposing party, and/or futility of amendment. This determination should be performed with all inferences in favor of granting the motion." *Franco-Gonzalez v. Napolitano*, 2011 WL 13117372, at \*1 (C.D. Cal. July 18, 2011) (Gee, J.) (quotation marks, alterations, and citations omitted); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV. CONCLUSION

For the foregoing reasons, the Court should deny, in its entirety, Defendants' motion to dismiss Ms. Rueda's First Amended Complaint. Alternatively, the Court should grant Ms. Rueda leave to amend any insufficiently pleaded claims.

1  Dated:  May 10, 2019          Respectfully submitted,

2                                /s/ John C. Ulin
3                                ARNOLD & PORTER KAYE SCHOLER LLP
                                 JOHN C. ULIN (SBN 165524)
4                                john.ulin@arnoldporter.com
5                                777 South Figueroa Street, 44th Floor
                                 Los Angeles, CA 90017
6                                T: (213) 243-4000
7                                F: (213) 243-4199

8                                JABA TSITSUASHVILI (SBN 309012)
9                                jaba.tsitsuashvili@arnoldporter.com
                                 601 Massachusetts Avenue NW
10                               Washington, DC 20001
11                               T: (202) 942-5000
                                 F: (202) 942-5999
12
13                               *Attorneys for Plaintiff*

14
15              **CERTIFICATE OF ELECTRONIC FILING**
16       I hereby certify that on May 10, 2019, I electronically filed the foregoing
17  document with the Clerk of the Court using CM/ECF.
18                               /s/ Jaba Tsitsuashvili
19
20
21
22
23
24
25
26
27
28

23