JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 616-1246
Fax: (202) 305-7000
Email: jeffrey.robins@usdoj.gov
JAMES J. WALKER
Trial Attorney
*Counsel for Federal Agency Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA SARAHI RUEDA VIDAL,<br><br>  Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>  Defendants. | Case No. 2:18-cv-9276- DMG-PLA<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>**Judge**: Hon. Dolly M. Gee<br>**Courtroom**: 8C<br>**Hearing**: Friday, May 31, 2019<br>**Time**: 9:30am |

2:18-cv-9276- DMG-PLA

# ARGUMENT

## I.   The Court lacks jurisdiction under 8 U.S.C. § 1252(g).

Although Federal Agency Defendants acknowledge the jurisdictional bar at 8 U.S.C. § 1252(g) is narrowly interpreted by the Ninth Circuit, that section is directly on point here. Application of section 1252(g) to bar jurisdiction here is wholly consistent with the Supreme Court's decision in *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483 (1999). Accordingly, the Court should dismiss Plaintiff's amended complaint because Plaintiff cannot demonstrate that the action challenged here, the denial of Plaintiff's DACA request—a pure exercise of discretion—does not "arise from" the "decision or action" to adjudicate her removal proceedings, that had already been commenced on May 18, 2017. *See* Dkt. No. 39-2. She did not request deferred action of her removal until on June 19, 2017 – after removal proceedings were commenced against her. *See* Dkt. 39-1. Nor do Plaintiff's allegations and the administrative records before the Court support that the discretionary denial of Plaintiff's DACA request was based on outrageous or egregious government conduct that could possibly supersede section 1252(g)'s statutory bar.

Plaintiff's reliance on *U.S. v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004), is misplaced. There, the Ninth Circuit applied its own exception to section 1252(g) that permitted review of "purely legal questions." The purely legal question in *Hovsepian* was whether resentencing pursuant to a post-conviction change in the law rendered plaintiff deportable. *Id*. at 1155-56.[1] Here, however, there is no legal question regarding how the Government may exercise its discretion in a manner that denies a DACA request and permits the continued adjudication of removal proceedings because Plaintiff cannot identify any limitations on Federal Agency Defendants' exercise of discretion in the process of their consideration of her DACA request. This is fully consistent with the

---

[1] *Hovesepian's* holding on this point is further distinguishable because the challenged resentencing that led to the deportation charges also resulted in but did not arise from the decision or action to commence, adjudicate, or execute removal orders.

Ninth Circuit's finding that "individual 'no deferred action' decisions . . . fall exactly within Section 1252(g) as interpreted by the Court in *AADC*." *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 504 (9th Cir. 2018). Moreover, in the cases that Plaintiff cites, Dkt. No. 41 at 9, citing *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 1061408, at *4-5 (C.D. Cal. Feb. 26, 2018); *Gonzalez Torres v. DHS*, 2017 WL 4340385, at *4 (S.D. Cal. Sept. 29, 2017); *Ramirez Medina v. DHS*, 2017 WL 5176720, at *6-7 (W.D. Wash. Nov. 8, 2017); and *Coyotl v. Kelly*, 261 F. Supp. 3d 1328, 1338-40 (N.D. Ga. 2017), those courts found that there were separate legal questions regarding the process of terminating DACA, rather than whether to approve deferred action under DACA, that are not at issue here.

Finally, although an individual already subject to removal proceedings may request DACA, the denial of such request during the pendency of those proceedings is a clear statement of the Government's decision to continue to adjudicate those proceedings. The inverse scenario also demonstrates this point, as an individual granted DACA in removal proceedings will use the grant of DACA to seek termination of those removal proceedings. *See Torres v. U.S. Dep't of Homeland Sec.*, No. 17-1840, (S.D. Cal. Sept. 29, 2017) at Dkt. No. 20-5, plaintiff's Exhibit D, Immigration Court Order (dated November 17, 2017) (following the court's preliminary injunction order reinstating plaintiff's DACA, plaintiff immediately sought and was granted termination of his removal proceedings on the basis of his DACA reinstatement notice).

Accordingly, the Court should find that section 1252(g) applies to Plaintiff's challenges and the Court should dismiss her amended complaint in its entirety.

## II.   The Court lacks jurisdiction under 5 U.S.C. § 701(a)(2).

Plaintiff argues that 5 U.S.C. § 701(a)(2) does not work to bar jurisdiction because there is law to apply to assess Federal Agency Defendants' actions. *See* Dkt. No. 41 at 10. And as Plaintiff points out, Federal Agency Defendants describe the various policies and procedures applicable to Plaintiff's DACA request. *See* Dkt. No. 39 at 13-18. However,

what Plaintiff has not and cannot refute is that these policies and procedures do nothing to constrain Federal Agency Defendants' discretion as applied to deny Plaintiff's DACA request.

The problem with Plaintiff's arguments is that she misreads and misapplies the applicable case law to the policies and procedures relevant to Plaintiff's DACA request. The Ninth Circuit's holdings in *Nicolas* and *Romeiro de Silva* could not more clear. The Ninth Circuit found jurisdiction to review the 1978 Operating Instructions not just because there were humanitarian factors, but because "the Instruction plainly contemplates a scheme where the status would preclude any deportation as long as the relevant humanitarian factors are still compelling." *Nicholas v. INS*, 590 F.2d 802, 807 (9th Cir. 1979). In response to revisions in the 1981 Operating Instructions that changed operative language regarding deferred action from "shall" to "may," the Ninth Circuit held that "it is no longer possible to conclude that [the instruction] is intended to confer any benefit upon aliens, rather than [to operate] merely for the INS's own convenience." *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1024-25 (9th Cir. 1985). Contrary to Plaintiff's assertion, the humanitarian factors in the 1978 version were substantively identical in the 1981 INS instructions. *Romeiro de Silva*, 773 F.2d at 1023 n.1.

Like the 1981 INS instructions, the DACA SOP does not contain a mandatory "shall" that curtails USCIS's discretion, but rather repeatedly states that an individual who meets DACA criteria *may* be considered for a DACA grant. *See, e.g.*, USCIS "DACA Frequently Asked Questions," available at https://www.uscis.gov/archive/frequently-asked-questions (last visited May 17, 2019), at Q:28 ("U.S. Citizenship and Immigration Services (USCIS) retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met."); Form I-821-D Instructions (Jan. 9, 2017) at 11, available at https://www.uscis.gov/sites/default/files/files/form/ i-821dinstr.pdf (last visited May, 17 2019) ("Even if you satisfy the threshold criteria for consideration of DACA, USCIS may deny your request if it determines, in its unreviewable discretion, that an exercise of prosecutorial discretion is

not warranted in your case."). Nor is there other language that Plaintiff can point to that mandates the application of additional procedures to Plaintiff's DACA request. *See* Dkt. No. 39 at 5-9.

Additionally, Plaintiff's reliance on the "should" analysis from *Regents* is not persuasive. There, the Ninth Circuit was reviewing the text of the memoranda leading to the rescission of DACA, not the text of the 2012 Napolitano Memo nor the USCIS DACA Standard Operating Procedures at issue here. And, although the Ninth Circuit noted in that context that "should . . . is sometimes used to create mandatory standards," *Regents*, 908 F.3d at 502, citing *Should*, Garner's Dictionary of Legal Usage (3d ed. 2011), that is hardly the case here. *See supra* p.3.

Moreover, the Ninth Circuit's finding that "individual 'no deferred action' decisions . . . fall exactly within Section 1252(g) as interpreted by the Court in *AADC*," *Regents*, 908 F.3d at 504, acknowledges the possibility of such discretionary action – in contrast to the Fifth Circuit's decision in *Texas v. U.S.*, 809 F.3d 134, 171 (5th Cir. 2015).

Ultimately, perhaps the point is semantic as to whether the Court lacks jurisdiction because Federal Agency Defendants have demonstrated (1) that there are no limitations on how Federal Agency Defendants exercised their discretion with regard to Plaintiff's DACA request and (2) that Plaintiff has failed to state a claim because Federal Agency Defendants' exercise of discretion with regard to Plaintiff's DACA request does not violate any policies or procedures.

### III. The language of the DACA SOP and other guidance in no way mandates or creates an obligation to grant DACA.

Plaintiff actually does little work to establish that she should be granted DACA because she simply claims that she can meet the guidelines for DACA consideration. Although many of Plaintiff's responses to Federal Agency Defendants' jurisdictional arguments attempt to separate the ultimate discretion over DACA from "binding procedures, definitions, restrictions, and practices," Dkt. No 41 at 11-12, Plaintiff broadly proclaims with regard to the merits that "Defendants 'should' have granted Ms. Rueda

DACA. . . ." *Id.* at 14. This simply does not bear out after review of the relevant documents. *See* Dkt. No. 39 at 5-9. Thus, there is no adequate support for Plaintiff's allegations of a departure from practice, that she should have been issued DACA itself and/or a NOID or RFE, or that there is any particular standard (like in *Judulang*) that governs whether an agency's decision to continue pursuing ongoing removal proceedings or to grant a temporary deferral of those proceedings as a pure exercise of prosecutorial discretion.

### A. Plaintiff's DACA denial is provided for in the DACA SOP and is an existing part of DACA practice.

Despite Plaintiff's assertions, this is not a case where Federal Agency Defendants have departed from a "general policy by which its exercise of discretion will be governed." *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996). In short, a sparing use of available ultimate discretion is not the kind of shift in agency practice that becomes reviewable under the Administrative Procedure Act. *California Trout v. F.E.R.C.*, 572 F.3d 1003, 1022 (9th Cir. 2009), simply doesn't stand for this position. Rather, *California Trout* and its progeny discuss cases where ultimate discretion was somehow curtailed, as in the application of the good cause exception in *California Trout*. 572 F.3d at 1025–26 (finding that "[w]here, as here, the agency's rule gives it the discretion either to consider or to ignore certain factors, we would be remiss to eliminate this discretion by requiring the agency to *always* ignore certain factors just because it has 'often' ignored these factors in the past.") (court's emphasis).

Here, Plaintiff does not allege that other DACA requestors who lived with suspected drug traffickers either sought or ultimately received DACA. Nor can she demonstrate that USCIS has never exercised discretion in its consideration of a DACA request. Notably, the statement that Plaintiff cites does not support that discretion has not been exercised in this way, but simply states that USCIS "has not been able to identify specific denial cases," involving a pure exercise of discretion. *See* Dkt. No. 39 at 9 (citing Dkt. No. 39-1, Deposition of Donald Neufeld, Associate Director for Service Center

Operations for USCIS at 170-89) (explaining that there had been specific DACA requests that were denied solely in USCIS's discretion).

Additionally, Plaintiff's citation to *McDonald v. Gonzales* is misleading. The Court there considered a memorandum permitting immigration officials to exercise prosecutorial discretion in cases of false claims to citizenship that is decidedly different from the guidance now before the Court. *See* 400 F.3d 684, 686–87 (9th Cir. 2005) (relevant INS policy stated that "if . . . the election law penalizes the act of voting only upon an additional finding that the individual acted 'knowingly' or 'willfully,' adjudicating officers *cannot conclude* that an applicant voted unlawfully until they assess the circumstances surrounding the voting, the applicant's credibility, and the documentary evidence.") (emphasis added). Similarly, while Plaintiff points to the decision in *Gonzalez Torres v. DHS*, finding that the DACA criteria are objective and non-discretionary, the court was looking at termination procedures and not DACA denial procedures. *See* 2018 WL 1757668, at *9 (S.D. Cal. Apr. 12, 2018), *appeal pending*.

**B. The DACA SOP does not require an RFE or NOID in Plaintiff's case.**

Despite Federal Agency Defendants' detailed explanation of various regulations, policy memoranda, the DACA SOP, and other guidance and how they relate – Plaintiff states in conclusory fashion that those policies "contradict the DACA SOP on their face." Dkt. No. 41 at 16. However, as Plaintiff admits, language in the DACA SOP regarding RFE or NOID issuance only calls for such issuance as a matter of policy "where USCIS needs more evidence to establish that the application should be granted." Dkt. No. 41 at 16. Here, USCIS determined that it needed no more evidence to establish that Plaintiff's application should be denied in conformity with its internal policies – and thus Federal Agency Defendants' motion to dismiss should be granted. *See* Dkt. No. 39-2.

### C. Plaintiff's denial, though unreviewable, was an exercise of reasoned decision making nonetheless.

Federal Agency Defendants acknowledge the holding of *Judulang* and again return to the principle that exercises of prosecutorial discretion are of such a discretionary nature that there are not particular relevant factors for USCIS to consider – and that agency guidance and policy, while identifying general factors to guide consideration and procedures, do not curtail the ultimate exercise of discretion with regard to DACA requests.

Importantly, the *Judulang* Court did not review the discretionary portion of a challenged process. Rather, it noted that the discretionary selection of a charge for an NTA by a disinterested immigration officer led to a non-discretionary—and not well-reasoned—consequence that some otherwise deserving individuals became ineligible for a form of discretionary relief from removal. *Judulang v. Holder*, 565 U.S. 42, 57-59 (2011). The Court made no findings as to the reasonableness of the discretionary decision-making in the selection of the NTA charge, nor in whether to pursue removal or not, for that matter. As explained, the Supreme Court has previously foreclosed such challenges and this Court should do so here. *See AADC*, 525 U.S. at 483; *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Furthermore, Plaintiff's suggestion that Federal Agency Defendants' exercise of discretion here must be based on a person's "fitness to remain in the country," is without any basis. Dkt. No. 41. Indeed, that consideration arose in *Judulang* because that plaintiff had previously been granted lawful permanent resident status, and because the mandatory operation of the regulations at issue in that case failed to factor in that previous grant of lawful permanent resident status. 565 U.S. at 64 ("The BIA's comparable-grounds rule . . . allows an irrelevant comparison between statutory provisions to govern a matter of the utmost importance—whether lawful resident aliens with longstanding ties to this country may stay here."). There was no constraint on agency discretion in *Judulang*, as there is none here. As discussed above, there is no

support for the argument that Federal Agency Defendants' actions here have departed from any other policy or practice.

### IV. Plaintiff fails to support a retaliation claim by conflating the timing of her activities with Federal Agency Defendants' denial of her DACA request.

Plaintiffs' argument regarding temporal proximity of the activity and the adverse action are not probative of a causal relationship here. Most tellingly, the adjudication of Plaintiff's DACA request was triggered by her filing that request soon after the events she now points to as the basis for a clear inference of retaliation. Additionally, the criminal encounter that occurred at her residence before her DACA request and that formed the basis for Federal Agency Defendants' negative exercise of discretion, also occurred only months before the agency action now challenged. Furthermore, Plaintiff's allegations regarding the redacted text at Dkt. No. 39-2 or purported explanation of Federal Agency Defendants' reference to "rewrite[ing]" analysis, are no more that speculation and ultimately lack merit.

### V. Plaintiff fails to support her due process and equal protection claims.

Nothing in Plaintiff's response to Federal Agency Defendants' motion to dismiss establishes that Plaintiff has any expectation in the receipt of DACA or in any additional process related to it, and case law that address the process due when liberty interests are at issue is inapposite to the present matter. Plaintiff has not established such a liberty interest in a discretionary administrative grace and she cannot. *Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016).

Plaintiff does little to respond to Federal Agency Defendants' argument other than to repeat the same insufficient conclusory arguments from her amended complaint – which are both insufficient to support her claim and have been refuted by Federal Agency Defendants. Plaintiff asserts that she "should" have been granted DACA notwithstanding no limitations on Federal Agency Defendants' ultimate exercise of discretion. Plaintiff's claim is based on Federal Agency Defendants' own statement that they could not identify cases denied based on pure discretion, which itself was clarified by the deposition of

1  Donald Neufeld. *See* Dkt. No. 39-1 at 176 ("[U]ntil very recently, USCIS lacked any
2  ability to automatically track and sort the reasons for DACA denials."). Most telling,
3  however, is that but for this allegation, which Federal Agency Defendants have now
4  demonstrates is not wholly accurate, Plaintiff does not identify any basis for her
5  conclusion that Federal Agency Defendants have not issued pure discretionary denials of
6  requests for deferred action under DACA. More importantly, she cannot show that
7  USCIS could not have done so in a case like hers.

## CONCLUSION

In sum, Plaintiff has failed to establish jurisdiction for this Court to consider her challenge to USCIS's discretionary denial of her DACA request. Congress expressly precluded such jurisdiction through 8 U.S.C. § 1252(g). Plaintiff also fails to show that, with respect to USCIS's denial of her DACA request, she was entitled to any additional process based on the DACA guidance, a regulation, or the Constitution. For these reasons, the Court should dismiss Plaintiff's claims against the Federal Agency Defendants for lack of jurisdiction or for failure to state a claim.

//

//

//

DATED: May 17, 2019    Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director

*/s/ Jeffrey S. Robins*
JEFFREY S. ROBINS
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 616-1246
Fax: (202) 305-7000
Email: jeffrey.robins @usdoj.gov

JAMES J. WALKER
Trial Attorney

*Counsel for Federal Agency Defendants*