UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 1 of 32 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS - ORDER RE DEFENDANTS' MOTIONS TO DISMISS [39] [44]**

On March 22, 2019, Plaintiff Claudia Sarahi Rueda Vidal filed a First Amended Complaint ("FAC") against the following Defendants:  U.S. Department of Homeland Security ("DHS"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); U.S. Border Patrol ("USBP"); Lee Francis Cissna, Director of USCIS, in his official capacity; Kathy A. Baran Director of USCIS California Service Center, in her official capacity; Andrew K. Bolton; Daniel Brightman; and Doe Defendants 1–10.[1]  [Doc. # 35.]

The FAC alleges the following eight causes of action:  (1) Administrative Procedure Act ("APA")—Arbitrary and Capricious Action against all of the Federal Agency Defendants except CBP and USBP; (2) APA—Unconstitutional Action against all of the Federal Agency Defendants except CBP and USBP; (3) a claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), under the Fourth Amendment for unlawful seizure and arrest against the Individual Defendants; (4) a *Bivens* claim under the Fifth Amendment's due process clause against certain Doe Defendants; (5) a *Bivens* claim under the First Amendment for retaliatory seizure and arrest against the Individual Defendants; (6) a *Bivens* First Amendment retaliation claim against certain Doe Defendants; (7) a *Bivens* claim under the Fifth Amendment's equal protection principles against certain Doe Defendants; and (8) a declaratory relief claim against all Defendants.  *See* FAC at 32–49 [Doc. # 35].[2]  At bottom, Plaintiff's claims arise out of two alleged actions by government officials:  (1) the unlawful and retaliatory seizure, search, and arrest of Plaintiff, and (2) the unlawful and retaliatory denial of Plaintiff's application for Deferred Action for Childhood Arrivals ("DACA") status.  *See id.* at 1.

---

[1] The first seven Defendants are referred to herein as the "Federal Agency Defendants," whereas Bolton and Brightman are referred to as "the Individual Defendants."

[2] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | | Date | August 28, 2019 |
|---|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 2 of 32 |
|---|---|---|---|

On April 12, 2019, the Federal Agency Defendants filed a motion to dismiss ("MTD") for lack of subject matter jurisdiction and failure to state a claim. [Doc. # 39.]  On June 7, 2019, the Individual Defendants also filed an MTD for lack of subject matter jurisdiction and failure to state a claim. [Doc. # 44.]  Both motions have since been fully briefed. [Doc. ## 41, 42, 45, 46.]  For the reasons discussed in this Order, the Court **GRANTS IN PART** and **DENIES IN PART** the Federal Agency Defendants' MTD and **GRANTS IN PART** and **DENIES IN PART** the Individual Defendants' MTD, without leave to amend.

## I.
## REQUEST FOR JUDICIAL NOTICE

The Federal Agency Defendants request that the Court take judicial notice of the following: (1) DACA Memo, (2) Public DACA FAQ, (3) DACA SOP, (4) Form I-821D Instructions, (5) USCIS Internal DACA FAQ, (6) DACA Rescission Memo, (7) Robinson Decl., Ex. B at 5–12 (Neufeld Deposition Transcript Excerpt from *Martin Johnathan Batalla Vidal, et al. v. Elaine C. Duke, et al.*, No. CV 16-475-NGC-JO (E.D.N.Y.)) [Doc. # 39-1], (8) Robinson Decl., Ex. C at 14–18 (email correspondence in which USCIS officials requested guidance from the supervisors in the course of processing Plaintiff's DACA request) [Doc. # 39-1], (9) Robinson Decl., Ex. D at 20–21 (Denial of Plaintiff's DACA Application) [Doc. # 39-1], (10) Vela Decl., Ex. A (Notice to Appear issued to Plaintiff) [Doc. # 39-2], and (11) Vela Decl., Ex. B at 7–8 (Notice of Hearing issued to Plaintiff) [Doc. # 39-2].[3]  *See* Fed. Agency Defs.' MTD at 18, 21 [Doc. # 39].

The Court **GRANTS** the Federal Agency Defendants' request for judicial notice with regard to all of the items, except item (7), because these documents are administrative publications and/or official records maintained in USCIS's and/or DHS's files.  *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("We may take judicial notice of records and reports of administrative bodies." (internal quotation marks omitted)).

The Federal Agency Defendants offer item (7) solely for the purpose of establishing the truth of a particular aspect of Donald Neufeld's (a USCIS official's) testimony—*i.e.*, "there ha[ve] been specific DACA requests that were denied solely in USCIS's discretion."  *See* Fed. Agency Defs.' MTD at 18 [Doc. # 39].  Such an assertion is not the proper subject of judicial notice.  *Cf. Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) ("[W]hen resolving disputes, courts may 'not take judicial notice of court documents provided for the truth of the facts asserted therein' when such documents contain 'facts essential to support a contention in a cause

---

[3] In the list accompanying this footnote, items (1), (2), (3), (4), (5), and (6) utilize short citations that are defined later in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 3 of 32 |

then before it.'" (quoting *BP West Coast Prods. v. May*, 347 F. Supp. 2d 898, 901 (D. Nev. 2004))). Put differently, this testimony is relevant only insofar as Neufeld testified truthfully. Therefore, the Court **DENIES** the Federal Agency Defendants' request for judicial notice of item (7).

## II.
## FACTUAL BACKGROUND

### A.   Plaintiff's Background, Her Arrest, and Her DACA Application

Plaintiff was brought to the United States from Mexico at the age of six. FAC at ¶ 70 [Doc. # 35]. Since then, Plaintiff has continuously lived, and attended school in, the United States. *See id.* She is currently pursuing a bachelor's degree at California State University, Los Angeles. *See id.* Plaintiff is a "well-known leader of California's immigrants' rights movement[,]" and has been involved with several youth activist groups, protests, campaigns, and demonstrations relating thereto. *See id.* at ¶¶ 71–73. "She leads protests, rallies, government petitions, and media initiatives highlighting injustices in our immigration and criminal laws, and among the agencies and individuals who enforce them." *Id.* at ¶ 73.

On April 24, 2019, Plaintiff's mother "was swept up as a collateral arrest during a criminal investigation of another member of their household." *See id.* at ¶ 77. Although Plaintiff's mother was not a person of interest in the criminal investigation, she was placed in immigration detention because of her status.[4] *See id.* Thereafter, Plaintiff "mobilized her community in protest of her mother's unjust arrest and detention[,]" and Plaintiff later submitted a declaration that was considered by the Immigration Judge ("IJ") during her mother's bond hearing. *See id.* at ¶¶ 79–80. "On May 12, 2017, [Plaintiff] was successful in helping to secure her mother's release on bond." *Id.* at ¶ 81.

Six days after her mother's release, plainclothes immigration officers—including the Individual Defendants—arrested Plaintiff outside her family's home.[5] *See id.* at ¶¶ 82–83. At approximately 7:50 a.m., she went outside to move her family's car for street cleaning. *Id.* at ¶ 83. Before she could move the vehicle, three unmarked cars surrounded her on all sides. *See id.* She then exited the family's car with her hands up. *See id.* "The officers surrounded her, asked her name in Spanish, [and, after she provided her name, they] said 'that's her,' handcuffed her, and put her into a white, unmarked van." *See id.* at ¶¶ 83, 159. The officers did not have an arrest

---

[4] Plaintiff also was not a target or a person of interest in the investigation. FAC at ¶ 79 [Doc. # 35].

[5] The Individual Defendants are Border Patrol officers. *See* FAC at ¶¶ 12–13 [Doc. # 35].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 4 of 32 |
|---|---|---|---|

warrant, and they failed to: identify themselves as officers of any state or federal agency, state the reason for Plaintiff's seizure and arrest, or tell Plaintiff where they were taking her. *See id.* at ¶ 84.

The officers drove Plaintiff to a gas station where a female officer searched Plaintiff without her consent. *Id.* at ¶ 85. Plaintiff was thereafter detained for three weeks, "during which time no immigration charges had been filed against her" and "[t]he only opportunity [Plaintiff] was given to contact her family was through the Mexican consulate." *See id.* at ¶¶ 85–88. On June 9, 2017, an IJ released Plaintiff on her own recognizance after determining that she was not a flight risk or a safety threat.[6] *See id.* at ¶ 86.

On June 19, 2017, Plaintiff submitted a DACA application, which included a discussion of her academic records, disclosed her arrests for peaceful protest-related misdemeanors that prosecutors did not pursue, and attached various letters of support from community leaders. *See id.* at ¶ 89. Although Plaintiff met the objective DACA eligibility criteria (*e.g.*, age, residency, educational requirements, the lack of any criminal convictions, and the absence of a national security or public safety threat), USCIS denied Plaintiff's DACA request on October 19, 2017. *See id.* at ¶ 91; Robinson Decl., Ex. D at 20–21 (Oct. 19, 2017 Decision) [Doc. #39-1]. USCIS's stated rationale for denying the DACA application was that Plaintiff had "not established that [she] warrant[s] a favorable exercise of prosecutorial discretion." *See* Robinson Decl., Ex. D at 20–21 [Doc. # 39-1].

**B.      Overview of the DACA Program**

On June 15, 2012, Janet Napolitano, then-Secretary of Homeland Security, announced in a memorandum the creation and initial guidelines of the DACA program. *See* Memorandum from Janet Napolitano to CBP, USCIS, and ICE, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children at 1–3 (June 15, 2012), *available at* https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretionindividuals-who-came-to-us-as-children.pdf [hereinafter DACA Memo]. Napolitano stated in the DACA Memo that DHS should defer action against particular "low priority cases" that do not meet enforcement priorities, particularly "certain young people who were brought to this country as children and know only this country as home." *See id.* at 1. The DACA Memo outlined specific

---

[6] Plaintiff was served with a Notice to Appear in removal proceedings, which was dated May 18, 2017. Vela Decl., Ex. A at 4–5 (Notice to Appear) [Doc. # 39-2]. A stamp on the Notice to Appear indicates that it was received by the Immigration Court on May 25, 2017. *See id.* at 4. Plaintiff later received a Notice of Hearing in Removal Proceedings dated November 28, 2018, which scheduled a "Master/Individual hearing" for August 20, 2019. *See* Vela Decl., Ex. B at 7–8 (Notice of Hearing) [Doc. # 39-2].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 5 of 32 |

objective eligibility requirements that an individual must satisfy before he or she may be "considered for an exercise of prosecutorial discretion." *See id.* Specifically, "[t]he following criteria should be satisfied before an individual is considered for an exercise of prosecutorial discretion pursuant to this memorandum:"

- The applicant came to the United States when he or she was under the age of 16;
- The applicant had continuously resided in the United States for at least five years preceding the date of the memorandum and was present in the United States on the date of the memorandum;
- The applicant is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;
- The applicant has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, and does not otherwise pose a threat to national security or public safety; and
- The applicant is not above the age of 30.

*See id.* at 1–2.

The DACA Memo provided that an individual who is in removal proceedings or subject to a final order of removal may still submit a DACA application. *See id.* at 2. It further stated that DHS and the agencies within DHS may defer action against DACA participants for a period of two years, and that period of deferred action may be renewed. *See id.* at 2–3. At the close of the DACA Memo, Napolitano stated: "This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the framework of the existing law. I have done so here." *Id.* at 3.

USCIS implements and oversees the DACA program. *See, e.g.*, DHS, Serv. Ctr. Ops. Directorate, National Std. Operating Procedures, DACA at 19 (Apr. 4, 2013), *available at* https://cliniclegal.org/sites/default/files/attachments/daca_sop_4-4-13.pdf [hereinafter DACA SOP].[7] The agency is responsible for adjudicating DACA requests and issuing approvals, denials,

---

[7] There is no dispute that the August 23, 2013 provisions of the DACA SOP, which the Federal Agency Defendants contend are applicable here, are the same as those of the April 4, 2013 version discussed in this Order. *See* Fed. Agency Defs.' MTD at 14 & n.3 [Doc. # 39].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 6 of 32 |
|---|---|---|---|

Requests for Evidence ("RFEs"), and Notices of Intent to Deny ("NOIDs"). *See id.* at 45. The DACA SOP provides various policies and procedures for processing DACA requests and terminations. *See id.* at 3–4 (table of contents).

USCIS also created and posted on its website a page that answers Frequently Asked Questions regarding the DACA Program. *See* USCIS, DACA FAQ, https://www.uscis.gov/archive/frequently-asked-questions (last updated Mar. 8, 2018) [hereinafter Public DACA FAQ]. In response to the question "What guidelines must I meet to be considered for deferred action for childhood arrivals (DACA)?"; the Public DACA FAQ states that "the guidelines" of the "June 15, 2012 memorandum" must "be met for consideration of DACA." *See* Public DACA FAQ at Q28. It further states that USCIS "retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met." *See id.* Similarly, the instructions for the DACA request form (*i.e.*, I-821D) provide: "Even if you satisfy the threshold criteria for consideration of DACA, USCIS may deny your request if it determines, in its unreviewable discretion, that an exercise of prosecutorial discretion is not warranted in your case." *See* Form I-821D Instructions at 11 (last rev. Jan. 9, 2017), *available at* https://web.archive.org/web/20170608000103/https://www.uscis.gov/system/files_force/files/form/i-821dinstr.pdf?download=1 [hereinafter Form I-821D Instructions].

On September 5, 2017, Elaine Duke, then-Acting Secretary of DHS, announced a plan to rescind the DACA program. *See* Memorandum from Elaine Duke to USCIS, *et al.*, Rescission of the June 15, 2012 Memorandum (Sept. 5, 2017), *available at* https://www.dhs.gov/news/2017/09/05/memorandum-rescission-daca [hereinafter Rescission Memo]. The Rescission Memo observed that "while the DACA denial notice indicates the decision to deny is made in the unreviewable discretion of USCIS, USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion." *See id.* at n.1. Plaintiff alleges—and the Federal Agency Defendants do not dispute—that the Rescission Memo does not prevent her from challenging USCIS's denial of her DACA application because Plaintiff submitted her request before the issuance of that Memo. *See* FAC at ¶¶ 43–44 ("In short, DACA remains in effect, and regardless of what has happened after [Plaintiff] submitted her DACA application, or what may happen going forward, the lawfulness and constitutionality of Defendants' actions must be judged against the program as it existed from June 2017 to October 2017, when [Plaintiff's] DACA application was in Defendants' hands.") [Doc. # 35].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 7 of 32 |
|---|---|---|---|

## III.
## LEGAL STANDARDS

### A.      Motions to Dismiss Under Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may raise either a facial or a factual challenge to a federal court's subject matter jurisdiction.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  When resolving a facial attack, a court "presume[s] the truthfulness of the plaintiff's allegations" and determines whether they establish that subject matter jurisdiction is proper.  *See id.*  In the instant motions, the Federal Agency Defendants and the Individual Defendants raise facial challenges to this Court's subject matter jurisdiction.  *See* Fed. Agency Defs.' MTD at 21–27 [Doc. # 39]; Indiv. Defs.' MTD at 14–17 [Doc. # 44].

### B.      Motions to Dismiss Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true.  *Id.* (citing *Twombly*, 550 U.S. at 555).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 8 of 32 |
|---|---|---|---|

## IV.
## DISCUSSION

### A.   Motions to Dismiss for Lack of Subject Matter Jurisdiction

The Federal Agency Defendants assert that this Court lacks subject matter jurisdiction over all of the FAC's claims against them because:  (1) 8 U.S.C. section 1252(g) deprives the Court of jurisdiction, and (2) 5 U.S.C. section 701(a)(2) precludes this Court from reviewing claims concerning the processing of Plaintiff's DACA application.  *See* Fed. Agency Defs.' MTD at 22 [Doc. # 39].  The Individual Defendants assert that this Court lacks subject matter jurisdiction over the FAC's claims against them because:  (1) 8 U.S.C. section 1252(g) strips this Court of jurisdiction over such claims, and (2) 8 U.S.C. section 1252(b)(9) also precludes this Court from hearing them.  *See* Indiv. Defs.' MTD at 14–17 [Doc. # 44].  The Court addresses each of these contentions below.

### 1.   Title 8 U.S.C. Section 1252(g) Does Not Divest This Court of Jurisdiction

Title 8 U.S.C. section 1252(g) provides:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The U.S. Supreme Court has held that "[t]he provision applies only to three discrete actions that the Attorney General may take:  [the official's] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *See Reno v. Am.-Arab Anti-Discrimination Comm'n*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)) [hereinafter *AADC*].  In arriving at this conclusion, the Court rejected the Attorney General's argument that "§ 1252(g) covers the universe of deportation claims—that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'"  *See id.*  The Supreme Court acknowledged the possibility that in some cases, government officials' alleged selective enforcement of the immigration statutes could be "so outrageous" that the doctrine of constitutional doubt requires

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | | Date | August 28, 2019 |
|---|---|---|---|---|
| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | | Page | 9 of 32 |

Section 1252(g) to be construed in a fashion that permits review of claims that would otherwise seem to arise from one of the three aforementioned discrete actions.[8]  *See id.* at 487–92. Nonetheless, the Supreme Court did not construe Section 1252(g) in that manner in *AADC*, largely because of the majority's conclusion that "the Government does not offend the Constitution by deporting [an alien] for the . . . reason that it believes him to be a member of an organization that supports terrorist activity."  *See id.* at 491–92.

    **a.**    **Claims Against the Federal Agency Defendants**

The Federal Agency Defendants insist that "Plaintiff cannot demonstrate that the action challenged here, the denial of Plaintiff's DACA request—a pure exercise of discretion—does not 'arise from' the 'decision or action' to adjudicate her removal proceedings, that had already been commenced" at the time she filed her request.  *See* Reply re Fed. Agency Defs.' MTD at 2 [Doc. # 42].  In particular, the Federal Agency Defendants contend that, "although an individual already subject to removal proceedings may request DACA, the denial of such a request *during the pendency of those proceedings* is a *clear statement* of the Government's decision to continue to adjudicate those proceedings."  *See id.* at 3 (emphasis added).  On the other hand, Plaintiff argues that her claims against the Federal Agency Defendants "arise[] from USCIS's administrative action in the evaluation of her DACA application, a process that *operates separately* and *independently* from any immigration court proceedings."  *See* Opp'n re Fed. Agency Defs' MTD at 15 (emphasis added) [Doc. # 41]; *see also AADC*, 525 U.S. at 482 (observing that "[t]here are of course many other decisions or actions that may be part of the deportation process" that are not within the scope of Section 1252(g)).

Neither side directs the Court to binding authority on whether the rejection of a DACA application after the initiation of removal proceedings actually constitutes a "decision or action" to "adjudicate cases" for the purposes of Section 1252(g), nor is it apparent that any such authority exists.[9]  Further, as it is unclear whether the "decision or action" subject to Section 1252(g) may

---

[8] *AADC* also acknowledged the possibility that if Section 1252(g) divested the district court of jurisdiction over the claims at issue in that case, then the plaintiffs may have been deprived of any opportunity to obtain meaningful judicial review thereof.  *See AADC*, 525 U.S. at 476–77, 486 (noting that 8 U.S.C. section 1252(a)(1) arguably prevented the plaintiffs from obtaining any "factual development of their claim[,]" habeas relief might be unavailable to the plaintiffs, and any review of a final removal order "could come too late to prevent the 'chilling effect' upon their First Amendment rights").

[9] Notwithstanding the Federal Agency Defendants' arguments to the contrary, the authorities upon which they rely do not explicitly answer this question.  *See* Fed. Agency Defs.' MTD at 23 [Doc. # 39].  In *Vilchiz-Soto v. Holder*, 688 F.3d 642 (9th Cir. 2012), the panel held that Section 1252(g) deprived it of jurisdiction over the denial of

---

        **CIVIL MINUTES—GENERAL**        Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 10 of 32 |

take the form of the denial of Plaintiff's DACA request simply because the denial was issued after removal proceedings had begun, the Court concludes that the provision is ambiguous as applied to these facts. *See Alaska Wilderness League v. U.S. Envtl. Prot. Agency*, 727 F.3d 934, 938 (9th Cir. 2013) ("A statute is ambiguous if it is susceptible to more than one reasonable interpretation. 'A statute is ambiguous if Congress has not directly spoken to the precise question at issue.'" (citations omitted) (quoting *Putnam Family P'ship v. City of Yucaipa*, 673 F.3d 920, 928 (9th Cir. 2012))).

The Court applies the constitutional doubt doctrine to resolve this ambiguity because Plaintiff has sufficiently alleged that the denial of her DACA application was outrageous for the purposes of *AADC*.[10]  *See Gomez v. United States*, 490 U.S. 858, 864 (1989) ("It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question."). "Although the Supreme Court did not clarify what might constitute an 'outrageous' basis for discrimination, *AADC* compels courts to evaluate the gravity of the constitutional right affected; the extent to which the plaintiff's conduct or status that forms the basis for the alleged discrimination is actually protected; the egregiousness of the Government's alleged conduct; and the plaintiff's interest in avoiding selective treatment, as balanced against the Government's discretionary prerogative." *See Ragbir v. Homan*, 923 F.3d 53, 69 (2d Cir. 2019).

a DACA request that was submitted *after* an order of removal had been issued, meaning that a claim challenging that denial could readily be characterized as one arising from the decision to execute a removal order. *See id.* at 643–44. *Rodriguez v. Sessions*, 677 Fed. App'x 447 (9th Cir. 2017), *Fabian-Lopez v. Holder*, 540 Fed. App'x 760 (9th Cir. 2013), and *Flores-Panso v. Ashwer*, No. C13-1923-TSZ, 2014 WL 1338073 (W.D. Wash. Apr. 2, 2014), present the same fact pattern. *See Rodriguez*, 677 Fed. App'x at 447; *Fabian-Lopez*, 540 Fed. App'x at 760–61 & n.2; *Flores-Panso*, 2014 WL 1338073, at *1–3. *Regents of the University of California v. U.S. Department of Homeland Security*, 908 F.3d 476 (9th Cir. 2018), did not hold that all "individual 'no deferred action' decisions" fall within the scope of Section 1252(g), but merely concluded that judicial review of a "programmatic policy decision" to rescind DACA did not run afoul of *AADC*'s concern that "Section 1252(g) seems clearly designed to give *some measure* of protection to 'no deferred action' decisions and similar discretionary determinations." *See Regents*, 908 F.3d at 503–04 (emphasis added) (quoting *AADC*, 525 U.S. at 485).

    [10] As was the case in *AADC*, there is no indication that Plaintiff could otherwise obtain any meaningful judicial review of her claims if Section 1252(g) in fact deprived this Court of jurisdiction over them. *See AADC*, 525 U.S. at 476–77, 486. Moreover, even though Plaintiff argues that her "claims present the sort of 'outrageous' conduct that the Supreme Court has explained may be excepted from the statute's reach[,]" *see* Opp'n re Fed. Agency Defs.' MTD at 17 [Doc. # 41], the Federal Agency Defendants did not counter that the doctrine of constitutional doubt is inapplicable because Plaintiff may obtain meaningful judicial relief by other means, *see* Reply re Fed. Agency Defs.' MTD at 2 (arguing instead that Plaintiff failed to establish that "the discretionary denial of [her] DACA request was based on outrageous or egregious government conduct that could possibly supersede section 1252(g)'s statutory bar") [Doc. # 42].

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 11 of 32 |
|---|---|---|---|

Here, Plaintiff alleges that USCIS denied her DACA application:  (1) in retaliation for her active and ongoing public criticism of the federal government's immigration practices and policies, and (2) because she had the temerity to reside with her own parents, the latter of whom (but not the former) have been accused of possession of cocaine and bulk cash.  *See, e.g.*, FAC at ¶¶ 141–42 [Doc. # 35]; Robinson Decl., Ex. C at 14–18 (email correspondence between USCIS officials, wherein one of them concedes that "there is no evidence [that Plaintiff] has ever been directly involved in her parents' [Transnational Criminal Organization] operation") [Doc. # 39-1].  If Plaintiff ultimately proves that these allegations are true, then USCIS has interfered with constitutional rights that are of the highest order of importance.  *See Ragbir*, 923 F.3d at 69–70 ("[S]peech on a matter of 'public concern' is at 'the heart of . . . First Amendment[] protection,' and 'occupies the highest rung of the hierarchy of First Amendment values[.]'" (footnotes omitted) (quoting *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011))); *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) ("The substantive due process right to family integrity or to familial association is well established.  A parent has a '*fundamental liberty interest*' in companionship with his or her child.'" (emphasis added) (quoting *Kelson v. City of Springfield*, 767 F.2d 651, 654–55 (9th Cir. 1985))).

Plaintiff has a "substantial interest in avoiding deportation based on [her] speech" and/or her association with her family because she has lived in the United States since she was a young child.  *See Ragbir*, 923 F.3d at 72; FAC at ¶ 70 [Doc. # 35]; *see also* DACA Memo at 1 (noting that DACA was designed for "certain young people who were brought to this country as children and know only this country as home").  Further, the Federal Agency Defendants do not argue that any of the "national-security" or "foreign-policy concerns" animating *AADC* are implicated by the denial of Plaintiff's DACA request.  *See Ragbir*, 923 F.3d at 72 ("[N]ational-security and foreign-policy concerns about terrorism were primary in *AADC*, and the Court expressed misgivings that a court proceeding allowing inquiry into the 'real reasons why the Government sought to deport the [Popular Front for the Liberation of Palestine ('PFLP')] supporters would compromise intelligence sources and foreign relations. . . . .  Here, the plaintiff's plausible allegation is that the Government undertook the deportation to silence criticism of the responsible agency." (citation omitted) (citing *AADC*, 525 U.S. at 491)).  It follows that the alleged circumstances of USCIS's denial of Plaintiff's DACA application are sufficiently outrageous such that Section 1252(g) may be construed in a manner that does not deprive this Court of jurisdiction.  *Cf. Ragbir*, 923 F.3d at 67–73 (concluding that *AADC*'s outrageousness exception applied primarily because "[a] plausible, clear inference [could be] drawn that [the plaintiff's] public expression of his criticism [of ICE], and its prominence, played a significant role in the recent attempts to remove him").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 12 of 32 |
|---|---|---|---|

In sum, the Court concludes that Section 1252(g) does not deprive this Court of jurisdiction over Plaintiff's claims against the Federal Agency Defendants.[11]

### b.      Claims Against the Individual Defendants

At bottom, the Individual Defendants raise two arguments in support of their position that Section 1252(g) deprives the Court of jurisdiction over Plaintiff's claims against them.  First, "[b]ecause Plaintiff's retaliation claim against the [Individual Defendants] attempts to assert selective enforcement, it is barred because it challenges the underlying basis for the decision to place her in removal proceedings."  *See* Indiv. Defs.' MTD at 17 [Doc. # 44].  Second, "to the extent her Fourth Amendment claim is meant to reach her detention *after* the decision to commence proceedings has been made, such a claim is closely connected to the decision to commence proceedings against Plaintiff and is also barred from being brought in this court."  *See id.* (internal quotation marks omitted) (citation omitted).  While the Individual Defendants do not "argue that § 1252(g) strips this Court's jurisdiction over her Fourth Amendment claim—to the extent it is limited to her *arrest*[,]" they do contend that the Court lacks jurisdiction over claims "challeng[ing] her post-arrest detention."[12]  *See* Reply re Indiv. Defs.' MTD at 8 [Doc. # 46].

Plaintiff's Opposition represents that her claims against the Individual Defendants challenge "actions that occurred *prior* to any decision to commence proceedings" against her.  *See id.* at 12 (quoting *Wong v. U.S. Immigration & Naturalization Serv.*, 373 F.3d 952, 965 (9th Cir. 2004)) (internal quotation marks omitted).   This is a binding judicial admission that limits the temporal scope of Plaintiff's claims.  *See Wong*, 373 F.3d at 964–65 & n.16 (stating that the plaintiff "will be held in the remainder of this litigation to her representations in this court regarding the intended reach of her complaint"—*i.e.*, representations that she raises "claims arising prior to any INS decision to commence proceedings against [her]" (internal quotation marks omitted)); 32 C.J.S. Evidence § 542 (2012) ("Any deliberate, clear, and unequivocal statement, either written or oral, made in the course of a judicial proceeding, qualifies as a judicial admission. . . .  Unless withdrawn, a judicial admission is binding on the parties . . . ." (footnotes omitted)).  Additionally, the FAC's allegations do not clarify whether the Individual Defendants

---

[11] It is unclear whether *AADC*'s outrageousness exception may also allow the Court to assume jurisdiction over Plaintiff's non-constitutional claims against the Federal Agency Defendants.  The Court need not resolve this issue, however, because the Court concludes that 5 U.S.C. section 701(a)(2) bars the Court from hearing such claims. *See infra* Part IV.A.2.

[12] The Individual Defendants also contend that *AADC* establishes that Plaintiff may not raise a selective enforcement claim against them.  *See* Indiv. Defs.' MTD at 17 [Doc. # 44].  Because this argument concerns whether Plaintiff states a claim for relief against the Individual Defendants, the Court addresses that issue *infra* Part IV.C.2.b.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 13 of 32 |
|---|---|---|---|

or any governmental entity decided to commence removal proceedings against Plaintiff prior to her arrest. *See* FAC at ¶ 88 ("[Plaintiff] was finally released after three weeks in immigration detention, during which no immigration charges had been filed against her.") [Doc. # 35]; *see also* Vela Decl., Ex. A (Notice to Appear dated May 18, 2017, which indicates that it was not issued to Plaintiff until *after* she was "in DHS custody" and that it was not even "received" by the Immigration Court until May 25, 2017) [Doc. # 39-2]; *Samayoa-Martinez v. Holder*, 558 F.3d 897, 901 (9th Cir. 2009) ("Formal removal proceedings do not commence until the INS has filed an NTA in the immigration court.").

On a motion to dismiss that facially attacks subject matter jurisdiction, this Court must "assume [Plaintiff's] [factual] allegations to be true and draw all reasonable inferences in [her] favor." *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)). Further, Plaintiff "is correct that § 1252(g) does not bar review of the actions that occurred *prior* to any decision to 'commence proceedings,' if any, against her . . . ." *See Wong*, 357 F.3d at 965 (quoting 8 U.S.C. § 1252(g)); *see also id.* ("We would defy logic by holding that a claim for relief somehow 'arises from' decisions and actions accomplished only after the injury allegedly occurred." (quoting *Humphries v. Various Fed. U.S. Immigration & Naturalization Serv. Emps.*, 164 F.3d 936, 944 (5th Cir. 1999))). In light of Plaintiff's allegations, her concessions regarding their temporal scope, and the applicable liberal pleading standard, the Court concludes that Section 1252(g) does not deprive it of jurisdiction over her claims against the Individual Defendants.

## 2.    Judicial Review Under 5 U.S.C. § 701(a)(2)

The APA allows for judicial review of agency actions, except where (1) statutes explicitly preclude review, and (2) the agency action is "committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(1)–(2). With regard to the latter, there are "rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply, thereby leaving the court with no meaningful standard against which to judge the agency's exercise of discretion." *See Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 718 (9th Cir. 2011) (quoting *Webster v. Doe*, 486 U.S. 592, 599 (1988); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)) (internal quotation marks omitted). Whether to prosecute an individual or enforce a statute is a decision generally committed to an agency's absolute discretion, thus giving rise to a presumption of unreviewability of such a decision. *See Heckler*, 470 U.S. at 831 ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."); *Romeiro De Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985) ("[T]he district court lacked jurisdiction to review the district director's decision not to recommend

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 14 of 32 |

deferred action status for [the plaintiff] . . . .").  This presumption against review, however, may be rebutted if "statutes, regulations, established agency policies, . . . judicial decisions[,]" or a "settled course of adjudication" on the part of the agency "provide a meaningful standard against which to assess the agency's actions."  *See Alcaraz v. Immigration & Naturalization Serv.*, 384 F.3d 1150, 1151 (9th Cir. 2004) (quoting *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 864, 868 (9th Cir. 2003)) (internal quotation marks omitted); *Liadov v. Mukasey*, 518 F.3d 1003, 1010 (8th Cir. 2008) (quoting, *inter alia*, *Immigration & Naturalization Serv. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996)).

Plaintiff contends that the DACA Memo, the DACA SOP, and the Public DACA FAQ "circumscribe" USCIS's discretion by requiring its officials to grant DACA status to any alien who satisfies the "DACA Memo's objective and non-discretionary DACA criteria."[13]  *See* Opp'n re Fed. Agency Defs.' MTD at 9–10, 17–20 [Doc. # 41].  Plaintiff misconstrues these administrative publications.  The DACA Memo merely states that the objective criteria provided therein "should be satisfied *before* an individual is considered for an exercise of prosecutorial discretion pursuant to th[at] memorandum[.]"  *See* DACA Memo at 2 (emphasis added).  The DACA SOP also contemplates cases in which aliens satisfy these criteria but nonetheless "[c]annot receive prosecutorial discretion because it is not consistent with the Department of Homeland Security's enforcement priorities."[14]  *See* DACA SOP at 106.  Likewise, the Public DACA FAQ

---

[13] Plaintiff's Opposition also seems to argue that the DACA SOP required USCIS to issue her an RFE and/or an NOID and provide her an opportunity to respond before denying her DACA application. *See* Opp'n re Fed. Agency Defs.' MTD at 10 [Doc. # 41]. The DACA SOP provides in pertinent part: "Officers will **NOT** deny a DACA request solely because the DACA requestor failed to submit sufficient evidence with the request (unless there is sufficient evidence in our records to support a denial). As a matter of policy, officers will issue an RFE or a Notice of Intent to Deny (NOID)." DACA SOP at 45. When this passage is read as a whole, it becomes apparent that an RFE or an NOID is required only if USCIS's records lack sufficient evidence to support a denial. *See also* Robinson Decl., Ex. A at 3 (USCIS Internal DACA FAQ) (identifying circumstances in which a DACA request may be denied "without first issuing an RFE or NOID[,]" and providing a "straight denial" procedure in which the USCIS employee adjudicating the request consults with supervisory officials before taking such action) [Doc. # 39-1]; *cf. Lezama-Garcia v. Holder*, 666 F.3d 518, 531–32 & n.13 (9th Cir. 2011) (holding that "a term in an immigration statute must draw its meaning from its context[,]" and that "[t]his rule of interpretation applies equally to regulations" (internal quotation marks omitted)). Plaintiff does not allege any facts showing that the agency needed additional evidence before it could adjudicate her DACA application.

[14] In such cases, the USCIS official adjudicating the DACA application must "obtain supervisory review before issuing the denial . . . ." *See* DACA SOP at 106. The Federal Agency Defendants assert—and Plaintiff does not dispute—that the USCIS adjudicator handling her application obtained such supervisory review. *See* Fed. Agency Defs.' MTD at 19 [Doc. # 39]; *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 15 of 32 |
|---|---|---|---|

provides that USCIS "retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met." *See* Public DACA FAQ at Q28. The instructions for the DACA application reiterate that point. *See* Form I-821D Instructions at 11 ("Even if you satisfy the threshold criteria for consideration of DACA, USCIS may deny your request if it determines, in its unreviewable discretion, that an exercise of prosecutorial discretion is not warranted in your case.").

This case is governed by *Romeiro*. There, the Ninth Circuit found that the court lacked jurisdiction to review an operating instruction concerning the INS's deferred action program because it was not "possible to conclude that the instruction [was] intended to confer any benefit upon aliens, rather than to merely operate for INS's own convenience." *See Romeiro*, 773 F.2d at 1024 (quoting *Wan Chung Wen v. Ferro*, 543 F. Supp. 1016, 1018 (W.D.N.Y. 1982)) (internal quotation marks omitted). In *Romeiro*, the operating instruction stated that "[t]he district director may, in his discretion, recommend consideration of deferred action" to an alien, and it provided a nonexhaustive list of factors that "should be considered" in "making deferred action determinations" (*e.g.*, whether "age or physical condition affect[ed] [the alien's] ability to travel"). *See id.* at 1022 n.1 (quoting Operating Instruction 103.1(a)(1)(ii) (1981)). Because the administrative materials in both *Romeiro* and the instant case preserve an agency's unfettered discretion to deny a request for deferred action *even if* an alien satisfies certain objective criteria, this Court must adhere to Section 701(a)(2)'s presumption of unreviewability.[15] *See also Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1010 (9th Cir. 1987) ("[A]ny challenge to the merits of [the acting district director's] determination under the 1981 Operating Instruction would be foreclosed by our decision in *Romeiro*, where we held that courts have no authority to review denials of deferred action status petitions under the 1981 version of the Instruction." (citing *Romeiro*, 773 F.2d at 1024–25; 5 U.S.C. 701(a)(2))).

Plaintiff nonetheless insists that a passage from the Rescission Memo demonstrates that USCIS has adopted a practice of granting DACA status to all aliens satisfying the DACA memo's objective criteria. *See* Opp'n re Fed. Agency Defs.' MTD at 19–20 [Doc. # 41]. In particular, the Rescission Memo notes that "USCIS has not been able to identify specific denial cases where an

---

[15] Plaintiff claims that *Romeiro* is distinguishable because "DACA confers substantive benefits and is premised on humanitarian concerns." *See* Opp'n re Fed. Agency Defs.' MTD at 19 [Doc. # 41]. Yet, the DACA Memo explicitly states that it "confers no substantive right, immigration status or pathway to citizenship." *See* DACA Memo at 3. Further, the operating instruction in *Romeiro* also took into account certain "sympathetic factors" relating to the alien's request for deferred action. *See Romeiro*, 773 F.2d at 1022 n.1 (quoting Operating Instruction 103.1(a)(1)(ii) (1981)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 16 of 32 |
|---|---|---|---|

applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion." *See* Rescission Memo at n.1. Yet, nothing in the record indicates that USCIS consistently granted DACA status to certain aliens who satisfied the program's objective criteria, even though doing so in those cases was otherwise "not consistent with the Department of Homeland Security's enforcement priorities."[16] *See* DACA SOP at 106. Put differently, the Rescission Memo does not establish the existence of a "settled course of adjudication" by which USCIS abandoned its explicit authority to determine "on a case by case basis" whether a particular alien warrants the favorable exercise of prosecutorial discretion. *See* DACA Memo at 2 ("[R]equests for relief pursuant to this memorandum are to be decided on a case by case basis."); *Liadov*, 518 F.3d at 1010 (quoting, *inter alia*, *Yang*, 519 U.S. at 32).

It does not follow, however, that 5 U.S.C. section 701(a)(2) applies to *all* of Plaintiff's claims against the Federal Agency Defendants. Generally, Section 701(a)(2) does not apply to claims alleging that a federal agency violated the federal constitution. *See Allen v. Milas*, 896 F.3d 1094, 1107–08 (9th Cir. 2018) ("[In *Webster v. Doe*, 486 U.S. 592 (1988),] the Court addressed whether a statute giving the Director of the CIA blanket authority to terminate any officer or employee when deemed 'necessary or advisable in the interests of the United States,' rendered the Director's actions unreviewable under § 701(a)(2). Although the Court found that Doe's claims could not be reviewed under the APA, it did find that Doe could nonetheless otherwise raise constitutional claims arising out of his termination . . . . After *Webster*, we have assumed that the courts will be open to review of constitutional claims, even if they are closed to other claims." (citations omitted) (citing, *inter alia*, *Webster*, 486 U.S. at 594, 601–05)). The Federal Agency Defendants offer no justification for departing from this general rule, even though Plaintiff invoked it in her Opposition to their MTD. *See* Opp'n re Fed. Agency Defs.' MTD at 19 [Doc. # 41]. Therefore, Section 701(a)(2) permits this Court to review Plaintiff's constitutional claims against the Federal Agency Defendants—*i.e.*, Count Two—APA Unconstitutional Action, and Count Eight—Declaratory Relief only insofar as that count is derivative of Count Two. Conversely, pursuant to Section 701(a)(2), the Court **DISMISSES without prejudice** Count One—APA Arbitrary and Capricious Act.

---

[16] Furthermore, it is possible that USCIS could not identify cases in which it had denied DACA applications that satisfied the objective criteria because the agency did not record such information. *See Regents*, 908 F.3d at 507 n.23 (noting that the dissent in *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), observed that "according to the declarations filed in that case, the reason DHS could not point to specific instances in which DACA applicants met the program criteria but were denied as a matter of discretion was that DHS did not have the ability to track and sort the reasons for DACA denials" (citing *Texas*, 809 F.3d at 211 (King, J., dissenting))).

**CIVIL MINUTES—GENERAL**                        Initials of Deputy Clerk KT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 17 of 32 |

3. **Title 8 U.S.C. Section 1252(b)(9) Does Not Deprive This Court of Jurisdiction Over Plaintiff's Claims Against the Individual Defendants**

Title 8 U.S.C. section 1252(b)(9) provides:

With respect to review of an order of removal under subsection (a)(1), the following requirements apply:

* * *

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter [(*i.e.*, Subchapter II. Immigration)] shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 or Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*See* 8 U.S.C. § 1252(b)(9).

Additionally, Section 1252(a)(5) provides in relevant part that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." *See* 8 U.S.C. § 1252(a)(5). The Ninth Circuit has held that these two provisions effectively "channel judicial review over final orders of removal to the court of appeals." *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). To determine whether Section 1252(b)(9) is applicable, the Ninth Circuit has "distinguished between claims that 'arise from' removal proceedings under § 1252(b)(9)— which must be channeled through the [petition for review] process—and claims that are collateral to, or independent of, the removal process."[17] *See id.* at 1032. Conversely, "claims [that] are

---

[17] The Individual Defendants cite Justice Alito's plurality opinion from *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), for the proposition that Section 1252(b)(9)'s applicability turns on "whether the legal issues the court must decide arise from actions taken to remove an alien[.]" *See* Indiv. Defs.' MTD at 15 (citing *Jennings*, 138 S. Ct. at 840 (Alito, J.) (plurality opinion)) [Doc. # 44]. Insofar as the Individual Defendants suggest that this test differs from the standard announced in *J.E.F.M.*, the Court rejects that approach because it must follow binding circuit precedent. *See Lair v. Bullock*, 798 F.3d 736, 745 (9th Cir. 2015) (holding that a prior circuit decision is binding

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
| --- | --- | --- | --- |

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 18 of 32 |
| --- | --- | --- | --- |

bound up in and an inextricable part of the administrative process" fall within the scope of Section 1252(b)(9).  *See J.E.F.M.*, 837 F.3d at 1033.  The Ninth Circuit has observed that Section 1252(b)(9)'s purpose is to ensure that during the immigration proceedings, plaintiffs raise all claims that "could and should have been brought before the agency."  *See id.* at 1032.

Plaintiff's *Bivens* claims seek monetary relief that is intended to redress past injuries that cannot be remedied via prospective relief.  *See Lanuza v. Love*, 899 F.3d 1019, 1021 (9th Cir. 2018) ("*Bivens* is the first Supreme Court decision to recognize an implied right of action for damages against federal officers alleged to have violated a plaintiff's constitutional rights."); *McKinnon v. Talladega Cty.*, 745 F.2d 1360, 1362 (9th Cir. 1984) ("Unlike declaratory and injunctive relief, which are prospective remedies, awards for monetary damages compensate the claimant for alleged past wrongs.").  Because claims for damages are not available in removal proceedings, they are collateral to that process for the purposes of Section 1252(b)(9).  *See Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 123 (D. Conn. 2010) ("[A]lthough the plaintiffs here could have—and, for the most part, did—raise constitutional arguments before the immigration judge, the only potential remedy in that forum was the suppression of any evidence obtained from their illegal arrests. . . .  [B]ecause the immigration judge could not have afforded the plaintiffs relief for the constitutional claims raised in this action, those claims do not arise out of the order of removal, and jurisdiction is not barred by section 1252(b)(9).").

The Court is not persuaded by non-binding decisions that arrive at the opposite conclusion,[18] as their construction of Section 1252(b)(9) is inconsistent with "the twin background principles that there is a strong presumption favoring judicial review of administrative decisions and that ambiguities in deportation statutes should be construed in favor of the alien," *see Wong*, 373 F.3d at 962.

---

unless "the reasoning or theory of [that] prior circuit authority is clearly irreconcilable with the reasoning or theory of higher authority" (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (*en banc*)) (internal quotation marks omitted)); *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 840 (9th Cir. 2017) (noting that plurality opinions authored by Supreme Court Justices are not binding precedent).

[18] For example, the Federal Agency Defendants cite to *Arias v. U.S. Immigration & Customs Enforcement*, No. 07-1959-ADM/JSM, 2008 WL 1827604, at *5–*6 (D. Minn. Apr. 23, 2008) ("[T]he Removal-Proceeding Plaintiffs are asserting *Bivens* claims for damages arising from unreasonable searches and seizures prohibited by the Fourth Amendment . . . .  The Court finds that § 1252(b)(9) operates to bar these claims because they directly 'aris[e] from an[] action taken or proceeding brought to remove an alien from the United States.'" (quoting 8 U.S.C. § 1252(b)(9))).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 19 of 32 |

**B.     The Federal Agency Defendants' MTD for Failure to State a Claim**

In light of the discussion *supra* Part IV.A.1.a and Part IV.A.2, the Court may review Plaintiff's constitutional claims against the Federal Agency Defendants.  Therefore, the Court's analysis of their Rule 12(b)(6) motion is limited to those claims.

**1.     Count Two—APA: Constitutional Violations**

The APA confers upon the Court the authority to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity . . . ." *See* 5 U.S.C. § 706(b).  Here, Plaintiff's claims against the Federal Agency Defendants are predicated on three constitutional theories, each of which is addressed in turn.

**a.     First Amendment Retaliation Claims**

Plaintiff contends that the Federal Agency Defendants violated her First Amendment rights by denying her DACA application in retaliation for her constitutionally-protected political speech and advocacy.  *See* FAC at ¶ 141 [Doc. # 35].  To demonstrate retaliation in violation of the First Amendment, a plaintiff must establish:

> (1) [she] engaged in constitutionally protected activity; (2) as a result, [she] was subjected to adverse action by the defendants that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*See Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  With regard to the third element, "causation is understood to be but-for causation, without which the adverse action would not have been taken . . . ." *See Hartman v. Moore*, 547 U.S. 250, 260 (2006).

The Federal Agency Defendants argue that Plaintiff cannot establish causation because USCIS has the discretion to deny Plaintiff's DACA request even if she satisfies the DACA Memo's objective criteria, her allegations of causation are "conclusory," and USCIS officials' email correspondence regarding her DACA request demonstrates that "her activism was not a factor that USCIS considered in denying her DACA request." *See* Fed. Agency Defs.' MTD at 31–32 [Doc. # 39].  The Court rejects the first contention because, although the relevant administrative guidance *permitted* USCIS's officials to exercise their discretion to deny Plaintiff's DACA application, that fact has no bearing on whether they *would have* done so absent any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 20 of 32 |
|---|---|---|---|

"retaliatory animus[.]"  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 917 (9th Cir. 2012) (*en banc*) ("[The plaintiff] must allege facts ultimately enabling him to prove the elements of retaliatory animus *as the cause of the injury* . . . ." (emphasis added) (quoting *Hartman*, 547 U.S. at 260) (internal quotation marks omitted)).

Further, the temporal proximity between Plaintiff's widely-publicized criticism of the federal government's implementation of its immigration policies and USICS's denial of her DACA request gives rise to a plausible inference of but-for causation.  *Cf. Cosaltzer v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("[A] plaintiff [alleging First Amendment retaliation] can introduce evidence regarding the proximity in time between the protected action and the allegedly retaliatory employment decision, from which a jury logically could infer [that the plaintiff] was terminated in retaliation for his speech." (quoting *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 2001)) (internal quotation marks omitted)).  In particular, the FAC alleges that shortly after her mother's arrest on April 24, 2017, Plaintiff "led a rally before ICE and the sheriffs who raided her home; organized a letter-writing campaign to ICE and CBP; set up a call line for people to contact ICE and CBP on her mother's behalf; spoke with the media in protest of her mother's arrest; and attended the Sheriff's Civilian Oversight Commission, where she again publicly spoke out against her mother's arrest."  *See* FAC at ¶¶ 74, 77, 79 [Doc. # 35].  Six days after her mother's release, the Individual Defendants arrested Plaintiff.  *See id.* at ¶¶ 81–83.  After Plaintiff's arrest, a photograph of Plaintiff "went viral on the internet, as a 'Free Claudia' campaign swept across Los Angeles and supporters flooded Defendants with requests for her release."  *See id.* at ¶¶ 75–76.  Approximately five months later, USCIS denied Plaintiff's DACA request.  *See* Robinson Decl., Ex. D at 20–21 (Oct. 19, 2017 Decision) [Doc. #39-1].  Under these circumstances, the Court concludes that Plaintiff has sufficiently alleged that her application was denied on account of retaliatory animus.  *See Cosaltzer*, 320 F.3d at 977 ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.").

The email correspondence offered by the Federal Agency Defendants does not undermine this conclusion.  The beginning of the email chain contains a message that has been completely redacted.  *See* Robinson Decl., Ex. C at 17 (email correspondence) [Doc. # 39-1].  Another USCIS official responds to that email by stating: "I will rewrite my analysis then."  *See id.*  This email correspondence supports the plausible inference that USCIS's explanation for the denial of Plaintiff's DACA application (*i.e.*, that she lived with her parents, the latter of whom have been arrested for possession of cocaine and bulk cash) was a pretext. *See id.* at 14–15 (asserting that Plaintiff's DACA application was denied for that reason); *cf. Cosaltzer*, 320 F.3d 977 ("[T]he plaintiff can introduce evidence that 'his employer's proffered explanations for the adverse

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 21 of 32 |
|---|---|---|---|

employment action were false and pretextual.'" (quoting *Keyser*, 265 F.3d at 752)). Additionally, the fact that USCIS has not been able to identify any specific denial cases where an applicant appeared to satisfy the objective DACA criteria further supports Plaintiff's assertion that her DACA application was denied because of her political activism. *See* Rescission Memo at n1. Therefore, Plaintiff's First Amendment retaliation claims against the Federal Agency Defendants are not subject to dismissal. *See Tracht Gut, LLC v. L.A. Cty. Treasurer & Tax Collector*, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.").

**b.     Procedural Due Process Claims**

Plaintiff alleges that USCIS's denial of her DACA application gives rise to a procedural due process claim. *See* Opp'n re Fed. Agency Defs.' MTD at 27–28 [Doc. # 41]. "[P]rocedural due process . . . has three elements:  (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  A constitutionally protected substantive interest may arise from many different sources, including the federal constitution, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), statutes and/or regulations, *see Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956–57 (9th Cir. 2012) (*en banc*) (*per curiam*), or a contract, *see San Bernardino Physicians' Servs. Med. Grp. v. Cty. of San Bernardino*, 825 F.2d 1404, 1407–08 (9th Cir. 1987).

Plaintiff contends that the Federal Agency Defendants' "public pronouncements and actions—in the form of the DACA Memo and their policy and practice of granting DACA to every applicant who met the DACA criteria—created a 'mutually explicit understanding' that applications would be assessed on the basis of the DACA criteria, relevant factors, and reasoned decisionmaking."  *See* Opp'n re Fed. Agency Defs.' MTD at 27–28 [Doc. # 41].  The Federal Agency Defendants counter that Plaintiff's procedural due process claims against them should be dismissed because the DACA program does not give rise to any underlying constitutionally-protected interest.  *See* Fed. Agency Defs.' MTD at 30–31 [Doc. # 39].  The Federal Agency Defendants are correct.

"Discretionary immigration relief gives rise to no 'substantive interest protected by the Due Process Clause.'"  *See Mendez-Garcia v. Lynch*, 840 F.3d 655, 669 (9th Cir. 2016) (quoting *Hyuk Joon Lim v. Holder*, 710 F.3d 1074, 1076 (9th Cir. 2013)).  *Mendez-Garcia*'s holding squarely applies to this case and is binding on this Court.  As discussed *supra* Part IV.A.2, the DACA Memo and other relevant administrative guidance confer upon USCIS the unfettered discretion to deny a DACA request, and the Rescission Memo does not evidence a settled course of adjudication by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 22 of 32 |
|---|---|---|---|

which USCIS abrogated that authority.  Nor does Plaintiff cite any administrative guidance to support her assertion that the Federal Agency Defendants' conduct gave rise to a "mutually explicit understanding" that Plaintiff's DACA application would be assessed in accordance with only "relevant factors" and "reasoned decisionmaking."  *See* Opp'n re Fed. Agency Defs.' MTD at 27 [Doc. # 41].  Therefore, the Court **DISMISSES** the procedural due process claims leveled against the Federal Agency Defendants.[19]  *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) ("A constitutional entitlement cannot 'be created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has been granted generally in the past.'" (quoting *Leis v. Flynt*, 439 U.S. 438, 444 n.5 (1979))); *cf. Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1020 (9th Cir. 2011) ("A person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government.").

### c.    Equal Protection Claims[20]

The Federal Agency Defendants contend that Plaintiff's equal protection claims are conclusory.  *See* Fed. Agency Defs.' MTD at 32–33 [Doc. # 39].  Yet, they submitted email correspondence showing that USCIS denied Plaintiff's DACA application because of Plaintiff's decision to live with her family.  *See* Robinson Decl., Ex. C at 14–15 ("Requestor lives at the stash house where CBP arrested her parents while in possession of cocaine and bulk cash.  Should she be granted DACA? . . .  Although there is no evidence the requestor has ever been directly involved in her parents' [Transnational Criminal Organization] operation, she has lived with them into adulthood.") [Doc. # 39-1] *see also* Part IV.A.1.a (noting that Plaintiff has a fundamental right to familial association).  Further, for the reasons discussed *supra* Part IV.B.1.a, the Court concludes that Plaintiff has sufficiently alleged that USCIS officials denied her DACA request on account of her advocacy for immigrants' rights.  Because Plaintiff's allegations and the available record does

---

[19] As this case does not involve USCIS's procedures for revoking an alien's DACA status, *Medina v. U.S. Department of Homeland Security*, No. CV17-0218-RSM, 2017 WL 5176720 (W.D. Wash. Nov. 8, 2017), is wholly inapposite.  *See Medina*, 2017 WL 5176720 at *4, *8–9 (denying a motion to dismiss a procedural due process claim arising out of the revocation of an alien's DACA status, a process that is governed by procedures that differ from those concerning the initial decision to grant a DACA application).

[20] Although the Fourteenth Amendment's Equal Protection Clause applies only to the states, "the Due Process Clause of the Fifth Amendment similarly prohibits unjustified discrimination by federal actors, and [the Ninth Circuit's] 'approach to Fifth Amendment equal protection claims has always been precisely the same as the equal protection claims under the Fourteenth Amendment.'"  *See United States v. Navarro*, 800 F.3d 1104, 1112 n.6 (9th Cir. 2015) (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 23 of 32 |

not establish that USCIS's conduct was "suitably tailored to serve a compelling state interest[,]" Plaintiff has stated a viable equal protection claim.[21]  *See Denney v. Drug Enforcement Admin.*, 508 F. Supp. 2d 815, 836 (E.D. Cal. 2007) ("Since plaintiff has pled a claim that he has been discriminated against in a way that impacts a fundamental right, the court applies strict scrutiny to the challenged government action.").

### 3.      Count Eight—Declaratory Judgment

Count Eight seeks a declaration that "Defendants have violated the DACA Memo and the DACA SOP; the APA; the Fifth Amendment; 8 C.F.R. §§ 287.3 and 287.8; the Fourth Amendment; and the First Amendment."  *See* FAC at ¶ 204 [Doc. # 35].  Plaintiff does not dispute the Federal Agency Defendants' assertions that:  (1) she does not allege any claims against them under the Fourth Amendment or 8 C.F.R. sections 287.3 and 287.8, and (2) the claims for declaratory relief leveled against the Federal Agency Defendants are wholly derivative of her other claims against them.  *See* Fed. Agency Defs.' MTD at 33–34 [Doc. # 39]; *Stichting*, 802 F. Supp. 2d at 1132.  Therefore, the Court **DISMISSES** Count Eight only to the extent it is predicated on Count One and on Plaintiff's procedural due process claims.  *See supra* Part IV.A.2, Part IV.B.1.b.

### C.      The Individual Defendants' MTD for Failure to State a Claim

The Individual Defendants contend that Plaintiff fails to state claims against them because: (1) the Court should not recognize *Bivens* First and Fourth Amendment claims in this context, and (2) the Individual Defendants are entitled to qualified immunity on such claims.  *See* Indiv. Defs.' MTD at 17–35 [Doc. # 44].  To the extent relevant and necessary to resolve the Individual Defendants' MTD, the Court addresses each of these arguments in turn.[22]

---

[21] The Federal Agency Defendants further contend that Plaintiff's equal protection allegations do not "rise to the level of 'outrageous' discrimination" that is necessary to satisfy *AADC*'s "particularly demanding" standard for such claims.  *See* Fed. Agency Defs.' MTD at 32–33 (quoting *AADC*, 525 U.S. at 489, 491) [Doc. # 39].  This argument fails for the reasons stated *supra* Part IV.A.1.a.

[22] The Individual Defendants further argue that Plaintiff cannot obtain declaratory relief against them in their personal capacities.  *See* Indiv. Defs.' MTD at 14 n.5 [Doc. # 44].  Plaintiff does not dispute this contention.  *See* Opp'n re Indiv. Defs.' MTD at 8–24 [Doc. # 45].  Accordingly, the Court **DISMISSES** Count Eight insofar as it seeks declaratory relief against the Individual Defendants and Count Three only to the extent that it seeks such relief from them.  *See* FAC at ¶ 149 ("[Count Three] seeks declaratory relief and damages in an amount to be proven.") [Doc. # 35].

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 24 of 32 |

### 1.    Whether a *Bivens* Remedy Is Available in this Context

"[T]he [Supreme] Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity[,]" and that "a *Bivens* remedy will not be available [in a new context] if there are special factors counselling hesitation in the absence of affirmative action by Congress." *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks omitted). *Abbasi* held that, "[i]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *See id.* at 1858.  Put differently, a court must consider "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *See id.* at 1857–58.  In the course of conducting that analysis, courts may consider certain special factors, including:

> [T]he rank of the officer involved; whether *Bivens* is being used as a vehicle to alter an entity's policy; the burden on the government if such claims are recognized; whether Congress has indicated that it does not wish to provide a remedy; whether there are alternative avenues of relief available; and whether there is adequate deterrence absent a damages remedy, among other factors.

*See Lanuza*, 899 F.3d at 1028 (citing *Abbasi*, 137 S. Ct. at 1857–63).

The parties dispute whether Plaintiff's Fourth Amendment claim against the Individual Defendants (*i.e.*, Count Three) arises from a new context.  *See* Indiv. Defs.' MTD at 20–21 [Doc. # 44]; Opp'n re Indiv. Defs.' MTD at 14–15 [Doc. # 45].  For the reasons discussed in this section, the Court concludes that an implied cause of action for damages is available to remedy the Individual Defendants' alleged violation of Plaintiff's Fourth Amendment rights regardless of whether that claim arises from a "new context" for the purposes of *Abbasi*.[23]

The fact that the Individual Defendants are low-level Border Patrol officers weighs in favor of allowing Plaintiff to pursue a *Bivens* remedy against them.  *See* FAC at ¶¶ 12–13 [Doc. # 35]; *Lanuza*, 899 F.3d at 1029 ("*Bivens* actions against high-ranking executive officers . . . are disfavored because such suits 'would call into question the formulation and implementation of a

---

[23] The Court need not determine whether *Abbasi* permits Plaintiff to recover damages on her First Amendment claim (*i.e.*, Count Five) because it concludes that, as a matter of law, the Individual Defendants are entitled to qualified immunity on that claim.  *See infra* Part IV.C.2.b.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 25 of 32 |
|---|---|---|---|

high-level executive policy, and the burdens of that litigation could prevent officials from properly discharging their duties.' . . . [The defendant] was a low-level federal officer . . . . Allowing a damages suit to proceed against [him] therefore does not raise the same concerns on this score as were present in *Abbasi*." (quoting *Abbasi*, 137 S. Ct. at 1849)). Furthermore, although the FAC alleges that immigration officials have targeted aliens for deportation on account of their political speech, *see* FAC at ¶¶ 109–14 (alleging the existence of this "recent and ongoing pattern and practice") [Doc. # 35], Plaintiff does not aver that USBP and other agencies within DHS have a policy or practice of seizing and/or arresting such aliens without a warrant, reasonable suspicion, or probable cause. Because Count Three is predicated on the latter, there is no indication that this *Bivens* claim is being used to alter any official policy. *See* FAC at ¶ 158 [Doc. # 35].

Next, the Individual Defendants contend that recognizing Plaintiff's Fourth Amendment *Bivens* claim in the immigration context would create an unsustainable burden for the federal government because an alien can easily allege that no reasonable suspicion supports a seizure, arrest, and/or detention. *See* Indiv. Defs.' MTD at 29 [Doc. # 44]. This concern is grossly overstated. Federal officials are afforded a panoply of procedural protections that mitigate the harms attendant with frivolous Fourth Amendment claims, including qualified immunity (along with the right to immediately appeal a district court decision denying such immunity) and the opportunity to move for sanctions under Federal Rule of Civil Procedure 11. *See, e.g.*, *Vega v. United States*, 881 F.3d 1146, 1152–53 (9th Cir. 2018) (noting that federal officials may raise qualified immunity); *Sharp v. Cty. of Orange*, 871 F.3d 901, 909 n.6 (9th Cir. 2017) ("[A] district court's denial of qualified immunity is immediately appealable to the extent it turns on an issue of law . . . ."); Fed. R. Civ. P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated [(which requires, *inter alia*, that factual contentions have evidentiary support)], the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.").

Further, the Individual Defendants argue that separation-of-powers principles require that *Bivens* not be expanded to immigration arrest and detention claims because the enforcement of immigration law has a natural tendency to affect diplomacy, foreign policy, and the security of the nation. *See* Indiv. Defs.' MTD at 25 [Doc. # 44]. Relatedly, they assert that Congress's failure to provide a private right of action for damages in the Immigration and Nationality Act ("INA") was not inadvertent. *See id.* at 21–23, 25–27. The Ninth Circuit has recognized, however, that "the simple fact that this is an immigration case does not mean that issues of national security, diplomacy or foreign policy are necessarily implicated." *See Lanuza*, 899 F.3d at 1027 n.4. Further, these Defendants do not dispute that this case does not implicate any of those concerns. *See* Opp'n re Indiv. Defs.' MTD at 17 (raising this assertion) [Doc. # 45]; Reply re Indiv. Defs.'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 26 of 32 |

MTD at 13–14 n.4 (apparently conceding this point) [Doc. # 46]. Additionally, notwithstanding the fact that the INA is a vast and comprehensive legislative scheme, the Ninth Circuit has rejected the "categorically broad proposition" that "there can be no *Bivens* remedy for any constitutional violation in the context of immigration proceedings[.]" *See Lanuza*, 899 F.3d at 1027. Therefore, Congress's silence on this precise issue does not necessarily demonstrate that it intended to foreclose Plaintiff's claim. *Cf. Lanuza*, 899 F.3d at 1031 n.6 ("If Congress intended all actions taken by an officer while acting pursuant to the INA to be regulated by the INA itself in a separate court, it would have said so.").

The Individual Defendants also contend that because equitable relief may be available for Fourth Amendment claims, (*e.g.*, the issuance of a writ of habeas corpus or an injunction against "ongoing violation[s]"), this Court should not allow Plaintiff to assert a damages claim against them. *See* Indiv. Defs.' MTD at 23–24 [Doc. # 44]. They insist that the mere "existence of *some* 'form of equitable relief' 'usually precludes' courts 'from authorizing a *Bivens* action.'" *See* Indiv. Defs.' MTD at 24 (emphasis added) (quoting *Abbasi*, 137 S. Ct. at 1865) [Doc. # 44]. The Ninth Circuit has rejected this approach. "[E]ven though an alternative remedy need not be 'perfectly congruent' with *Bivens* or 'perfectly comprehensive,' it still must be 'adequate.'" *See Rodriguez v. Swartz*, 899 F.3d 719, 739 (9th Cir. 2018) (footnotes omitted) (quoting *Minneci v. Pollard*, 565 U.S. 118, 120, 129 (2012); *Adams v. Johnson*, 355 F.3d 1179, 1185 n.3 (9th Cir. 2004)). The prospective relief identified by the Individual Defendants in no way redresses injuries Plaintiff alleges she has already suffered at the hands of the Individual Defendants, including "loss of liberty, loss of earnings and earning capacity, loss of schooling, loss of valuable benefits, distress, humiliation, embarrassment, discomfort, fear, [and] anxiety . . . ."[24] *See* FAC at ¶ 166 [Doc. # 35]; *see also McKinnon*, 745 F.2d at 1362. Therefore, the absence of adequate alternative remedies weighs in favor of allowing Count Three to proceed.

Lastly, the Individual Defendants do not argue that absent a damages remedy, immigration officials would be adequately deterred from committing the Fourth Amendment violations alleged in the FAC. Even if the availability of habeas or injunctive relief has *some* tendency to deter these officials from seizing and arresting aliens without warrants, probable cause, or reasonable suspicion, that consideration alone does not demonstrate that "Congress might doubt the efficacy

---

[24] Because Plaintiff explicitly disavows any challenge to "her detention pending deportation[,]" the Ninth Circuit's decision in *Mirmehdi v. United States*, 689 F.3d 975 (9th Cir. 2012), does not foreclose her *Bivens* claim. *See* Opp'n re Indiv. Defs.' MTD at 16 [Doc. # 45]; *Mirmehdi*, 689 F.3d at 982–83 (declining to recognize a *Bivens* claim for "wrongful detention pending deportation" largely because the INA and/or habeas relief can redress that type of injury).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 27 of 32 |
|---|---|---|---|

or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong . . . ." *See Abbasi*, 137 S. Ct. at 1858.

For these reasons, the Court "extend[s] a *Bivens*-type remedy" to Count Three.[25]  *See id.* at 1859.

### 2.  Whether the Individual Defendants Are Entitled to Qualified Immunity

"The doctrine [of qualified immunity] protects public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Morales v. Fry*, 873 F.3d 817, (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  For the reasons discussed in this section, the Court concludes that the Individual Defendants are entitled to qualified immunity on Count Five but not on Count Three.

### a.  Count Three—Fourth Amendment Claim

Well before the Individual Defendants encountered Plaintiff, the Ninth Circuit expressly held that, "to justify the seizure" of a person to determine whether he or she is an "illegal alien," an "agent must 'articulate objective facts providing a reasonable suspicion that [the subject of the seizure] was an alien illegally in this country.'"  *See Orhorhaghe v. Immigration & Naturalization Serv.*, 38 F.3d 488, 497 (9th Cir. 1994) (alteration in original) (quoting *Benitez-Mendez v. Immigration & Naturalization Serv.*, 760 F.2d 907, 909 (9th Cir. 1983)).  To determine if an alien has been seized, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."  *See id.* at 494 (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)) (internal quotation marks omitted).  The Ninth Circuit has also held that an investigatory stop of an alien "becomes an arrest, and must be supported by probable cause, when a reasonable person would believe that he or she was under arrest."  *See Martinez v. Nygaard*, 831 F.2d 822, 828 (9th Cir. 1987).

---

[25] Given the Court's assessment of the aforementioned special factors, the Court is not persuaded by non-binding judicial decisions that have refused to recognize *Bivens* claims against immigration officials who violated aliens' Fourth Amendment rights.  *See, e.g.*, *Tun-Cos v. Perrotte*, 922 F.3d 514, 525–28 (4th Cir. 2019) (declining to recognize such a *Bivens* claim in part because of the INA's remedial structure and the panel's conclusion that the unavailability of damages in removal proceedings did not weigh in favor of allowing that claim to proceed).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 28 of 32 |
|---|---|---|---|

Applying those clearly established principles to Plaintiff's allegations and all reasonable inferences that may be drawn therefrom in her favor, the Court concludes that qualified immunity does not shield the Individual Defendants from liability on Count Three. The FAC alleges sufficient facts showing that when the Individual Defendants and other agents used "three unmarked vehicles [to] surround[] [Plaintiff] on all sides[,]" they communicated to her that she was not "at liberty" to "go about [her] business."[26] *See* FAC at ¶ 83 [Doc. # 35]; *Orhorhaghe*, 38 F.3d at 497 (quoting *Bostick*, 501 U.S. at 437) (internal quotation marks omitted). The FAC does not allege any facts showing that, at that moment, the Individual Defendants had "reasonable suspicion" that Plaintiff did not have lawful status. *See Orhorhaghe*, 38 F.3d at 494. Further, the fact that Plaintiff identified herself after being asked for her name in Spanish sheds no light on her status either, yet the Individual Defendants initiated a full custodial arrest after she provided that information.[27] *See* FAC at ¶¶ 83, 159 [Doc. # 35]. It follows that the Individual Defendants violated clearly established Fourth Amendment principles by seizing Plaintiff without reasonable suspicion and arresting her without probable cause.[28]

---

[26] The Individual Defendants complain that "Plaintiff offers no case law to support her assertion that surrounding her alone is a seizure . . . ." *See* Reply re Indiv. Defs.' MTD at 16 [Doc. # 46]. Plaintiff's failure to identify a case directly on point is not fatal because "in a sufficiently 'obvious' case of constitutional misconduct, [the Ninth Circuit] do[es] not require a precise factual analogue in [the circuit's] judicial precedents." *See Sharp*, 871 F.3d at 911.

[27] Although the Individual Defendants and/or other officers stated "that's her" after Plaintiff identified herself, it does not necessarily follow that they were aware of her immigration status. *See* FAC at ¶ 83 [Doc. # 35]. These agents may have targeted her for other reasons, including the fact that she was a well-known immigrant rights advocate. *See id.* at ¶ 71 [Doc. # 35].

[28] Count Three also avers that the Individual Defendants violated certain regulations, including the requirement that "[a] person arrested by an immigration officer without a warrant . . . be 'advised of the reasons for his or her arrest[,] the right to represented at no expense to the Government[, and] . . . that any statement may be used against him or her in any subsequent proceeding.'" *See, e.g.*, FAC at ¶ 154 (quoting 8 C.F.R. § 287.3(c)) [Doc. # 35]. The pleading alleges that such regulatory violations are actionable because the protections imposed by them are "mandated by the Fourth Amendment." *See id.* at ¶ 161. The Individual Defendants do not explicitly dispute this contention, but instead apparently claim that the regulations themselves do not create a private right of action. *See* Indiv. Defs.' MTD at 31 n.10 (citing, *inter alia*, 8 C.F.R. § 287.12 for the proposition that these "regulations do not create a right of action") [Doc. # 44]. As the Individual Defendants have failed to cogently challenge this aspect of Count Three, the Court need not address whether it fails to state a claim. *See* Fed. R. Civ. P. 7(b)(1)(B). Furthermore, Plaintiff apparently does not intend to hold the Individual Defendants liable for a female officer's post-arrest search of Plaintiff's person without Plaintiff's consent. *See* Indiv. Defs.' MTD at 32 n.12 ("Neither Bolton nor Brightman (both male agents) can be held liable for a search by some other agent.") [Doc. # 44]; Opp'n re Indiv. Defs.' MTD at 8–24 (failing to contest this assertion) [Doc. # 45].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 29 of 32 |

The Individual Defendants' arguments to the contrary do not undermine this conclusion. They contend that because the FAC alleges "that agents had previously arrested members of Plaintiff's household as part of a criminal investigation, including her mother for immigration violations[,]" then "[a]ny agent running immigration checks could confirm whether members of the household (including Plaintiff) lacked documentation to remain in the United States." *See* Indiv. Defs.' MTD at 32 (citing FAC at ¶¶ 77–79 [Doc. # 35]) [Doc. # 44]. As the FAC does not allege that the Individual Defendants conducted any such "immigration checks" prior to their encounter with Plaintiff, accepting the Individual Defendants' contention would violate the standard governing Rule 12(b)(6) motions. *See Tracht Gut*, 836 F.3d at 1150. They also assert that the Notice to Appear issued to Plaintiff "specifies a precise entry date, the type of authority that permitted her to cross the border, and the manner in which she violated the conditions on which she was allowed to cross." *See* Reply re Indiv. Defs.' MTD at 16 (citing Vela Decl., Ex. A (Notice to Appear dated May 18, 2017) [Doc. # 39-2]) [Doc. # 46]. The FAC's allegations do not establish that the Individual Defendants had this information when they seized Plaintiff and took her into custody.

Thus, Count Three survives the Individual Defendants' MTD.

**b.    Count Five—First Amendment Claim**

Plaintiff accurately notes that government officials may not ordinarily arrest a person in retaliation for that individual's expressive activity. *See* Opp'n re Indiv. Defs.' MTD at 22 [Doc. # 45]; *see also Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008) (holding that "[a]rresting someone in retaliation for their exercise of free speech rights" violates clearly established law). Nonetheless, the Individual Defendants did not violate clearly established First Amendment law when they arrested Plaintiff. Much like the retaliatory arrest allegations in Count Five, the complaint in *AADC* alleged that federal officials had targeted the plaintiffs therein for deportation because of their expressive activity—*i.e.*, their affiliation with the PLFP. *See AADC*, 525 U.S. at 472–73. In the course of determining whether 8 U.S.C. section 1252(g) should be interpreted so as to avoid foreclosing a viable constitutional claim, the Supreme Court held that "[a]s a general matter—and assuredly in the context of claims such as those put forward in the present case—an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense to deportation." *See AADC*, 525 U.S. at 488; *see also Mirmehdi*, 689 F.3d at 983 & n.4 ("To the extent that the Mirmehdis bring a separate claim for conspiracy selectively to enforce immigration laws, such a claim does not exist. The Supreme Court has stated that for reasons implicating the constitutional separation of powers, 'an alien unlawfully in this country has no constitutional right to assert [a claim of] selective enforcement' of immigration laws." (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 30 of 32 |

*AADC*, 525 U.S. at 488) (alteration in original)).  *AADC*'s holding rested primarily on the fact that the constitutional claim therein arose "in the deportation context."  *See AADC*, 525 U.S. at 490. In those circumstances, entertaining this type of claim could "permit and prolong a continuing violation of United States law" and potentially "chill[] law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry[.]"  *See id.*  The Supreme Court also stated that "[t]he Executive should not have to disclose its 'real' reasons for deeming nationals of a particular country a special threat—or indeed for simply wishing to antagonize a particular foreign country by focusing on that country's nationals . . . ."  *See id.* at 491.  Further, although *AADC* did not "rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome[,]" the Supreme Court did not endeavor to define the characteristics of any such case.  *See id.*

Plaintiff distinguishes *AADC* from the instant case by pointing out that Count Five challenges a retaliatory arrest (and not a retaliatory prosecution), and that she did not support terrorist activity but instead engaged in "political speech critical of law enforcement[.]"  *See* Opp'n re Indiv. Defs.' MTD at 22 [Doc. # 45].  It is plausible that one or both of these distinctions render *AADC*'s holding inapposite.  Nonetheless, when Plaintiff was arrested on May 18, 2017, the scope of *AADC* was sufficiently ambiguous in the immigration enforcement context such that the Individual Defendants did not fair warning that their conduct violated her First Amendment rights.  In particular, *AADC* explicitly established a "general rule" concerning selective-enforcement claims in the deportation context, the contours of which were amorphous.  *See AADC*, 525 U.S. at 487–92; *see also Ragbir*, 923 F.3d at 69 ("[T]he Supreme Court did not clarify what might constitute an 'outrageous' basis for discrimination . . . .").  As Plaintiff has not identified any authority predating her arrest that clarified that the Individual Defendants' conduct was exempt from *AADC*'s protection, they are entitled to qualified immunity on this claim.  *See Galen v. Cty of L.A.*, 477 F.3d 652, 665 (9th Cir. 2007) ("In deciding whether a right was clearly established, we look to whether the alleged constitutional violation was obvious; whether there were legal authorities declaring the conduct at issue unconstitutional; and whether other sources of regulatory or legal authority sanctioned the challenged practice.  [The plaintiff] bears the burden of proving that his allegedly violated rights were clearly established." (citation omitted)); *cf. Sharp*, 871 F.3d at 913–16 (holding that the defendant-officers' conduct "did not violate clearly established law because of the legal ambiguity existing at the time of the arrest as to whether" the officers could detain a person while executing an arrest warrant for another individual, and observing that "[p]laintiffs . . . also failed to identify a case that pronounces a constitutional rule at a level of specificity sufficient to alert these deputies . . . that their conduct was unconstitutional in the specific circumstances they confronted").

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk KT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | | Date | August 28, 2019 |
|---|---|---|---|---|
| Title | ***Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.*** | | Page | 31 of 32 |

Accordingly, the Court **GRANTS** the Individual Defendants' motion to dismiss Count Five because, as a matter of law, they are entitled to qualified immunity thereon.

**D.     Leave to Amend**

The decision to grant leave to amend is committed to this Court's sound discretion. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016). "[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 607 (9th Cir. 1992). Affording Plaintiff leave to amend will not cure the fundamental defect in her claims against the Federal Agency Defendants—*i.e.*, DHS's and USCIS's administrative guidance confers unfettered discretion on government officials to deny DACA requests. *See supra* Part IV.A.2, Part IV.B.1.b. Nor will new allegations change the fact that on the date of Plaintiff's arrest, a reasonable governmental official could have believed that a retaliatory arrest would not violate an undocumented person's First Amendment rights. *See supra* Part IV.C.2.b. Further, Plaintiff tacitly concedes that other aspects of her FAC are subject to dismissal. *See supra* Part IV.B.3; note 22. Therefore, Plaintiff is not entitled to replead the claims dismissed by this Order. *See Ebner*, 838 F.3d at 963 ("[A] district court should grant leave to amend . . . unless it determines that the pleading *could not possibly be cured by the allegation of other facts*." (emphasis added) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995))).

**V.**
**CONCLUSION**

For the foregoing reasons, the Federal Agency Defendants' MTD is **GRANTED IN PART** and **DENIED IN PART** and the Individual Defendants' MTD is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Court **DISMISSES** Count One against the Federal Agency Defendants because 5 U.S.C. section 701(a)(2) bars the Court from entertaining that claim;

2. The Court **DISMISSES** Count Two against the Federal Agency Defendants only insofar as it is predicated on a procedural due process violation;

3. The Court **DISMISSES** Count Eight against the Federal Agency Defendants to the extent it is derivative of the other claims against those Defendants that have been dismissed by this Order;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-9276 DMG (PLAx) | Date | August 28, 2019 |
|---|---|---|---|

| Title | *Claudia Sarahi Rueda Vidal v. U.S. Department of Homeland Security, et al.* | Page | 32 of 32 |
|---|---|---|---|

4.  The Court **DISMISSES** Count Three only insofar as it seeks declaratory relief from the Individual Defendants;

5.  The Court **DISMISSES** Counts Five and Eight against the Individual Defendants;

6.  Leave to amend is **DENIED** because the defects discussed herein cannot be cured by amendment; and

7.  The Federal Agency Defendants and the Individual Defendants shall file their respective Answers to the remainder of the First Amended Complaint within **21 days** of the date of this Order.

**IT IS SO ORDERED**.