JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Deputy Director
JAMES J. WALKER
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Counsel for Federal Agency Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA SARAHI RUEDA VIDAL,<br><br>   Plaintiff,<br><br>   v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>   Defendants. | Case No. 2:18-cv-9276- DMG-PLA<br><br>**DEFENDANTS' NOTICE OF MOTION & MEORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Judge**: Hon. Dolly M. Gee<br>**Courtroom**: 8C<br>**Hearing**: Friday, June 12, 2020<br>**Time**: 9:30am |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

INTRODUCTION ......................................................................................1

BACKGROUND ........................................................................................3

SUMMARY OF THE ARGUMENT ................................................................4

ARGUMENT. ...........................................................................................6

    I.      Standard of Review .........................................................................6

           A. Administrative Procedure Act ..............................................6

           B. Motion for Summary Judgment. ...........................................8

    II.    The Court lacks jurisdiction because there is no constitutional interest in a grant of DACA ....................................................................9

           A. A discretionary DACA denial does not implicate a threat of removal, and such a threat may not be used to overcome the jurisdictional bar of Section 1252(g).................................................9

           B. A DACA request may be denied as a pure exercise of prosecutorial discretion. .....................................................................12

    III.   The Government's denial of Ms. Rueda's DACA request is supported by the Administrative Record ...................................................................14

           A. Ms. Rueda cannot prevail on a First Amendment retaliation claim where the Administrative Record fails to support but-for causation ..14

           B. The Court's inferential findings of animus are refuted by the Administrative Record .......................................................17

           C. Ms. Rueda's Equal Protection Claim is similarly unfounded............19

    IV.   The Court lacks jurisdiction over Plaintiff's Count 8 – Declaratory Judgment...................................................................................22

CONCLUSION.........................................................................................23

ii

2:18-cv-9276- DMG-PLA

# TABLE OF AUTHORITIES

**Federal Cases**

*Alaska Dept. of Environmental Conservation v. E.P.A.,*
    540 U.S. 461 (2004) ........................................................................7

*Al-Aulaqi v. Obama,*
    727 F. Supp. 2d 1 (D.D.C. 2010) ..........................................11

*Arkansas v. Oklahoma,*
    503 U.S. 91 (1992) ..........................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................22

*Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ................................................19

*Camp v. Pitts,*
    411 U.S. 138 (1973) ........................................................................8

*Chavez v. Hagel,*
    No. CV 16-00685 HG/KJM, 2017 WL 937144 (D. Haw. Mar. 9, 2017) ............21

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971), *abrogated in part on other grounds as recognized in*
    *Califano v. Sanders,* 430 U.S. 99, 105 (1977).........................................7

*Coszaltzer v. City of Salem,*
    320 F.3d 968 (9th Cir. 2003) ..................................................17, 18, 19

*Crickon v. Thomas,*
    579 F.3d 978 (9th Cir. 2009) ........................................................7

*De Mercado v. Mukasey,*
    566 F.3d 810 (9th Cir. 2009) ......................................................11

*Denney v. Drug Enf't Admin.,*
    508 F. Supp. 2d 815 (E.D. Cal. 2007) ......................................20

2:18-cv-9276- DMG-PLA

*Denney v. Drug Enf't Admin.*,
   No. CIV.S06-1711LKKGGH, 2008 WL 1808289 (E.D. Cal. Apr. 22, 2008), *aff'd sub nom. Denney v. Drug Enf't Agency*, 348 F. App'x 327 (9th Cir. 2009)..........15

*Family Inc. v. U.S. Citizenship & Immigration Servs.*,
   469 F.3d 1313 (9th Cir. 2006) ...................................................6, 16, 17

*Fragosa v. Moore*,
   17 F. Supp. 3d 985 (C.D. Cal. 2014) ......................................................8

*Garcia Herrera v. McAleenan*,
   No. 2:19-CV-0094-TOR, 2019 WL 4170826 (E.D. Wash. Sept. 3, 2019).....12, 13

*Gilbert v. Finn*,
   489 F. App'x 184 (9th Cir. 2012) .........................................................19

*Hammad v. Holder*,
   603 F.3d 536 (9th Cir. 2010) ...........................................................7, 14

*Hartman v. Moore*,
   547 U.S. 250 (2006) ....................................................................14, 16

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .........................................................................13

*ISE Entm't Corp. v. Longarzo*,
   No. CV 17-9132-MWF(JCX), 2018 WL 1569803 (C.D. Cal. Feb. 2, 2018)
   *vacated on other grounds*, 658 F. App'x 846, 847 (9th Cir. 2016) .....................22

*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) .............................................................10

*Karam v. City of Burbank*,
   352 F.3d 1188 (9th Cir. 2003) .........................................................15, 16

*Keyser v. Sacramento City Unified Sch. Dist.*,
   265 F.3d 741 (9th Cir. 2001) ..............................................................16

*Kwai Fun Wong v. United States*,
   373 F.3d 952 (9th Cir. 2004) ..............................................................12

*Lai v. Quality Loan Service Corp.*,
   No. CV 10–2308 PSG (PLAx), 2010 WL 3419179 (C.D. Cal. Aug. 26, 2010)...23

iv

*Lozman v. City of Riviera Beach, Fla.*,
   138 S. Ct. 1945 (2018) ...................................................................... 14

*Mendez-Garcia v. Lynch*,
   840 F.3d 655 (9th Cir. 2016) ........................................................ 2, 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................. 7

*Nelson v. Pima Cmty. Coll.*,
   83 F.3d 1075 (9th Cir.1996) ........................................................... 19

*Nw. Motorcycle Ass'n. v. Dep't of Agriculture*,
   18 F.3d 1468 (9th Cir. 1994) ............................................................ 8

*Occidental Engineering Co. v. INS*,
   753 F.2d 766 (9th Cir. 1985) ............................................................ 8

*Ragbir v. Homan*,
   923 F.3d 53 (2d Cir. 2019) .....................................................passim

*Rath Packing Co. v. Becker*,
   530 F.2d 1295 (9th Cir. 1976) .......................................................... 6

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
   908 F.3d 476 (9th Cir. 2018) .................................................... 12, 13

*Reno v. Am.-Arab Anti-Discrimination,
   Comm'n ("AADC")*, 525 U.S. 471 (1999) ................................. 2, 3, 4, 13

*Romeiro De Silva v. Smith*,
   773 F.2d 1021 (9th Cir. 1985) ........................................................ 13

*Rosenbaum v. Washoe Cty.*,
   663 F.3d 1071 (9th Cir. 2011) ........................................................ 11

*Safari Aviation Inc. v. Garvey*,
   300 F.3d 1144 (9th Cir. 2002) .......................................................... 7

*Sagana v. Tenorio*,
   384 F.3d 731 (9th Cir. 2004) ..................................................... 20, 21

v

2:18-cv-9276- DMG-PLA

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
  747 F.3d 581 (9th Cir. 2014) ............................................................... 6, 7

*Santos v. Lynch*,
  No. 1:15-CV-00979-SAB, 2016 WL 3549366 (E.D. Cal. June 29, 2016) .......... 11

*Skelly Oil Co. v. Phillips Petroleum Co.*,
  339 U.S. 667 (1950) ............................................................................ 22

*Talib v. Guerrero,*
  No. CV1503825JAKDFM, 2019 WL 7039623 (C.D. Cal. Oct. 17, 2019), *report
  and recommendation adopted*, No. CV1503825JAKDFM, 2019 WL 7037761
  (C.D. Cal. Dec. 20, 2019) ..................................................................... 20

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ................................................................ 19

*Village of Willowbrook v. Olech*,
  528 U.S. 562 (2000) ........................................................................... 21

*Webster v. Doe*,
  486 U.S. 592 (1988) ........................................................................... 19


Federal Statutes

5 U.S.C. § 701(a)(2) ............................................................................. 2, 13

5 U.S.C. § 706(2)(A) ............................................................................ 6, 7

8 U.S.C. § 1252(g) ........................................................................ 2, 11, 13, 23

8 U.S.C. § 1252(b)(9) ........................................................................... 10


Federal Rules

Fed. R. Civ. P. 8(a)(2) ......................................................................... 22

Fed. R. Civ. P. 12(h)(3) ......................................................................... 6

Fed. R. Civ. P. 56 ................................................................................ 8

vi

1

Fed. R. Civ. P. 12(b)(1).................................................................................................1

Fed. R. Civ. P. 25(d) ....................................................................................................1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2:18-cv-9276- DMG-PLA

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 12, 2020 9:30 a.m., or as soon thereafter as the parties may be heard, Defendants U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection, U.S. Border Patrol, Kenneth T. Cuccinelli[1] and Kathy Baran, in their official capacities ("Federal Agency Defendants") will bring for hearing a motion for summary judgment. The hearing will take place before the Honorable Dolly M. Gee in Courtroom 8C, 350 W 1st Street, Suite 4311 Los Angeles, CA, 90012.

This motion is based on the memorandum of points and authorities attached hereto, all pleadings, papers and files in this action, and such oral argument as may be presented at the hearing on the motion. This motion is also made following conferences between counsel for the Plaintiffs and Federal Agency Defendants pursuant to L.R. 7-3, which took place via telephone on January 22, 2020.

---

[1] Kenneth T. Cuccinelli is automatically substituted for Lee Francis Cissna, former USCIS director, as a party in accordance with Federal Rule of Civil Procedure 25(d). Mr. Cuccinelli serves as Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services.

1   DATED: April 27, 2020                    Respectfully Submitted,

2   JOSEPH H. HUNT                           JEFFREY S. ROBINS
3   Assistant Attorney General              Deputy Director

4   WILLIAM C. PEACHEY                       */s/ James J. Walker*
5   Director                                 JAMES J. WALKER
                                             Trial Attorney
6                                            U.S. Department of Justice
7                                            Civil Division
                                             Office of Immigration Litigation
8                                            District Court Section
9                                            P.O. Box 868, Ben Franklin Station
                                             Washington, D.C. 20044
10                                           Phone: (202) 532-4468
11                                           Fax: (202) 305-7000
                                             Email: james.walker3@usdoj.gov
12
13                                           *Counsel for Federal Agency Defendants*
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Through an amended complaint filed on March 22, 2019, Plaintiff Claudia Sarahi Rueda Vidal ("Ms. Rueda") is, under the Administrative Procedure Act ("APA"), challenging the decision of the U.S. Citizenship and Immigration Services ("USCIS") to deny her request for Deferred Action for Childhood Arrivals ("DACA"). ECF No. 35, First Amended Complaint ("FAC"). Defendants U.S. Department of Homeland Security ("DHS"), USCIS, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), U.S. Border Patrol ("BP"), Kenneth T. Cuccinelli and Kathy Baran, in their official capacities (the "Federal Agency Defendants")[1] moved the Court to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted. ECF No. 39.

On August 28, 2019, the Court granted in part and denied in part Federal Agency Defendants' motion to dismiss the FAC, dismissing Count One (Administrative Procedure Act - Arbitrary and Capricious Action) entirely, and the procedural due process violation claim in Count Two (Administrative Procedure Act – Unconstitutional Actions); and leaving in place the APA-based First Amendment retaliation and Equal Protection claims against Federal Agency Defendants in Count Two.[2] *See* ECF No. 48,

---

[1] Plaintiff is also asserting *Bivens* claims against certain federal defendants Andrew K. Bolton and Daniel Brightman in their personal capacity. Undersigned counsel does not represent these individuals. This motion is only being filed by the Federal Agency Defendants, who are sued in their official capacity in what remains of Count No. 2, and what remains, if anything, of Count No. 8, following the Court's partial grant of Defendants' motion to dismiss.

[2] The Court also granted in part and denied in part the Individual Defendants' motion to dismiss [ECF No. 44]. The Court implied a right of action directly under the Fourth

1

Order Re Defendants' Motions to Dismiss ("Order"). The Court dismissed Count Eight (Declaratory Judgment Act) "to the extent it is derivative of the other claims against those Defendants that have been dismissed by this Order." *Id*. at 31.

Federal Agency Defendants have since compiled the Certified Administrative Record ("CAR") supporting the decision to deny Ms. Rueda's DACA request and now seek summary judgment on the remaining claims. Where the Court already found that Ms. Rueda has no protected interest in receiving a discretionary grant of deferred action, and where the Administrative Record supports the lawful denial of Ms. Rueda's DACA request, the Court should grant Federal Agency Defendants summary judgment on the FAC.

In dismissing Count One and part of Count Two, the Court found that 5 U.S.C. § 701(a)(2) precludes judicial review of a discretionary denial of a DACA request under the APA, Order at 15-16; and that a DACA request "gives rise to no 'substantive interest protected by the Due Process Clause.'" *Id*. at 21 (citing *Mendez-Garcia v. Lynch*, 840 F.3d 655, 669 (9th Cir. 2016)). The Court did not decide whether 8 U.S.C. § 1252(g) barred Ms. Rueda's claims, but found that she possesses a "substantial interest in avoiding deportation," such that her allegation of denial of her DACA request based on her speech or familial association would be sufficiently outrageous that Section 1252(g) would not deprive the Court of jurisdiction even if it did apply generally. *Id*. at 11 (citing *Ragbir v. Homan*, 923 F.3d 53, 67-73 (2d Cir. 2019)); *see also Reno v. Am.-Arab Anti-Discrimination Comm'n* ("*AADC*"), 525 U.S. 471, 487-92 (1999).

Building on this substantial constitutional interest, the Court permitted Ms. Rueda's APA-based First Amendment and Equal Protection claims under Count Two to proceed on the basis that, under the deferential review afforded a non-moving party to a

_____

Amendment of the Constitution and concluded that the Individual Defendants were not entitled to qualified immunity on Count Three. *See* Order at 24-29. Those issues are now before the Ninth Circuit.

2

motion to dismiss, Ms. Rueda had established a plausible inference that her DACA request may have been denied due to animus. *Id*. at 11. The Court relied on one inferential finding: that the timing of the denial decision was close in time to Ms. Rueda's protest activity, suggesting the denial was made in retaliation for her protest activity. *Id*. at 20. The Court further found that "[t]he email correspondence offered by the Federal Agency Defendants does not undermine this conclusion," where one email exhibit indicated that the USCIS Background Check Unit ("BCU") Immigration Services Officer ("BCU adjudicator") rewrote her denial decision for a reason that was hidden by a law enforcement privilege redaction. *Id*. at 4.

## BACKGROUND

Ms. Rueda was born in Mexico and brought to the United States at the age of six. CAR 0092 (Declaration of Claudia Sarahi Rueda Vidal in support of DACA request, June 9, 2017) [CAR 92, 0079-80]; *id*. at 0325 (Notice to Appear, May 18, 2017). Ms. Rueda lived with, and was financially dependent on, her parents at the time of the raid on her home and her mother's arrest on April 24, 2017. *Id*. at 0079, 0092, 0154.

In that raid, Sheriffs and BP agents arrested Ms. Rueda's parents at their home in Los Angeles, and seized $630,000 and 33 pounds of cocaine. *Id*. at 0380, 0393. "According to Dwain Holmes, Supervisory Border Patrol Agent of San Diego Sector Prosecutions, [Ms. Rueda's] parents head a Transnational Criminal Organization (TCO) smuggling narcotics across the border with Mexico." *Id*. at 0126. Ms. Rueda "arrived at the scene during the arrest." *Id*.; *see id*. at 92, 79 ("On April 24, 2017, a lot of law enforcement officers showed up at my house. . . . I immediately went back to our apartment. I saw many people being arrested.").

On May 18, 2017, BP agents "traveled to Los Angeles, California to search for specific targets associated with the Rueda TCO," and encountered Ms. Rueda at a second house affiliated with the TCO. CAR at 0126. Ms. Rueda was arrested and detained by BP officers on May 18, 2017. CAR 0394. BP agents also issued Ms. Rueda a Notice to

3

Appear ("NTA") on May 18, 2017, indicating DHS's intention to begin removal proceedings. *Id*. at 0325-26.

Ms. Rueda was released from detention on June 9, 2017. *Id*. at 0079. On June 19, 2017, she submitted a DACA request to USCIS. *Id*. at 0021-108.

In response to Ms. Rueda's DACA request, a supervisory Border Patrol agent contacted the DACA BCU office to notify USCIS that Ms. Rueda had been placed into removal proceedings and to communicate the facts of Ms. Rueda's family's TCO operations. CAR 0117-22. The BCU adjudicator sent a Request for Adjudicative Guidance ("RAG") to USCIS SCOPS, pursuant to the DACA SOP, to consult on whether to deny Ms. Rueda's DACA request given the circumstances of her close association to the TCO. *Id*. at 0123-24; 0400-08.

SCOPS concurred with the adjudicator that Ms. Rueda's DACA request warranted a discretionary denial based on her suspected affiliation with the TCO. *Id*. at 0392. The SCOPS analysis stated: "Although there is no evidence the requestor has ever been directly involved in her parents' TCO operation, she has lived with them into adulthood. CBP encountered her at two different stash houses targeted in their investigation. CBP classifies her as an associate to the Rueda TCO by virtue of familial relation in [redacted]." *Id*.

USCIS denied Ms. Rueda's DACA request on October 19, 2017, stating "You have not established that you warrant a favorable exercise of prosecutorial discretion." CAR 0114-15.

## SUMMARY OF THE ARGUMENT

While Ms. Rueda attempts to downplay the facts of her family's criminal activity, the Court should not ignore that Ms. Rueda was an adult living in an apartment where police and BP agents found *33 pounds* of cocaine and $630,000 in cash. *See* CAR at 0079, 0126, 0380. As inferences go, the possibility that Ms. Rueda was not aware of that much cocaine and cash moving through her home is all but impossible. That law

4

2:18-cv-9276- DMG-PLA

enforcement determined not to arrest and charge Ms. Rueda with a crime does not prevent USCIS from considering the facts of her close ties to this criminal organization, whether led by her parents or not, in deciding whether to exercise prosecutorial discretion in her favor. Ms. Rueda's argument that the Government violates the Constitution by merely refusing to reward an individual who chooses, as an adult, to live in an apartment where as much as 33 pounds of cocaine and hundreds of thousands of dollars in drug money are kept as part of a criminal operation is astounding. The Court should refuse to continue entertaining the claim.

The Administrative Record demonstrates that USCIS considered the facts of Ms. Rueda's close ties to her family's criminal organization, and not her protest activity—activity she barely disclosed in her DACA request—when deciding whether to grant or deny her request for a discretionary grant of deferred action. Contrary to the Court's previous analysis, the denial of that request resulted in no legal consequences for Ms. Rueda, either statutory or constitutional. *See* Order at 21. Further, the risk of removal that the Court builds its jurisdiction on derives from Ms. Rueda's unlawful status and CBP's decision to initiate removal proceedings against her. The Court cannot relieve either of those issues, nor does the FAC ask it to.

Where Ms. Rueda has no protected interest in receiving DACA, and where the Administrative Record supports USCIS's denial of Ms. Rueda's DACA request as a lawful exercise of agency discretion, the Court should find that Ms. Rueda cannot establish animus as the but-for causation of her denial and grant Federal Agency Defendants' motion for summary judgment. In granting Federal Agency Defendants' motion to dismiss in part, the Court correctly found that the decision to deny Ms. Rueda's DACA request is not itself reviewable under the APA, *see* Order at 12 n.11, 15-16, and that no due process right to a DACA grant exists. *Id*. at 21-22. The Court only found that, under the highly deferential motion to dismiss standard of review, Ms. Rueda had

2:18-cv-9276- DMG-PLA

established a plausible inference that USCIS's denial of her DACA request may have been motivated by animus. *Id*. at 20-21, 22-23.

However, the Court based its conclusion on an incorrect premise that Ms. Rueda has "a substantial interest in avoiding deportation." *Id*. at 11 (also finding Ms. Rueda possesses a "substantive due process right to family integrity" and a "fundamental liberty interest" in parent-child companionship (at 25 years old)). However, Ms. Rueda has expressly disclaimed any challenge to the decision to place her into removal proceedings, and the Court agreed it would lack jurisdiction to hear such a challenge. *Id*. at 17-18. The Court should evaluate Ms. Rueda's interest in a discretionary grant of DACA consistent with its initial finding that DACA confers no substantive rights, and dismiss the remaining claims for the same lack of jurisdiction.[3] Otherwise, the Court should grant Defendants summary judgment because the Administrative Record supports the denial decision and disproves the thin inference of retaliation the Court found in the timing of the denial and the redaction of one email response. *See* Order at 20.

## ARGUMENT

**I.    Standard of Review**

### A. Administrative Procedure Act

In review of agency action under the APA, the Court may set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court "will not disturb the agency's findings under this deferential standard unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Family Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006) (court's emphasis) (citation and internal quotation omitted); *see also San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601

---

[3] *See Rath Packing Co. v. Becker,* 530 F.2d 1295, 1303 (9th Cir. 1976) ("The question of subject matter jurisdiction may be raised by the parties at any time or by the court *sua sponte*.") (citations omitted); Fed. R. Civ. P. 12(h)(3).

2:18-cv-9276- DMG-PLA

(9th Cir. 2014) (agency's decision is "entitled to a presumption of regularity") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971), *abrogated in part on other grounds as recognized in Califano v. Sanders,* 430 U.S. 99, 105 (1977). Thus, under Section 706(2)(A), the reviewing Court "presum[es] the agency action to be valid and affirm[s] the agency action if a reasonable basis exists for its decision." *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009) (citation omitted).

The Court's review under the "arbitrary and capricious" standard is also narrow, and the Court "is not empowered to substitute its judgment for that of the agency." *San Luis & Delta-Mendota Water Auth.*, 747 F.3d at 601 (quoting *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416); *see also Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992) ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence."); *see also Hammad v. Holder*, 603 F.3d 536, 544 (9th Cir. 2010) (the court "must affirm the BIA's order when there is such relevant evidence as reasonable minds might accept as adequate to support it, even if it is possible to reach a contrary result on the basis of the evidence.") (citation omitted).

Stated differently, an agency decision may be reversed "only if the agency has relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Ins. Co.,* 463 U.S. 29, 43 (1983)). Even a decision "with less than ideal clarity" will stand "if the agency's path may reasonably be discerned." *Crickon*, 579 F.3d at 982 (citing *Alaska Dept. of Environmental Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004)).

7

2:18-cv-9276- DMG-PLA

Such review is necessarily based on the administrative record before the agency at the time the agency's decision was made. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam) (judicial review under the APA is based on "the administrative record already in existence, not some new record made initially in the reviewing court.").

## B. Motion for Summary Judgment

In deciding a motion for summary judgment challenging a final agency action, the function of the reviewing court is to determine whether, as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did. *Occidental Engineering Co. v. INS,* 753 F.2d 766, 769 (9th Cir. 1985). While "there may be issues of fact before the administrative agency," the district court "is not required to resolve any facts in a review of an administrative proceeding." *Id*. Unlike the use of summary judgment in an original district court proceeding, "the district court is reviewing a decision of an administrative agency which is itself the finder of fact." *Id*. at 770.

Because review under the APA is a question of law, the standard of review set forth in Fed. R. Civ. P. 56 is not applicable. *Id.* at 770; *see also Nw. Motorcycle Ass'n. v. Dep't of Agriculture*, 18 F.3d 1468, 1472 (9th Cir. 1994). Instead, "the court's review is limited to the administrative record, to which the Plaintiff and the Defendants have stipulated to." *Id.* at 1472; *see Pitts*, 411 U.S. at 142. Unlike a motion to dismiss, where the district court assumes the truth of all facts asserted in the complaint, no such assumption is necessary in a motion for summary judgment, "since the relevant facts are in the administrative record." *Fragosa v. Moore*, 17 F. Supp. 3d 985, 988 (C.D. Cal. 2014) (citing *Occidental,* 753 F.2d at 769). Thus, for the Court to grant summary judgment upholding an agency decision under the arbitrary and capricious standard, the Court must find only that the agency's evidence "provided a rational and ample basis for its decision." *Nw. Motorcycle Ass'n.*, 18 F.3d at 1472.

8

2:18-cv-9276- DMG-PLA

**II.    The Court lacks jurisdiction because there is no constitutional interest in a grant of DACA.**

In granting Federal Agency Defendants' motion to dismiss in part, the Court correctly found that the decision to deny Ms. Rueda's DACA request is not itself reviewable under the APA, *see* Order at 12 n.11, 15-16, and that no due process right to a DACA grant exists. *Id*. at 21-22. The Court further clarified that a DACA request "gives rise to no 'substantive interest protected by the Due Process Clause.'" *Id*. at 21 (citing *Mendez-Garcia v. Lynch*, 840 F.3d 655, 669 (9th Cir. 2016)). However, the Court then incorrectly found that Ms. Rueda "has a 'substantial interest in avoiding *deportation* based on [her] speech' and/or her association with her family because she has lived in the United States since she was a young child." Order at 11 (citing *Ragbir*, 923 F.3d at 72) (emphasis added). This reasoning is inapposite to the claims in the FAC, inconsistent with the Court's initial findings, and incorrect as a matter of law. Where the Court asserted jurisdiction over Ms. Rueda's retaliation claim on the faulty premise that USCIS may have "interfered with constitutional rights that are of the highest order of importance," Order at 11-12, it should now find that no jurisdiction exists and grant Federal Agency Defendants summary judgment on the remaining claims.

**A.    A discretionary DACA denial does not implicate a threat of removal, and such a threat may not be used to overcome the jurisdictional bar of Section 1252(g).**

In finding a "substantial interest in avoiding deportation" the Court conflated USCIS's discretionary and unreviewable denial of a government grace—a denial that bears *no* legal consequence on Ms. Rueda—with the more serious and substantive consequence that Ms. Rueda faces under CBP's determination to place her into removal proceedings. In fact, the FAC does not challenge—nor even mention—the decision to place Ms. Rueda into removal proceedings. Rather, the FAC is explicitly limited to two discrete allegations: "an unlawful and retaliatory seizure, search, and arrest of Ms. Rueda," and "an unlawful and retaliatory denial of Ms. Rueda's application for . . . DACA . . . ." *See* FAC at 2. Only the second claim is relevant to Federal Agency

9

2:18-cv-9276- DMG-PLA

Defendants, and the FAC is clear that Count Two is strictly a claim against USCIS's denial of Ms. Rueda's DACA. *See* FAC ¶ 30, 49 ("The evaluation of DACA applications is separate and independent from any removal proceedings in Immigration Court."); *id*. at Count Two ¶¶ 138, 140-43; *id*. at ¶ 145 ("For these independently and cumulatively sufficient reasons, the denial of Ms. Rueda's DACA application violates the APA and must be set aside . . . ."); *see also id*. at Prayer for Relief ¶¶ 2, 3, 4, 5; ECF No. 41 at 10-11; *id*. at 29 ("Defendants mischaracterize this claim as a 'selective enforcement' claim. It is a claim . . . premised on the DACA denial—not for anything happening in immigration court, which is where 'enforcement' occurs.').

The FAC expressly is not a claim for relief from removal—if it were, the Court already correctly held that it would lack jurisdiction to hear it. *See* Order at 17 ("To determine whether [8 U.S.C. §] 1252(b)(9) is applicable, the Ninth Circuit has 'distinguished between claims that "arise from" removal proceedings under § 1252(b)(9)—which must be channeled through the [petition for review] process—and claims that are collateral to, or independent of, the removal process.'") (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016)); *id*. at 17-18 ("claims [that] are bound up in and an inextricable part of the administrative process" fall within the scope of Section 1252(b)(9).") (citing *id.* at 1033)). Where Ms. Rueda argued—and this Court agreed—that the Court's jurisdiction exists only because she is challenging a process wholly independent of removal proceedings, the Court should not base its jurisdiction on any prospect of Ms. Rueda's removal.

The Court's earlier finding is also mistaken because it relies exclusively on *Ragbir v. Homan*, 923 F.3d 53, 69 (2d Cir. 2019) to find that Ms. Rueda has a protected interest in not being removed. *See id*. at 9-11. However, unlike the plaintiff in *Ragbir*, Ms. Rueda has no lawful status to protect and is expressly not seeking to prevent her removal. In fact, the *Ragbir* court distinguished a case like Ms. Rueda's:

> We recognize that in *AADC* the Supreme Court observed, "[I]n all cases, deportation is necessary . . . to bring to an end an ongoing violation of United

10

States law." *Id.* (emphasis removed). That was certainly correct with respect to aliens who have entered the country illegally or have overstayed their visas. However, the circumstance is different for a former lawful permanent resident, such as Ragbir, who has become "deportable."

*Ragbir*, 923 F.3d at 72.

Further distinguishing the plaintiff in *Ragbir* from Ms. Rueda here, Ragbir had received four administrative stays of removal following his final order of removal, which permitted him to lawfully remain in the United States and continue working. *Id.* at 59. Finally, the Second Circuit Court of Appeals found that, "although Congress intended to strip all courts of jurisdiction over his claim [through Section 1252(g)], the Suspension Clause of the Constitution nonetheless requires that Ragbir may bring his challenge *through the writ of habeas corpus*." *Id.* at 57 (emphasis added). Conversely, Ms. Rueda has not been granted a stay of removal (nor ordered removed), and she filed her claim under the APA and not in habeas. Thus, *Ragbir* provides no support for jurisdiction here.

The Court compounded its error by finding that Ms. Rueda also possesses a "substantive due process right to family integrity" and a "fundamental liberty interest" in parent-child companionship. Order at 11 (citing *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011)). In fact, the Ninth Circuit has made clear that aliens have no "right to family unity" to reside in the United States "simply because other members of their family are citizens or lawful permanent residents." *De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009). Furthermore, Ms. Rueda, at approximately 25 years old, is not a child for the sake of invoking the liberty interests of a parent-child relationship. *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 26 (D.D.C. 2010) ("no court has held that a parent possesses a constitutionally protected liberty interest in maintaining a relationship with his adult child free from indirect government interference."); *see also Santos v. Lynch*, No. 1:15-CV-00979-SAB, 2016 WL 3549366, at *4 (E.D. Cal. June 29, 2016) (in the context of a visa denial, "Plaintiff does not have a liberty interest as an adult child to live in the United States with her parents.").

2:18-cv-9276- DMG-PLA

1    Thus, the Court erred in relying on *Ragbir* and *Rosenbaum* to find constitutional

2    interests based on a threat of removal resulting from a discretionary DACA denial, and

3    should now find that, under a proper analysis, Section 1252(g) precludes this Court's

4    jurisdiction over the remaining claims in the FAC.[4]

5    **B.    A DACA request may be denied as a pure exercise of prosecutorial discretion.**

6    Relying on these erroneous findings of fundamental rights ("*AADC* compels courts

7    to evaluate the gravity of the constitutional right affected[.]" Order at 10), the Court

8    created a burden on Defendants to justify a run-of-the-mill exercise of prosecutorial

9    discretion, suggesting that there would have to be evidence of Ms. Rueda's direct

10   involvement in her parents' criminal organization or the presence of national security or

11   foreign policy concerns to justify denying her DACA request. *Id*. at 11. In fact, the

12   DACA SOP requires neither. *See* Order at 6 (citing Form I-821D Instructions at 11); *see*

13   *also Garcia Herrera v. McAleenan*, No. 2:19-CV-0094-TOR, 2019 WL 4170826, at *7

14   (E.D. Wash. Sept. 3, 2019) (Plaintiff was not entitled to more than notice that his DACA

---

[4] The Court's determination that Federal Agency Defendants did not "explicitly answer" the question of whether Section 1252(g) bars review of a DACA denial decision does not seem to account for *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.,* 908 F.3d 476 (9th Cir. 2018). *See* Order at 9 n.9. The Ninth Circuit held in *Regents* that "individual 'no deferred action' decisions . . . *fall exactly within Section 1252(g)* as interpreted by the Court in *AADC*." ECF No. 39, Motion to Dismiss, at 23 (citing *Regents*, 908 F.3d at 504) (emphasis added). A DACA denial is nothing if it is not an "individual no deferred action" decision. Further, the Ninth Circuit has addressed the timing of actions barred by Section 1252(g), to the extent that it found Section 1252(g) "does not bar review of actions that occurred prior to any decision to commence proceedings." *Kwai Fun Wong v. United States*, 373 F.3d 952, 965 (9th Cir. 2004). If, as the Court seems to suggest, actions that occur after the initiation of removal proceedings are also not subject to Section 1252(g), then there is nothing left of that statute.

12

2:18-cv-9276- DMG-PLA

request was denied because he did not warrant a favorable exercise of prosecutorial discretion).

For support, the Court again turned to *Ragbir* for its analysis of *AADC*, discussing the Supreme Court's concerns with withholding the reasons "why the Government sought to *deport* the [Popular Front for the Liberation of Palestine ('PFLP')] supporters." *Id*. (emphasis added).[5] The Court further noted that in *Ragbir*, "the plaintiff's plausible allegation is that the Government undertook the *deportation* to silence criticism of the responsible agency." *Id*. (quoting *AADC*, 525 U.S. at 491) (emphasis added). Relying on these two deportation cases, the Court then concluded: "It follows that the alleged circumstances of USCIS's denial of Plaintiff's DACA application are sufficiently outrageous such that Section 1252(g) may be construed in a manner that does not deprive this Court of jurisdiction." *Id*.

Thus, the Court created fundamental rights where none exist, assigned a risk of deprivation of those rights untethered to the DACA denial at issue, and then elevated that false risk to assert jurisdiction over an exercise of prosecutorial discretion that is otherwise barred from judicial review altogether by the REAL ID Act and the APA. *See* 8 U.S.C. § 1252(g); 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Regents*, 908 F.3d at 504; *Romeiro De Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985).

Despite the Court's conflation of a DACA denial with the consequences of a removal order, the Court correctly noted that a denial of an exercise of prosecutorial discretion to defer action does not implicate any fundamental rights or legal

------

[5] In fact, the Supreme Court in *AADC* rejected a First Amendment retaliation claim by finding that "the Government does not offend the Constitution" by selecting certain aliens for removal on the basis of their affiliation with a terrorist group, as long as those aliens were also removable for another reason. *See AADC*, 525 U.S. at 491–92. Here, the stakes are not removal and, as shown below, Ms. Rueda's request that the court infer discriminatory intent is clearly rebutted by the Administrative Record.

2:18-cv-9276- DMG-PLA

consequences. Order at 15 n.15 ("[T]he DACA Memo explicitly states that it 'confers no substantive right, immigration status or pathway to citizenship.'") (citing DACA Memo at 3); *id.* at 6 ("Even if you satisfy the threshold criteria for consideration of DACA, USCIS may deny your request if it determines, in its unreviewable discretion, that an exercise of prosecutorial discretion is not warranted in your case.") (quoting Form I-821D Instructions at 11).

The Court should find that, where no protected interest in DACA exists, and where the threat of removal is not a permissible ground on which to base jurisdiction, Federal Agency Defendants are entitled to summary judgment on the FAC.

**III.   The Government's denial of Ms. Rueda's DACA request is supported by the Administrative Record.**

    **A.   Ms. Rueda cannot prevail on a First Amendment retaliation claim where the Administrative Record fails to support but-for causation.**

Were the Court to maintain that Ms. Rueda has "a substantial interest in avoiding deportation" that somehow permits a federal district court jurisdiction to review the decision to deny her DACA request—even though deportation is not a consequence of the denial—the administrative record nevertheless unquestionably supports USCIS's decision to deny Ms. Rueda's DACA request and refutes the inference Ms. Rueda asked the Court to accept: that animus drove the decision. *Hammad*, 603 F.3d at 544. In allowing the remaining claims against Federal Agency Defendants to proceed, the Court found only that, under the highly deferential motion to dismiss standard, Ms. Rueda established a plausible inference that the Government's denial of her DACA request may have been motivated by retaliation for her protest activity. *Id.* at 20-21, 22-23.

To prevail on a First Amendment claim in the context of summary judgment, Ms. Rueda must first establish a protected interest in a grant of DACA, which she cannot do, and then must show but-for causation; in other words, but for the alleged retaliation, the challenged enforcement action "would [not] have been taken." *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *see also Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945,

1952 (2018) ("even if retaliation might have been a substantial motive for the board's action, still there was no liability unless the alleged constitutional violation was a but-for cause of the employment termination").

To that end, Ms. Rueda first "bears the burden of proving that defendants had knowledge of [her] protected speech." *Denney v. Drug Enf't Admin.*, No. CIV.S06-1711LKKGGH, 2008 WL 1808289, at *5 (E.D. Cal. Apr. 22, 2008), *aff'd sub nom. Denney v. Drug Enf't Agency*, 348 F. App'x 327 (9th Cir. 2009). An inference that a defendant had knowledge of plaintiff's past protected First Amendment activity "does not rise to the level of evidence sufficient to survive summary judgment." *Karam v. City of Burbank,* 352 F.3d 1188, 1194 (9th Cir. 2003) (such an inference amounted to "speculation as to . . . improper motive").

In fact, Ms. Rueda revealed almost no details about her protest activity in making her DACA request, and there are no references to protest activity in any of USCIS's communications discussing the grounds for denying her DACA request. *See* CAR 0117-22, 0336-37, 0400-408 (emails between the BCU adjudicator, Border Patrol, and USCIS Headquarters (SCOPS)); *see also id*. at 0125-27 (Deconfliction report); 0130-34 (Risk and Fraud report); 0379-82 (CBP Report of Investigation, Rueda Transnational Criminal Organization); 0392 (RAG with HQ Service Center Operations (SCOPS) response); 0393-94 (RAG attachment - EARM report of Border Patrol Narrative).

In her more than 80-page DACA request, Ms. Rueda made only one brief statement that can even be construed as relating to protest activity. In a sworn declaration, she explained that, when she learned her mother was being taken into immigration custody, she "[i]mmediately . . . contacted groups and lawyers and publicly started calling

for Border Patrol to release my mom." *Id*. at 0079.[6] In contrast, the FAC contains a heading entitled: "Ms. Rueda's Background, Community Leadership, and Political Advocacy" and includes more than two pages of detailed descriptions, including links to news articles describing her protest efforts to release her mother from immigration custody. *See* FAC at 22-24. Thus, Ms. Rueda painted a robust picture of her protest activity for the Court that she did not present to USCIS and she fails to show that USCIS was aware of the nature or extent of her protest activity. *Karam,* 352 F.3d at 1194; *see also Keyser v. Sacramento City Unified Sch. Dist.,* 265 F.3d 741, 751 (9th Cir. 2001) (affirming summary judgment on defendant's declaration of lack of knowledge of a plaintiff's protected speech). Conversely, the Administrative Record shows only discussion of her family's criminal organization. DACA SOP at 83 ("[T]he requestor's entire offense history can be considered along with other facts to determine whether, under the totality of the circumstances, he/she warrants an exercise of prosecutorial discretion."). Thus, the Administrative Record refutes Ms. Rueda's unsupported assertion that her DACA request was denied for impermissible reasons.

Where Ms. Rueda cannot show that USCIS was even aware of the specific protest activity she believes formed the basis of her DACA denial, she certainly cannot establish that activity as the but-for cause of the denial. *Moore,* 547 U.S. at 260. To the extent the Court finds it has jurisdiction to review the agency's exercise of discretion beyond Ms. Rueda's failed retaliation claim, the Administrative Record supports the agency's determination not to grant her deferred action. *Family Inc*., 469 F.3d at 1315 (reviewing

---

[6] Ms. Rueda's only other reference to her social activism is a statement that "In 2012 and in 2015, I was arrested for participating in civil disobediences in Los Angeles. They were both part of nonviolent peaceful protests. The cases against me were dismissed. In one of them, charges were not even filed." *Id*. However, this statement does not indicate the nature or targets of the protests.

16

2:18-cv-9276- DMG-PLA

court "will not disturb the agency's findings under this deferential standard unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result.").

### B.   The Court's inferential findings of animus are refuted by the Administrative Record.

In allowing Ms. Rueda's claims to proceed past the Rule 12 stage, the Court relied on two inferential findings. The first is the timing of Ms. Rueda's DACA denial coming soon after her protest activity on behalf of her mother. Order at 20. The second finding was the Court's concern with a redacted email that elicited a response from the BCU adjudicator that she would "rewrite [her] analysis." *Id*. Neither concern withstands closer scrutiny.

The Court's reliance on *Coszaltzer v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) for the proposition that the timing of an adverse action can support an inference of retaliation is misplaced here. The *Coszaltzer* Court discussed ways in which the timing of an action may reflect the motivation of the alleged retaliator, such as when a retaliator "may wait until the victim is especially vulnerable or until an especially hurtful action becomes possible. Or they may wait until they think the lapse of time disguises their true motivation." *Coszaltzer*, 320 F.3d at 977. Here, the Court noted that USCIS's denial of Ms. Rueda's DACA request came five months after she protested for her mother's release from detention and was herself arrested. Order at 20 ("*Under these circumstances*, the Court concludes that Plaintiff has sufficiently alleged that her application was denied on account of retaliatory animus.") (emphasis added). Critically, however, the Court failed to factor in when Ms. Rueda *submitted* her DACA request, which was approximately one month after her arrest. *See id*. at 4-5; CAR 0101-07 (Form I-821D, DACA Request).

Thus, the denial of Ms. Rueda's DACA request is near in time to her protest activity only because Ms. Rueda made it so. Defendants could not have denied her DACA request before she submitted it, nor did USCIS unduly delay adjudication of the request. The Court was mistaken to grant any significance to the timing of events and has no grounds to rely on it now. *Coszaltzer*, 320 F.3d at 978 ("[T]he length of time,

17

considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment.").

The Court's only other ground for finding an inference of discriminatory animus was the unknown content of a redacted email that it determined "supports the plausible inference that USCIS's explanation for the denial of Plaintiff's DACA . . . was a pretext." *Id*. The redaction has since been removed in the Administrative Record and reveals an innocuous exchange related only to protecting law enforcement sensitive language from possible future public disclosure. *See* CAR 0121-22 (Email exchange between BCU adjudicator and Supervisory Border Patrol Agent ("BP Supervisor")).

The full exchange is as follows:

**BCU adjudicator, Thursday, August 17, 2017:**

I'm going to elevate this case to HQ and recommend a denial. I'd like to know whether you want to keep the report you sent to me from being FOIA-able. If you do then I won't send it as part of the document to HQ. It's more detailed than what is in EARM, but I think we can do without it if that's your concern. I will just word my case analysis a bit differently. Please let me know.

**BP Supervisor,  Monday, August 21, 2017
[previously redacted response]:**

The agents would prefer it not be FOIA-able as there is information contained in it that the individuals being investigated are not aware that we know.

**BCU adjudicator, Monday, August 21, 2017:**

I will rewrite my analysis then. [. . .]

CAR 0121-22. The unredacted email exchange shows that the acceptance of any inference of pretext or animus from the email exchange is wholly unwarranted.

Lastly, while the court found that Federal Agency Defendants' inability to identify cases of DACA denial "where an applicant appeared to satisfy the objective DACA criteria" supports Ms. Rueda's claims of retaliation, Order at 21 (citing the DACA Rescission Memo at n.1), the Court also identified two rebuttals to this claim. In dismissing Count One, the Court rejected the Rescission Memo footnote on the basis that

18

"nothing in the record indicates that USCIS consistently granted DACA status to certain aliens who satisfied the program's objective criteria, even though doing so in those cases was otherwise 'not consistent with the Department of Homeland Security's enforcement priorities.'" *Id*. at 16, citing DACA SOP at 106.[7] The Court also noted that "the reason DHS could not point to specific instances in which DACA applicants met the program criteria but were denied as a matter of discretion was that DHS did not have the ability to track and sort the reasons for DACA denials." *Id*. at 16 n.16 (quoting *Texas v. United States*, 809 F.3d 134, 211 (5th Cir. 2015) (King, J., dissenting)). Thus, the Court's reasoning at page 16 of its Order actually undermines the concern the Court identified at page 21 of its Order.

### C.   Ms. Rueda's Equal Protection Claim is entirely unsupported by fact or law.

The Court also should find that Ms. Rueda's thread-bare Equal Protection claim fails under the more rigorous standard of a summary judgment motion, particularly where the Administrative Record supports the DACA denial and refutes the thin inferences of animus Ms. Rueda raised. Ms. Rueda includes a throwaway claim that she has "been treated differently from others similarly situated," FAC at ¶ 143, but fails to provide any factual or legal support for such a claim. Far from establishing a "colorable constitutional claim," *Webster v. Doe*, 486 U.S. 592, 601 (1988), such wholly unsupported and conclusory assertions of a constitutional violation must fail. *Gilbert v. Finn*, 489 F. App'x 184 (9th Cir. 2012) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (citing *Nelson v. Pima Cmty. Coll.,* 83 F.3d 1075, 1081–82 (9th Cir. 1996)); *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.,*

---

[7] "Put differently, the Rescission Memo does not establish the existence of a 'settled course of adjudication' by which USCIS abandoned its explicit authority to determine 'on a case by case basis' whether a particular alien warrants the favorable exercise of prosecutorial discretion." *Id*. (citing the DACA Memo at 2).

637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").

Furthermore, aside from the complete lack of any factual support for such a claim, the claim is legally unsupported as well. The Court's previous finding that Ms. Rueda's equal protection claim automatically subjected USCIS's DACA denial decision to strict scrutiny is wrong as a matter of law. *Id*. at 22-23 (citing *Denney v. Drug Enf't Admin.*, 508 F. Supp. 2d 815, 835 (E.D. Cal. 2007)). In the first place, the Court failed to apply the Ninth Circuit standard for establishing an equal protection claim. To establish such a claim, a plaintiff must first "show that the statute in question results in members of a certain group being treated differently from other persons based on membership in that group." *Denney,* 508 F. Supp. 2d 815, 835 (citing *Sagana v. Tenorio,* 384 F.3d 731, 740 (9th Cir. 2004)) (internal quotations omitted). Ms. Rueda made no argument at all, much less a showing, of what group she belongs to or how other members of that group similarly situated to her are treated differently than her. In fact, the entirety of Ms. Rueda's equal protection claim is that "Defendants' denial of Ms. Rueda's DACA application also violated the Fifth Amendment's guarantee of equal protection under the law because she has irrationally or discriminately been treated differently from others similarly situated." FAC at ¶ 143.[8] The Court's determination that such a conclusory

---

[8] When pressed on this point in Federal Agency Defendants' motion to dismiss, ECF No. 39 at 24, Ms. Rueda identified her group of similarly situated individuals as "those who meet the DACA program's objective criteria." ECF No. 41 at 8. Such a vague categorization is meaningless, where it fails to account for the distinguishing factor that led to the denial of Ms. Rueda's claim: that BP agents found 33 pounds of cocaine and $630,000 in cash in her home and arrested members of her family for leading a criminal organization. CAR at 0126, 0380; *see Talib v. Guerrero*, No. CV1503825JAKDFM, 2019 WL 7039623, at *12 (C.D. Cal. Oct. 17, 2019) ("Talib presents no evidence that similarly situated individuals were permitted to willfully resist, delay, or obstruct a peace officer without arrest."), *report and recommendation adopted,* No. CV1503825JAKDFM, 2019 WL 7037761 (C.D. Cal. Dec. 20, 2019).

2:18-cv-9276- DMG-PLA

allegation can survive the motion to dismiss stage is confounding; but to affirmatively burden the Government with a strict scrutiny analysis of an otherwise unreviewable exercise of discretion on such a flimsy pleading is unsupported by the law.

To support finding a plausible equal protection violation, the Court again relied on the mistaken conclusion that an individual with no lawful status has a constitutional right to family unity, and trivialized USCIS's determination that Ms. Rueda likely benefitted financially from her family's criminal drug organization. Order at 22 ("USCIS denied Plaintiff's DACA application because of Plaintiff's decision to live with her family"). The Court then pivoted to its earlier reasoning that Ms. Rueda "has sufficiently alleged that USCIS officials denied her DACA request on account of her advocacy for immigrants' rights." *Id*.

Like Ms. Rueda, the Court did not identify what suspect class or fundamental right this implicated, nor why it was USCIS's burden to demonstrate how its unspecified "conduct" was "suitably tailored to serve a compelling state interest," *id*. at 22, before Ms. Rueda even identified the nebulous group of "others" that she claims to be "similarly situated" to, much less presented any facts in support of her claim. *Chavez v. Hagel*, No. CV 16-00685 HG/KJM, 2017 WL 937144, at *6 (D. Haw. Mar. 9, 2017) (dismissing equal protection claim where plaintiff "does not allege that he is part of a protected class or set forth facts showing that he was treated differently than similarly situated service members who were separated or discharged from the military.") (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Nor has Ms. Rueda provided any evidence or argument to show that she was "intentionally treated differently" (again, differently than whom?) "without a rational relationship to a legitimate [governmental] purpose." *Id*. ("While Chavez's allegations . . . suggests a due process claim, he fails to allege additional facts to nudge this claim from merely *possible* to *plausible*. . . . Chavez provides no context to these bare allegations.") (court's emphasis).

21

2:18-cv-9276- DMG-PLA

Thus, Ms. Rueda's scant Equal Protection claim remains insufficient to place any burden on Federal Agency Defendants to respond. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Where the Court has already determined that "nothing in the record indicates that USCIS consistently granted DACA status to certain aliens who satisfied the program's objective criteria," Order at 16, where the Court's only finding of a protected interest in preventing removal is entirely inapplicable here, and where the Administrative Record supports the denial decision and refutes the thin inferences of animus, the Court should grant Defendants summary judgment.

## IV.    The Court lacks jurisdiction over Plaintiff's Count 8 – Declaratory Judgment.

In dismissing portions of the FAC against Federal Agency Defendants, the Court dismissed Count Eight "to the extent it is derivative of the other claims against those Defendants that have been dismissed by this Order," Order at 31, presumably leaving in place claims under this count for "a declaration that [Federal Agency] Defendants have violated the Fifth Amendment [equal protection clause]; . . . and the First Amendment." FAC at 48.

Defendants renew their argument that the Court lacks jurisdiction over Count Eight, as the Declaratory Judgment Act is purely procedural and does not expand the Court's jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671 (1950) ("[T]he operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.") (internal citation omitted).

It is also "well-established that the Declaratory Judgment Act 'does not create an independent cause of action.'" *ISE Entm't Corp. v. Longarzo*, No. CV 17-9132-MWF(JCX), 2018 WL 1569803, at *10 (C.D. Cal. Feb. 2, 2018), *vacated on other grounds*, 658 F. App'x 846, 847 (9th Cir. 2016) (internal citations omitted). Nor does the relief Ms. Rueda seeks under Count Eight: "a declaration that Defendants have violated" the First and Fifth Amendments serve any purpose if the Court finds for Ms. Rueda on

2:18-cv-9276- DMG-PLA

the substantive claims under Count Two. *Lai v. Quality Loan Service Corp.*, No. CV 10–2308 PSG (PLAx), 2010 WL 3419179, at *3 (C.D. Cal. Aug. 26, 2010) (the purpose of a declaratory relief claim "is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues") (internal quotation marks and citations omitted).

## CONCLUSION

In sum, Ms. Rueda has failed to establish jurisdiction for this Court to consider her challenge to USCIS's discretionary denial of her DACA request. Congress expressly precluded such jurisdiction through 8 U.S.C. § 1252(g). If the Court concludes it has jurisdiction to adjudicate Ms. Rueda's claim, the Court should find that, based on the evidence in the Administrative Record, Ms. Rueda cannot establish animus as the but-for causation of her DACA denial, either as retaliation for her political activism or in violation of a fundamental right to live with her family. For these reasons, the Court should grant Federal Agency Defendants summary judgment on the remaining claims of the FAC.

2:18-cv-9276- DMG-PLA

1   DATED: April 27, 2020                Respectfully Submitted,

2   JOSEPH H. HUNT                       */s/ James J. Walker*

3   Assistant Attorney General           JAMES J. WALKER
                                         Trial Attorney
4   WILLIAM C. PEACHEY                    U.S. Department of Justice
                                         Civil Division
5   Director                             Office of Immigration Litigation
                                         District Court Section
6   JEFFREY S. ROBINS                    P.O. Box 868, Ben Franklin Station
7   Deputy Director                      Washington, D.C. 20044
                                         Phone: (202) 532-4468
8                                        Fax: (202) 305-7000
9                                        Email: james.walker3@usdoj.gov
10
11                                       *Counsel for Federal Agency Defendants*
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                              24

                                         2:18-cv-9276- DMG-PLA