JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 616-1246
Fax: (202) 305-7000
Email: jeffrey.robins@usdoj.gov
JAMES J. WALKER
Trial Attorney
*Counsel for Federal Agency Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA SARAHI RUEDA VIDAL, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Case No. 2:18-cv-9276- DMG-PLA <br><br> **FEDERAL AGENCY DEFENDANTS' [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** <br><br> **Judge**: Hon. Dolly M. Gee <br> **Courtroom**: 8C <br> **Hearing**: Friday, June 12, 2020 <br> **Time**: 9:30am |

2:18-cv-9276- DMG-PLA

**PROPOSED STATEMENT OF UNCONTROVERTED FACTS**
**AND CONCLUSIONS OF LAW**

Federal Agency Defendants provide this statement of facts as taken from the Administrative Record, but aver that a statement of proposed uncontroverted facts is inconsistent with the Court's role in deciding a summary judgment motion on an agency action. As explained in Federal Agency Defendants' motion briefing, in the context of a challenge to an agency action, summary judgment is a question of law limited to review of the administrative record, and there are no facts in dispute. *Occidental Engineering Co. v. INS,* 753 F.2d 766, 769 (9th Cir. 1985). Instead, the agency is the finder-of-fact and the district court functions as an appellate body, deciding only whether, as a matter of law, the agency was permitted to make the decision it made. *Id.*; *Park Hill Sch. Dist. v. Dass*, 655 F.3d 762, 768 (8th Cir. 2011); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 443–44 (7th Cir. 1990) (citing *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44 (1985)). The following statement of facts is drawn from the Certified Administrative Record ("CAR"), compiled by Federal Agency Defendants and provided to Ms. Rueda on November 1, 2019, which she accepted without dispute.[1]

| | |
|---|---|
| 1.    Ms. Rueda was born in Mexico and brought to the United States at the age of six. | CAR 0092 (Declaration of Claudia Sarahi Rueda Vidal in support of DACA request, June 9, 2017) [CAR 92, 0079-80]; *id*. at 0325 (Notice to Appear, May 18, 2017). |

---

[1] *See* ECF No. 57, Joint Report pursuant to Federal Rule of Civil Procedure 26(F) and Local Rule 26-1 (filed Nov. 1, 2019), at 10 (Parties jointly proposed January 3, 2020 as the deadline for the Parties to attempt to resolve any disputes about the administrative record among themselves; and January 27, 2020, as the deadline for Plaintiff to file any motion to complete the administrative record, or to seek discovery outside the administrative record).

Case 2:18-cv-09276-DMG-PLA   Document 69-1   Filed 04/27/20   Page 3 of 9   Page ID #:1561

| | |
|---|---|
| 2.      Ms. Rueda lived with, and was financially dependent on, her parents at the time of the raid on her home and her mother's arrest on April 24, 2017. | CAR 0079, 0092. |
| 3.      Ms. Rueda was detained by Border Patrol ("BP") officers on May 18, 2017. | CAR 0394 (RAG attachment - EARM report of Border Patrol Narrative). |
| 4.      The BP agents issued Ms. Rueda a Notice to Appear ("NTA") on May 18, 2017, indicating the Department of Homeland Security's ("DHS") intention to begin removal proceedings. | CAR 325-26, *see supra*, Fact #2. |
| 5.      Ms. Rueda was released from detention on June 9, 2017. | CAR 0079, *see supra*, Fact #1. |
| 6.      Ms. Rueda filed a DACA request on June 19, 2017. | CAR 0021-108 (DACA Request). |
| 7.      In a sworn declaration in support of her DACA request, Ms. Rueda stated that she "learned my mom was being taken into immigration custody. . . . Immediately I contacted groups and lawyers and publicly started calling for Border Patrol to release my mom." | CAR 0079, *see supra*, Fact #1. |

2

2:18-cv-9276- DMG-PLA

| | | |
|---|---|---|
| 8. | Ms. Rueda also stated in her declaration: "In 2012 and in 2015, I was arrested for participating in civil disobediences in Los Angeles. They were both part of nonviolent peaceful protests. The cases against me were dismissed. In one of them, charges were not even filed." | CAR 0079, *see supra*, Fact #1; *see also id*. at 0107 (DACA Request) (restating the same), 0153 (Memorandum of the Immigration Judge, July 28, 2017), 179 (restating the same). |
| 9. | Between June 29, 2017, and October 19, 2017, numerous email communications were exchanged between supervisory Border Patrol agents, the USCIS California Service Center ("CSC") Background Check Unit ("BCU")—responsible for adjudicating Ms. Rueda's DACA request, and USCIS HQ Service Center Operations ("SCOPS")—responsible for consultations with the BCU on certain DACA decisions.[2] *See*. | CAR 0117-22, 0336-37, 0400-408 (email correspondence). |
| 10. | The substance of these communications focus on Ms. Rueda's suspected affiliation with her parents' Transnational Criminal Organization ("TCO"), and there is no mention of protest activity. | CAR 0117-22, 0336-37, 0400-408, *see supra*, Fact #9. |

---

[2] As in this case, "In instances where an individual is unable to establish he or she warrants a favorable exercise of prosecutorial discretion under this process, and no other checkbox applies except 'You have not established that you warrant a favorable exercise of prosecutorial discretion,' supervisors must refer the case to HQSCOPS through the normal chain of command." DACA SOP at 106.

| | |
|---|---|
| 11.     On August 17, 2017, the BCU adjudicator submitted a Request for Adjudicative Guidance ("RAG") to SCOPS, explaining the facts of the TCO. | CAR 0123-24 (RAG, August 17, 2017). |
| 12.     SCOPS concurred with the adjudicator that Ms. Rueda's DACA request warranted a discretionary denial based on her suspected affiliation with the TCO. | CAR 0392 (RAG with HQ Service Center Operations (SCOPS) response). |
| 13.     The SCOPS analysis stated: "Although there is no evidence the requestor has ever been directly involved in her parents' TCO operation, she has lived with them into adulthood. CBP encountered her at two different stash houses targeted in their investigation. CBP classifies her as an associate to the Rueda TCO by virtue of familial relation in [redacted]." | CAR 0392, *see supra*, Fact #12. |
| 14.     On October 4, 2017, the BCU adjudicator conducted a routine Deconfliction check as part of the background check process. | CAR 0125-27 (Deconfliction Report and fingerprint check information, October 4, 2017); *see* DACA SOP at 37. |
| 15.     The Deconfliction report stated: "According to Dwain Holmes, Supervisory Border Patrol Agent of San Diego Sector Prosecution, the subject's parents head a Transnational Criminal Organization (TCO) | CAR 0126, *see supra*, Fact #14. |

| | |
|---|---|
| smuggling narcotics across the border with Mexico." | |
| 16.     The report also stated that BP agents had arrested Ms. Rueda's parents at a home in Los Angeles, where they also seized $630,000 and 15 pounds of cocaine.[3] | CAR 0126, *see supra*, Fact #14. |
| 17.     The Deconfliction report also noted that Ms. Rueda "arrived at the scene during the arrest" and that she had listed the address of that home as her residence from January 2, 2001 to April 1, 2017 on her DACA request. | CAR 0126, *see supra*, Fact #14. |
| 18.     Ms. Rueda's sworn statement stated she was still living at the address on the day of the raid, April 24, 2017. | CAR 0092, *see supra*, Fact #1; *see also id*. at 0181 (Respondent Rueda's Brief and Exhibit List in Support of Custody Redetermination, June 7, 2017) |
| 19.     The Deconfliction report also stated that, on May 18, 2017, BP agents "traveled to Los Angeles, California to search for specific targets associated with the Rueda TCO" and encountered Ms. Rueda at a second house affiliated with the TCO. | CAR 0126, *see supra*, Fact #14. |

---

[3] A Border Patrol Narrative report actually describes seizing "15 kilogram-sized packages" of cocaine, equivalent to approximately 33 pounds. *Id*. at 0393. A second Border Patrol Report of Investigation states "33 pounds of cocaine" were seized. *Id*. at 380.

| | |
|---|---|
| 20.  Lastly, the report stated that "Affiliation with drug trafficking organization is an EPS [Egregious Public Safety] concern under PM 602-0050 (11/07/2011) and will affect DACA eligibility."[4] | CAR 0126, *see supra*, Fact #14. |
| 21.  However, the report concluded that an EPS referral to ICE was not necessary since Ms. Rueda was already in removal proceedings. | CAR 0126, *see supra*, Fact #14. |
| 22.  USCIS denied Ms. Rueda's DACA request on October 19, 2017, stating "You have not established that you warrant a favorable exercise of prosecutorial discretion." | CAR 0114-15, DACA Denial Notice, October 19, 2017. |

## Conclusions of Law

1. 5 U.S.C. § 701(a)(2) bars review of the decision to deny a DACA request under the APA. ECF No. 48, Order at 12 n.11, 15-16.

2. No due process right to a DACA grant exists. *Id*. at 21-22, referring back to DACA SOP at 106, DACA Memo at 2; *see also id*. at 6 (citing Form I-821D Instructions at 11); *id*. at 15 n.1 (citing DACA Memo at 3).

---

[4] The DACA SOP provides guidance for handling EPS cases pursuant to the USCIS Memorandum: Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens, ("2011 NTA Memo"), dated Nov. 7, 2011. *See* DACA SOP at 92-93 and Appendix B.

3. A DACA request "gives rise to no 'substantive interest protected by the Due Process Clause.'" *Id.* at 21 (citing *Mendez-Garcia v. Lynch*, 840 F.3d 655, 669 (9th Cir. 2016)).

4. Thus, a DACA request does not give rise to a "substantial interest in avoiding deportation." *Id.*; *Mendez-Garcia*, 840 F.3d at 669.

5. District courts lack jurisdiction to hear a challenge that involves the threat of removal. *See* Order at 17 (citing 8 U.S.C. § 1252(b)(9); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016)).

6. Aliens have no "right to family unity" to reside in the United States "simply because other members of their family are citizens or lawful permanent residents." *De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009).

7. "Individual 'no deferred action' decisions . . . fall exactly within Section 1252(g) as interpreted by the Court in *AADC*." *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.,* 908 F.3d 476 (9th Cir. 2018).

8. "[N]o court has held that a parent possesses a constitutionally protected liberty interest in maintaining a relationship with his adult child free from indirect government interference." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 26 (D.D.C. 2010).

9. To prevail on a First Amendment claim in the context of summary judgment, a plaintiff must first establish a protected interest and then must show but-for causation. *Hartman v. Moore*, 547 U.S. 250, 260 (2006).

10. An inference that a defendant had knowledge of plaintiff's past protected First Amendment activity "does not rise to the level of evidence sufficient to survive summary judgment." *Karam v. City of Burbank,* 352 F.3d 1188, 1194 (9th Cir. 2003).

11. The timing of an adverse action, "considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment." *Coszaltzer v. City of Salem*, 320 F.3d 968 (9th Cir. 2003).

12. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Gilbert v. Finn*, 489 F. App'x 184 (9th Cir. 2012).

13. A reviewing court "will not disturb the agency's findings under [the APA's] deferential standard unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Family Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006).

DATED: April 28, 2020

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

JEFFREY S. ROBINS
Deputy Director

Respectfully Submitted,

*/s/ James J. Walker*
JAMES J. WALKER
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Counsel for Federal Agency Defendants*