ARNOLD & PORTER KAYE SCHOLER LLP
John C. Ulin (SBN 165524)
john.ulin@arnoldporter.com
Oscar Ramallo (SBN 241487)
oscar.ramallo@arnoldporter.com
Vanessa Adriance (SBN 247464)
vanessa.adriance@arnoldporter.com

777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
T: (213) 243-4000
F: (213) 243-4199

*Attorneys for Plaintiff*
Claudia Sarahi Rueda Vidal

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| CLAUDIA SARAHI RUEDA VIDAL, | No. 2:18-cv-09276-DMG (PLAx) |
|---|---|
| Plaintiff, | **PLAINTIFF CLAUDIA RUEDA'S OPPOSITION TO AGENCY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY; et al., | |
| Defendants. | Judge:  Hon. Dolly M. Gee |
| | Courtroom:  8C |
| | Hearing:  June 12, 2020 |
| | Time:  2:00 p.m. |

US 167567697v1

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................4

I.   Section 1252(g) Does Not Bar Review................................................4

    A.   Rueda does not challenge any of the discrete actions subject to Section 1252(g). ........................................................................4

    B.   Defendants' DACA denial was outrageous. .................................6

    C.   The Court may establish the legal backdrop for Defendants' decision-making. ....................................................................10

II.  Defendants Do Not Have Discretion To Violate The Constitution.....................10

III. Defendants Are Not Entitled To Summary Judgment On Rueda's First Amendment Claim. .........................................................................11

    A.   Defendants' portrayal of Rueda as a criminal is contrary to the administrative record........................................................12

    B.   Rueda presented unrebutted evidence establishing Defendants' knowledge of her First Amendment activity................................12

    C.   Defendants have failed to rebut the inference of animus............................15

IV.  Defendants Are Not Entitled To Judgment On Rueda's Equal Protection Claim. ....................................................................................19

V.   The Court Has Jurisdiction To Grant Declaratory Relief...................22

CONCLUSION..................................................................................23

i

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Al-Aulaqi v. Obama*,
  727 F. Supp. 2d 1 (D.D.C. 2010)....................................................................... 8

*Allen v. Iranon*,
  283 F.3d 1070 (9th Cir. 2002) ....................................................................... 13

*Allen v. Milas*,
  896 F.3d 1094 (9th Cir. 2018) ....................................................................... 10

*Anderson v. Liberty, Inc.*,
  477 U.S. 242 (1986)....................................................................................... 19

*Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land
  Mgmt.*,
  273 F.3d 1229 (9th Cir. 2001) .................................................................. 1, 12

*Bella Lewitzky Dance Found. v. Frohnmayer*,
  754 F. Supp. 774 (C.D. Cal. 1991) ................................................................. 9

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  377 F. Supp. 3d 1093 (S.D. Cal. 2019) ........................................................ 19

*Botezatu v. I.N.S.*,
  195 F.3d 311 (7th Cir. 1999) .......................................................................... 5

*Coszalter v. City of Salem*,
  320 F.3d 968 (9th Cir. 2003) .................................................................. 15, 16

*De Mercado v. Mukasey*,
  566 F.3d 810 (9th Cir. 2009) ..................................................................... 8, 20

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019)................................................................................... 11

*Fisher v. Univ. of Texas at Austin*,
  570 U.S. 297 (2013)....................................................................................... 21

*Green v. City of Tucson*,
  340 F.3d 891 (9th Cir. 2003) ......................................................................... 19

*Hartman v. Moore*,
  547 U.S. 250 (2006)..................................................................................9, 11

*In Re: Javier Luis Medrano-Inocence*,
  2017 WL 1508874 (DCBABR Mar. 27, 2017) ........................................5

*Inland Empire-Immigrant Youth Collective v. Nielsen*,
  No. EDCV 17-2048-PSG,
  2018 WL 4998230 (C.D. Cal. Feb. 26, 2018) ..........................................6

*Karam v. City of Burbank*,
  352 F.3d 1188 (9th Cir. 2003) .................................................................13

*Karl v. City of Mountlake Terrace*,
  678 F.3d 1062 (9th Cir. 2012) .................................................................16

*Keyser v. Sacramento City Unified Sch. Dist.*,
  265 F.3d 741 (9th Cir. 2001) ...................................................................13

*King v. Smith*,
  392 U.S. 309 (1968)..................................................................................21

*Kipps v. Caillier*,
  205 F.3d 203 (5th Cir. 2000) .....................................................................8

*Lai v. Quality Loan Service Corp.*,
  No. CV-10-2308 PSG,
  2010 WL 3419179 (C.D. Cal. Aug. 26, 2010) ........................................22

*Lozman v. City of Riviera Beach*,
  138 S. Ct. 1945 (2018)...............................................................................9

*McGraw-Edison Co. v. Preformed Line Prod. Co.*,
  362 F.2d 339 (9th Cir. 1966) ...................................................................22

*Nieves v. Bartlett*,
  139 S. Ct. 1715 (2019)..............................................................................18

*Ochoa v. Santa Clara Cty. Office of Educ.*,
  No. 16-CV-03283-HRL,
  2017 WL 2423183 (N.D. Cal. June 5, 2017)....................................13, 15, 16, 17

*Perry v. Sindermann*,
  408 U.S. 593 (1972)............................................................................*passim*

iii

*Plyler v. Doe*,
   457 U.S. 202 (1982)...................................................................................*passim*

*Ragbir v. Homan*,
   923 F.3d 53 (2d Cir. 2019) ......................................................................7

*Regents of the Univ. of California v. U.S. Dep't of Homeland Security*.
   908 F.3d 476 (9th Cir. 2018) ..................................................................5

*Reno v. AADC*,
   525 U.S. 471 (1999)...............................................................................*passim*

*Rosenbaum v. Washoe Cty.*,
   663 F.3d 1071 (9th Cir. 2011) ..............................................................19

*S. California Gas Co. v. City of Santa Ana*,
   336 F.3d 885 (9th Cir. 2003) ................................................................21

*Santos v. Lynch*, No. 1:15-CV-00979-SAB,
   2016 WL 3549366 (E.D. Cal. June 29, 2016) ........................................8

*Talib v. Guerrero*, No. CV1503825-JAK(DFM),
   2019 WL 7039623 (C.D. Cal. Oct. 17, 2019) ......................................20

*United States v. Hovsepian*,
   359 F.3d 1144 (9th Cir. 2004) ......................................................2, 4, 10

*United States v. Nelson*,
   419 F.2d 1237 (9th Cir. 1969) ..............................................................13

*Valle Del Sol Inc. v. Whiting*,
   709 F.3d 808 (9th Cir. 2013) .............................................................3, 7

*Vasquez v. Aviles*,
   639 F. App'x 898 (3d Cir. 2016) ............................................................5

*Webster v. Doe*,
   486 U.S. 592 (1988)...........................................................................2, 10

*Wong v. U.S.*,
   373 F.3d 952 (9th Cir. 2004) ..............................................................2, 4

**Statutes**

5 U.S.C. § 701(a)(2).............................................................................2, 10

RUEDA'S OPP. TO AGENCY DEFENDANTS' MSJ

US 167567697v1

8 U.S.C. § 1182(a)(9)(B)(i) ........................................................................... 5

8 U.S.C. § 1252(g) ............................................................................... *passim*

## **Other Authorities**

Fed. R. Civ. P. 57 ........................................................................................ 22

RUEDA'S OPP. TO AGENCY DEFENDANTS' MSJ

US 167567697v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Over the past eight years, Defendants have approved over 2.5 million DACA applications, fully 95% of those that entered case review.  Dkt. No. 67-4, at 44.[1] Among applicants who met all of DACA's objective criteria, the numbers are even more striking.  Exactly one such applicant has had her application denied based on the alleged misdeeds of her parents:  Plaintiff Claudia Rueda.  What distinguishes Rueda—who Defendants abducted and imprisoned for three weeks until she was ordered released without bond—from the hundreds of thousands of identically situated applicants who received DACA is that she had the temerity to lead protests against Defendants that generated public criticism of their treatment of undocumented immigrants.  In other words, Defendants punished her for exercising her free speech rights, in a transparent effort to chill immigration protests.

In their opening brief, Defendants attempt to rewrite history, describing their actions as a show of leniency because, even though Defendants denied Rueda's DACA application, they "determined not to arrest and charge Ms. Rueda with a crime."  Dkt. No. 69, at 14:1.  The argument is specious and unsupported by the record.  By their own admission, Defendants had no basis for criminal charges against Rueda.  When they denied her DACA application, Defendants expressly concluded that there was "no evidence" she committed any crime.  CAR 0124.  And Defendants based their DACA denial on a pure exercise of discretion, not on a determination that granting the application would threaten public safety.  Dkt. No. 67-4, at 28-34; CAR 0109; *see also* Dkt. No. 67-1, at 14 n.1.  Basic principles of administrative law preclude Defendants from manufacturing *post hoc* justifications for their actions, especially when they are contradicted by Defendants' own admissions in the administrative record.  *Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1236 (9th Cir. 2001).

---

[1] All citations to page numbers on the docket are to the ECF-generated page number.

Defendants' actual stated reason for denying Rueda's DACA application—that they considered her affiliated with a criminal organization "by virtue of familial relation"—fares no better.  CAR 0124.  As the Supreme Court has repeatedly held, "directing the onus of a parent's misconduct against his children does not comport with fundamental conceptions of justice."  *Plyler v. Doe*, 457 U.S. 202, 220 (1982). Defendants thus literally attempted to cover their violation of Rueda's First Amendment rights by fabricating a reason for denying her application that, if accepted, would violate her Fifth Amendment rights.  Either way their actions violated the Constitution and the Administrative Procedure Act and must be set aside.

Apparently realizing that their actions are indefensible, Defendants assert that 8 U.S.C. § 1252(g) and 5 U.S.C. § 701(a)(2) preclude this Court from reviewing their violations of Rueda's constitutional rights.  That is not the law.  Section 1252(g) only bars judicial review of decisions to commence or adjudicate removal proceedings or to execute removal orders, none of which are implicated here.  *Wong v. U.S.*, 373 F.3d 952, 963-64 (9th Cir. 2004).  Section 1252(g) does not bar review of a denial of a government benefit, such as DACA, that grants an individual a work permit and the ability to obtain a Social Security Number.  Section 1252(g) also does not bar a court from reviewing outrageous government conduct or declaring the legal backdrop that governs an exercise of discretion.  *Reno v. AADC*, 525 U.S. 471, 482 (1999); *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).  And Section 701(a)(2)— which prevents review of an action committed to agency discretion—does not bar review of constitutional claims because there is no unreviewable discretion to violate the Constitution.  *Webster v. Doe*, 486 U.S. 592, 603-04 (1988).

Nor is it relevant whether Rueda has a free-standing "constitutional interest in a grant of DACA."  Dkt. No. 69, at 18:1-2.  "[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely.  It may not deny a benefit to a person on a basis that

infringes his constitutionally protected interests ….." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

Here, Defendants denied Rueda the benefits of DACA based on either Rueda's exercise of her Fifth Amendment right to associate with her parents (if the Court believes their cover story) or her First Amendment right to protest Defendants' harsh treatment of undocumented immigrants (if the Court does not believe their cover story)—rights that this Court correctly described as "of the highest order of importance." Dkt. No. 48, at 11.  Defendants' contention that, because Rueda "has no lawful status to protect" (Dkt. No. 69, at 19:25), she also has no Constitutional interests that Defendants are bound to respect or that this Court is capable of protecting is both wrong and offensive to the United States Constitution.  *Plyler*, 457 U.S. at 210-11 (holding undocumented immigrants are "persons" protected by the Fifth Amendment); *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013) (holding First Amendment protects undocumented immigrants).

Defendants' summary judgment motion largely attacks this Court's ruling on the motion to dismiss that they are bound by the Constitution and subject to judicial oversight.  They make no serious attempt to establish that the administrative record shows that they acted within constitutional limits.  The record currently before this Court, including statistics objectively demonstrating the extraordinary nature of Defendants' denial of Rueda's DACA application (Dkt. No. 67-4, at 44), is far worse for Defendants than the more limited record that supported the Court's denial of Defendants' motion to dismiss.  Because Defendants' DACA denial is subject to judicial review under the APA and because Defendants improperly denied Rueda's DACA application based on her exercise of her constitutional rights, the Court should deny Defendants motion for summary judgment.

1

**ARGUMENT**

2

**I.      Section 1252(g) Does Not Bar Review.**

3          Defendants argue that 8 U.S.C. § 1252(g) bars review of Rueda's claims.  Dkt.

4  No. 69, at 18:1-21:4.  This argument fails for three independent reasons.  First,

5  Section 1252(g) applies only to a challenge to (1) commencement or (2) adjudication

6  of removal proceedings or (3) execution of removal orders.  8 U.S.C. § 1252(g). This

7  case concerns a challenge to the denial of DACA benefits, not any of the three actions

8  covered by the statute.

9          Second, Defendants' denial of DACA benefits simply because Rueda lived

10  with her family and/or publicly criticized the government's immigration policies is

11  sufficiently outrageous to overcome Section 1252(g).  *AADC*, 525 U.S. at 482.

12          Third, the Court has jurisdiction to resolve the parties' dispute over the legal

13  background governing Defendants' exercise of prosecutorial discretion, including

14  whether Defendants are correct in their contention that they are free to ignore the

15  Fifth and First Amendments in their dealings with Rueda.  *Hovsepian*, 359 F.3d at

16  1155 (9th Cir. 2004).

17          **A.      Rueda does not challenge any of the discrete actions subject to
                    Section 1252(g).**

18

19          The Supreme Court and Ninth Circuit have made it clear that Section 1252(g)

20  must be "narrowly construed" and "'applies only to three discrete actions[:]  to

21  *commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Wong.*, 373

22  F.3d at 963-64 (quoting *AADC*, 525 U.S. at 482 (emphasis added by Supreme

23  Court)).  Defendants dedicate page after page of their motion to Section 1252(g), but

24  fail to identify which of these three discrete actions they contend apply here.  The

25  reason is simple:  none of them do.

26          Rueda's DACA denial is not a decision to commence proceedings against her.

27  Removal proceedings were commenced against Rueda with a Notice to Appear on

28  May 18, 2017, before she even filed her DACA application on June 16, 2017.  Dkt.

RUEDA'S OPP. TO AGENCY DEFENDANTS' MSJ

US 167567697v1

No. 39-2, at 4; CAR 0023.  This lawsuit does not challenge the commencement of Rueda's removal proceedings.  Those proceedings are ongoing and can continue, regardless of the outcome of this case.

Rueda also does not challenge the adjudication of her removal case.  The Immigration Judge is not a defendant in this case.  Moreover, no adjudication has occurred.  Rueda's next immigration court date is set for May 25, 2021.  Moreover, whether or not Rueda should have been granted DACA is not an issue that could be adjudicated in immigration court.  *See In Re: Javier Luis Medrano-Inocence*, 2017 WL 1508874, at *2 (DCBABR Mar. 27, 2017) ("[W]e have no jurisdiction to grant relief under the [DACA] program.").  Similarly, there is no order of removal against Rueda whose execution could be challenged. [2]

What Rueda challenges here is the improper denial of her DACA application and its attendant benefits.  Those benefits are at most collateral to whether Rueda may be subject to an order of removal.  For instance, a DACA recipient is "eligible for work authorization" during the period of deferred action.  RJN, Ex. 1, Q.2.  Along with work authorization, the recipient may apply for a Social Security Number, opening up a world of possibilities, including opening a bank account, obtaining credit cards, starting a business, purchasing a home, and obtaining state financial aid for higher education.  RJN, Ex. 2.  A DACA recipient is also considered "lawfully present" for purposes of the inadmissibility bar in 8 U.S.C. § 1182(a)(9)(B)(i).

---

[2] The Court correctly determined in the motion to dismiss order that *Regents of the Univ. of California v. U.S. Dep't of Homeland Security*. 908 F.3d 476 (9th Cir. 2018) "did not hold that all individual deferred action decisions fall within the scope of 1252(g)." Dkt. No. 48, at 10 n. 9.  Indeed, the language from *Regents* quoted by Defendants (Dkt. No. 69, at 21 n.4) cited cases that clearly involved one of the three discrete actions covered by Section 1252(g).  *Regents*, 908 F.3d at 504 (citing *Vasquez v. Aviles*, 639 F. App'x 898, 900 (3d Cir. 2016) (no jurisdiction for claim seeking "stay of removal"); *Botezatu v. I.N.S.*, 195 F.3d 311, 313 (7th Cir. 1999) (no jurisdiction over "refusal to issue a stay of deportation")).  Rueda seeks review of denial of DACA benefits, not the commencement, adjudication, or execution of any removal order.  Rueda also does not urge the Court to hold that all "actions that occur after the initiation of removal proceedings" fall outside of Section 1252(g)'s review bar.  Dkt. 69, at 21:4:25-27.  Instead, Rueda asks the Court to follow the plain language of the statute to limit the bar to review actions "arising from" one of the three discrete actions listed in the statute.  8 U.S.C. § 1252(g).

RUEDA'S OPP. TO AGENCY DEFENDANTS' MSJ

US 167567697v1

Defendants' assertion that "denial of [Rueda's DACA] request resulted in no legal consequences [for her]" is thus baffling and wrong.  Dkt. No. 69, at 14:12-14.  Moreover, as Defendants' own policies confirm, DACA status decisions are independent from, and collateral to, removal decisions.  Indeed, a person may be eligible for DACA "whether or not an individual is already in removal proceedings or subject to a final order of removal."  Dkt. No. 67-4, at 19.

While "[e]ven a claim closely related to the initiation of removal proceedings is not barred by 1252(g), so long as it does not challenge the decision to commence proceedings itself," this is not even a close case.  *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048-PSG (SHKx), 2018 WL 4998230, at *11 (C.D. Cal. Feb. 26, 2018).  As Defendants state, Rueda "is challenging a process wholly independent of removal proceedings" and the case "is expressly not seeking to prevent her removal."  Dkt. No. 69, at 19, 25.  Indeed, Defendants go so far as to unfairly criticize the Court for "conflation of a DACA denial with the consequences of a removal order."  Dkt. No. 69, at 22:20.

When Defendants argue that Rueda's DACA denial is distinct from a removal order, they are correct.  Dkt. No 69, at 19:18-21,  22:20-21, 23:13-16.  Because this case does not involve a challenge to any of the three actions covered by Section 1252(g), the Court may exercise jurisdiction over the dispute.

### B.    Defendants' DACA denial was outrageous.

Even if Section 1252(g) applied, which it does not, Defendants' denial of Rueda's DACA application was outrageous.  It was in retaliation for exercising her free speech and petitioning rights by protesting their unjust detention of her mother.  Defendants then tried to cover up that constitutional violation with another, *i.e.*, that they denied her application because of her familial relation to her parents, who they claim to have suspected of criminal activity.  That is sufficiently outrageous conduct to permit jurisdiction, as the Court correctly held in its ruling on Defendants' motion to dismiss.  Dkt. No. 48, at 10-11 (citing *AADC*, 525 U.S. at 491-92).

Defendants rely on an out-of-context snippet from the Court's order denying the motion to dismiss to assert that Rueda's claim is based on an "interest in avoiding *deportation*."  Dkt. 69 at 11:16-17 (quoting Dkt. No. 48, at 11 (quoting *Ragbir v. Homan*, 923 F.3d 53, 72 (2d Cir. 2019))) (emphasis added by Defendants).  In that passage, the Court was quoting *Ragbir*, which involved a challenge to deportation.  In discussing the facts of this case, the Court repeatedly stated "the denial of Plaintiff's DACA request" and the "alleged circumstances of USCIS's denial of Plaintiff's DACA application"–not deportation–were "sufficiently outrageous" to confer jurisdiction.  Dkt. No. 48, at 11.

Moreover, *Ragbir* did not hold, as Defendants suggest, that those without "lawful status" cannot have a "protected interest" under the Constitution.  Dkt. No. 69 at 19:23.  The entire premise of *AADC*'s discussion of the "outrageous" conduct exception is that it applies even "[w]hen an alien's continuing presence in this country is in violation of the immigration laws."  *AADC*, 525 U.S. at 491.  *Ragbir* held that the plaintiff's former lawful permanent resident status and stays of removal meant the "Government's interest in deporting him [was] lower than in the case of an alien whose presence is illegal."  *Ragbir*, 923 F.3d at 72.  It does not follow from that observation that undocumented immigrants have no protected interests under the Constitution.  The exact opposite is true.  *Plyler*, 457 U.S. at 210  ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *id.* at 211-12 (holding "equal protection guarantee" reaches "an identical class of persons" as the due process guarantee); *Valle Del Sol*, 709 F.3d at 828 (affirming injunction against speech restriction "motivated by a desire to eliminate the livelihoods of undocumented immigrants").[3]

---

[3] As an alternative to the "outrageous" exception under *AADC*, the Second Circuit also found jurisdiction based on the Ragbir's filing of a habeas petition and the Suspension Clause.  *Ragbir*, 923 F.3d at 73.  *Ragbir* did not, as Defendants' motion implies, rely on the presence of a habeas petition in its discussion of the "outrageous" exception. Dkt. N. 69, at 20:9-13.  Unlike Ragbir who was seeking to enjoin the

(Footnote Cont'd on Following Page)

7

Defendants' reliance on dictum in *De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009) noting that appellants in that case had not cited authority "that the Constitution provides them with a fundamental right to reside in the United States simply because other members of their family are citizens or lawful permanent residents" is equally unavailing.  Dkt. No. 69, at 20:17-19.  Rueda has never claimed she has a right to live in the United States simply because other members of her family have that right.[4]

What Rueda challenges is Defendants' denial of a benefit—DACA—based on her Fifth Amendment right to associate with her family and/or her exercise of her free speech and petitioning rights.  Just as it was immaterial that the children in *Plyler* had no "right" to education or the plaintiff in *Kipps* had no "right" to an at-will football coaching job, it is immaterial whether or not Rueda had a free-standing right to DACA.  *Plyler*, 457 U.S. at 221; *Kipps v. Caillier*, 205 F.3d 203, 206 (5th Cir. 2000); *see also Perry*, 408 U.S. at 587 (holding government may not deny discretionary benefit "on a basis that infringes [a person's] constitutionally protected interest").

Defendants rely on *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 8 (D.D.C. 2010) to argue that adult children have no fundamental liberty interest in their relationship with their parents.  But that case is squarely at odds with extensive law in the Ninth Circuit extending the right to a relationship with parents to adult children.  *See* Dkt. No. 67-1, at 15:15-16:7 (citing authority).  Moreover, unlike *Al-Aulaqi*, the record in this case reveals that Defendants expressly denied Rueda DACA "by virtue of familial relation" with her parents, without any evidence of wrongdoing on her part.  CAR 0124.  The plaintiff in *Al-Aulaqi*, by contrast, did not allege that the government took any actions based on his familial relations.  *Al-Aulaqi*, 727 F. Supp. 2d at 8.

---

imminent execution of a removal order, Rueda is not seeking enjoin a removal order—as no such order exists— and therefore has no need to file a habeas petition.

[4] *Santos v. Lynch*, No. 1:15-CV-00979-SAB, 2016 WL 3549366, at *3 (E.D. Cal. June 29, 2016), is similarly distinguishable.  *Id.* (upholding denial of visa to inadmissible immigrant).

RUEDA'S OPP. TO AGENCY DEFENDANTS' MSJ

US 167567697v1

1    Defendants' motion does not explain in the jurisdictional argument why they

2    believe Rueda has no protected First Amendment interest, but Defendants claim in

3    the merits section that Rueda may assert a First Amendment claim only if she can

4    "establish a protected interest in a grant of DACA."  Dkt. No. 69, at 23:24-25.  The

5    cases they cite—*Hartman v. Moore*, 547 U.S. 250, 260 (2006); *Lozman v. City of*

6    *Riviera Beach*, 138 S. Ct. 1945, 1952 (2018)—do not even remotely support that

7    contention.  Once again, the law is exactly the opposite.  The government may not

8    withhold a benefit in a manner that chills speech, regardless of whether the person

9    seeking the benefit has any "right" to it.  *Bella Lewitzky Dance Found. v.*

10   *Frohnmayer*, 754 F. Supp. 774, 785 (C.D. Cal. 1991) (while "Plaintiffs cannot and do

11   not claim any 'right' to an NEA grant … the government may not place restrictions

12   on disbursement of those grants that … cause a chilling effect in violation of the First

13   Amendment").[5]

14   Furthermore, as the Court noted in its motion to dismiss order, "Defendants do

15   not argue that any of the 'national-security' or 'foreign-policy concerns' animating

16   *AADC* are implicated by the denial of Plaintiff's DACA request."  Dkt. No. 48, at 11.

17   Defendants still do not argue otherwise in their summary judgment motion, and the

18   full administrative record confirms there are no such concerns implicated in this case.

19   CAR 0109, 0124.  Thus, on the full record now before the Court, the Court's

20   conclusion that "the alleged circumstances of USCIS's denial of Plaintiff's DACA

21   application are sufficiently outrageous such that Section 1252(g) may be construed in

22   a manner that does not deprive this Court of jurisdiction" remains correct today.  Dkt.

23   No. 48, at 11.

24

25

26   [5] *AADC's* holding (cited by Defendants at Dkt. No. 69, at 22 n.5) that the

     "Government does not offend the Constitution" by selecting affiliates of terrorists

27   groups for enforcement is not applicable here.  *AADC*, 525 U.S. at 491-92.  Rueda is

     not alleged to be a member of a terrorist group, and she does not challenge a

28   deportation order.  Rueda alleges Defendants retaliated against her because of her

     peaceful speech and petitioning, not because she is an affiliate of a terrorist group.

RUEDA'S OPP. TO AGENCY DEFENDANTS' MSJ

US 167567697v1

**C.    The Court may establish the legal backdrop for Defendants' decision-making.**

In addition, the Court has jurisdiction under *Hovsepian*, 359 F.3d at 1155. *Hovsepian* permits a court to provide "a description of the relevant law [that] forms the backdrop against which the Attorney General later will exercise discretionary authority." *Id.*  That rule applies here because Defendants incorrectly believe that ordinary administrative discretion to grant or deny DACA encompasses discretion to disregard the First and Fifth Amendments of the Constitution. *See Perry*, 408 U.S. at 597.  The Court thus has jurisdiction to inform Defendants that Rueda's exercise of her Fifth and First Amendment rights are not a permissible basis for a discretionary denial of her DACA application.

Because Rueda challenges an outrageous DACA denial premised on Defendants' belief that they are free to ignore the Constitution and because Rueda does not challenge one of the three discrete actions covered by Section 1252(g), the Court has jurisdiction over her claims.

**II.    Defendants Do Not Have Discretion to Violate the Constitution.**

Defendants criticize the Court for "assert[ing] jurisdiction over an exercise of prosecutorial discretion," citing 5 U.S.C. § 701(a)(2). Dkt. No. 69, at 22:13-19.  In denying Defendants' motion to dismiss, the Court carefully explained that "Section 701(a)(2) does not apply to claims alleging that a federal agency violated the federal constitution," citing controlling Ninth Circuit and Supreme Court authority.  Dkt. No. 48, at 16 (discussing *Webster*, 486 U.S. at 603-04, and *Allen v. Milas*, 896 F.3d 1094 (9th Cir. 2018)).  Defendants' torrent of grievances over the Court's motion to dismiss order does not disturb this black-letter principle.  Because Rueda's remaining claims are all based on the Constitution, Defendants may not hide behind prosecutorial discretion to avoid judicial review.

US 167567697v1

### III.  Defendants Are Not Entitled to Summary Judgment on Rueda's First Amendment Claim.

The only element of Rueda's First Amendment claim that Defendants contest is whether Rueda's speech was the "but-for" cause of her DACA denial.  *Hartman*, 547 U.S. at 260.  Although DACA denials are rare and Defendants cannot point to a single example of a person similarly situated to Rueda being denied DACA, Defendants assert that the sole reason for their DACA denial was that Rueda continued to associate with her parents when she "must have known" of their alleged misconduct.  Dkt. No. 69, at 13:23-25.

In assessing whether an agency's stated reason for a decision is a pretext, a court is "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575-76 (2019) (internal quotation omitted).  "Judicial review [must] be more than an empty ritual."  *Id.*

On the record before the Court—if one accepts Defendants' implausible suggestion that they did not retaliate against Rueda for her public criticism of their treatment of her mother—the denial of her application is entirely unprecedented. Defendants can point to no other applicant who met DACA's objective criteria and still had their application denied based on her parent's alleged misconduct, let alone one whose application was supported by a United States Senator, a United States Representative, the Mayor of Los Angeles, and a chorus of community leaders and educators.  The only plausible explanation for Defendants' denial of Rueda's DACA application is that her well-publicized and intense criticism of Defendants evoked their ire and caused them to retaliate against her.  Because the only reasonable conclusion supported by the record is that Defendants acted with retaliatory animus, the Court should deny Defendants' motion and grant Rueda's cross-motion.

US 167567697v1

### A. Defendants' portrayal of Rueda as a criminal is contrary to the administrative record.

In a *post hoc* attempt to justify Rueda's DACA denial, Defendants portray Rueda as a criminal who law enforcement simply "determined not to arrest and charge" for reasons unrelated to her culpability. Dkt. 69, at 14:1-2. Of course, the reason Rueda was not arrested or charged with a crime is that—as Defendants expressly determined in the administrative record—"there is no evidence" she committed one. CAR 0124. Because a "reviewing court may not substitute reasons for agency action that are not in the record," the Court must reject Defendants' *post hoc* attempt to recast their DACA denial as based on any (still unstated) criminal activity by Rueda. *Arizona Cattle Growers'*, 273 F.3d at 1236.

Indeed, one of DACA's objective criteria is that the applicant must not "pose[] a threat to national security or public safety." Dkt. No. 67-4, at 18. Under the DACA SOP, a person may be considered a threat to public safety "even where there is not a disposition of conviction." RJN, Ex 3, at 88. Thus, if Defendants actually believed that Rueda was part of a "Transnational Criminal Organization" (other than "by virtue of familial relation"), they could have denied her application based on public safety concerns. Dkt. No. 69, at 12-13. Defendants, however, did not do so. CAR 0109; *see also* Dkt. No. 67-1, at 14 n.1. In fact, they conceded that she was not involved in any criminal activity. CAR 0124. Accordingly, they may not now rely on this *post hoc* rationalization, which is contradicted by the administrative record, to cover up their First Amendment violations. *Arizona Cattle Growers'*, 273 F.3d at 1236.

### B. Rueda presented unrebutted evidence establishing Defendants' knowledge of her First Amendment activity.

Defendants contend that the law does not allow Rueda to rely on inferences to establish Defendants' knowledge of her free speech activity (Dkt. No. 69, at 24:7-11)

US 167567697v1

and that there is only "one brief statement" in the record referring to her protest activity (*id.* at 24:21-22).  Defendants are wrong on the law and the facts.

The Ninth Circuit has long held that "since under some conditions circumstantial evidence may be equally or more reliable than direct evidence, it would be wholly irrational to impose an absolute bar upon the use of circumstantial evidence to prove any fact, including a fact from which another fact is to be inferred." *United States v. Nelson*, 419 F.2d 1237, 1240 (9th Cir. 1969).  In First Amendment retaliation cases, a plaintiff may establish causation without "any distinction between direct and circumstantial evidence."  *Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002).

*Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003), does not bar the use of inferences, as Defendants wrongly argue. Dkt. 69, at 24:7-8.  Rather, it held that a plaintiff's "speculation" could not overcome a defendant's sworn testimony that he was unaware of the plaintiff's protected activity.  *Id.*; *cf. Ochoa v. Santa Clara Cty. Office of Educ.*, No. 16-CV-03283-HRL, 2017 WL 2423183, at *6 (N.D. Cal. June 5, 2017) (holding plaintiff could establish inference that defendant "was aware of [plaintiff's] speech despite [defendant's] denials").[6]

Here, no Defendant has testified that it was unaware of Rueda's free speech activity.  Indeed, Defendants' motion carefully avoids telling the Court they were, in fact, unaware of Rueda's free speech activity.  And, as the Court already ruled on the motion to dismiss, Rueda has presented far more than speculation that Defendants were aware of her free speech activity. Dkt. No. 48, at 19-20.  The administrative record is replete with evidence confirming that the Court was correct.

The first line of the resumé Rueda submitted with her DACA application describes her as a "Youth Organizer/Volunteer" who "helps undocumented youth and

---

[6] Similarly, in *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 2001), there was "no evidence" to contradict the Defendants' sworn denial of lack of evidence.  That is not the situation here.

1    families end criminalization of immigrants." CAR 0053. Rueda also submitted a

2    letter from Councilmember Gil Cedillo in support of her DACA application that

3    stated:

4        I am concerned by signs that suggest that [Rueda] was arrested either **in**

5        **retaliation for her outspoken advocacy**, or as collateral to an
         investigation that does not implicate her. Ms. Rueda was apparently
         stopped by officers in plainclothes who surrounded her car with three

6        vehicles while she was moving a car to comply with the City's street
         cleaning obligations. These kinds of immigration enforcement actions

7        contribute to the climate of fear in Los Angeles …

8    CAR 0056 (emphasis added). County Supervisor Hilda Solis wrote she was "very

9    concerned by the appearance that immigration enforcement agencies may be targeting

10   individuals who are involved in immigrant rights activism," such as Rueda. CAR

11   0082. County Supervisor Sheila Kuehl echoed that "it appears that Ms. Rueda may

12   have been arrested following her outspoken advocacy," despite "no apparent

13   justification for her being taken into custody and no supportable reason to target her

14   specifically." CAR 0094. Los Angeles Mayor Eric Garcetti similarly described

15   Rueda "as a young leader and community organizer" whose arrest "appears to have

16   been a targeted operation." CAR 0081. United States Senator Kamala Harris and

17   Representative Karen Bass both filed letters of support that described her as an

18   "advocate for her community." CAR 0054-55.

19       Rueda submitted a declaration that elaborated on her advocacy for her mother,

20   stating:

21       I learned my mom was being taken into immigration custody. I was
         devastated. Immediately I contacted groups and lawyers and publicly

22       started calling for Border Patrol to release my mom. When we found a
         lawyer to represent my mom for free, I helped her gather letters of

23       support from people who know my mom, organizations, and I even
         submitted a declaration in support of her release.

24

25   CAR 00079. Defendants' argument that Rueda's DACA application "revealed

26   almost no details about her protest activity" ignores the administrative record. Dkt.

27   No. 69, at 24:12-13.

28

Other portions of the administrative record that Defendants "considered directly or indirectly" in the adjudication of the request provide further elaboration about Rueda's speech.  Dkt. No. 68, at 6.  For example, a letter from 84 faith leaders in support of Rueda's release from detention described Rueda as "an immigrant rights organizer" and expressed "worr[y] that circumstances of Claudia's arrest suggest that she was targeted for arrest at least in part as a result of her dignified defense of her mother."  CAR 0217-18.  The National Day Laborer Organizing Network wrote that "members from throughout our network strongly supported Claudia in advocating for the release of her mother.  We enthusiastically supported the campaign to #Free Teresa, led by her daughter Claudia" and that they believed that "the arrest of Claudia appears to have occurred in retaliation against the advocacy work she led on behalf of her mother."  CAR 0231.  The American Friends Service Committee similarly suggested Rueda's case was an example of "children unjustly targeted because they have advocated for the release of their own parents."  CAR 0233.

In addition, Rueda's protest activity was reported in the press, including the Los Angeles times, over 50 times.  Dkt. No. 67-4, Exs. 5-57; *Ochoa*, 2017 WL 2423183, at *7 (holding media coverage of speech generated inference of knowing retaliation).  Rueda's story also went viral on Twitter (Dkt. No. 67-3, ¶ 14), and many of the tweets encourage members to call Defendants directly to complain about their unjust treatment of Rueda (Dkt. No. 67-4, at 285-93).

Given the overwhelming evidence that Defendants knew of Rueda's First Amendment activity, it is unsurprising that Defendants provided no sworn testimony denying their knowledge.  Defendants' argument that they are entitled to summary judgment on the issue of knowledge is frivolous.

### C.    Defendants have failed to rebut the inference of animus.

Whether an action "is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances."  *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003).  In conducting this analysis, the

Court must look at the "totality of the facts." *Id.* A defendant seeking summary judgment has an even higher burden and must show he is entitled to judgment even if "all reasonable inferences are drawn[] in plaintiff's favor." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012). Here, Defendants' motion should be denied because it focuses on just a few facts instead of the totality of the facts, and it asks the Court to resolve all inferences in Defendants' favor.

First, Defendants argue that the close timing between their retaliatory DACA denial and Rueda's speech can be ignored simply because Rueda submitted her application close in time to her free speech activity. Dkt. No. 69, at 26:23-25. Citing *Coszalter*, Defendants argue for a bright-line rule that if a plaintiff requests a benefit close in time to her free speech activity and to the time of the denial of the benefit, the court is "mistaken to grant any significance to the timing of events." *Id.* at 26:27. Defendants' reading of *Coszalter* is exactly backwards. *Coszalter*, 320 F.3d at 978 ("We … reject any bright-line rule about the timing of retaliation.").

Defendants ignore several facts that indicate the timing of Rueda's DACA denial in relation to her free speech and petitioning activities was more than coincidental. For instance, Defendants ignore never address their gangland-style arrest of Rueda shortly after she protested her mother's detention. In that arrest, Defendants sent at least three officers in plainclothes and unmarked cars to abduct Rueda as she walked out of her house in her pajamas to move her car for street cleaning. Dkt. No. 67-3, ¶ 9. Defendants arrested her solely for being unlawfully present in the country. CAR 0344. And Rueda was the sole target and only person arrested during this act of intimidation, which Defendants dubiously claim was related to an investigation of others. *Id.*

Such aggressive enforcement of immigration laws is far outside the norm. As the Supreme Court observed when the estimated number of undocumented immigrants in the country was between 3 and 6 million, immigration laws are subject to "lax enforcement" to create a "shadow population" for "cheap labor." *Plyler*, 457

U.S. at 218-19.  Since the time the Supreme Court made this observation, Defendants estimate that the number of undocumented immigrants living in the United States has grown to over 12 million.  RJN Ex. 4, at 3.  The only plausible explanation presented to the Court for why Rueda was snatched from her home by three unmarked cars while millions are permitted to live anonymously in the shadows is that Rueda's protests were a thorn in Defendants' side and they wanted to make a public example of her, in order to deter others from protesting their policies and practices.

There is also a direct connection between the Border Patrol who carried out the arrest and the DACA denial.  It was Border Patrol Agent Dwain Holmes who sent an unsolicited email to the "DACA Terminations" email address at USCIS (CAR 0122), that resulted in USCIS issuing the memorandum recommending denial of Rueda's DACA application.  CAR 0123-0124.  On its face, the email indicates that Holmes had never made a request to prevent the granting of a DACA application before and was unsure if he was even following the correct procedure to do so.  CAR 0122 ("I've sent e-mails to this e-mail address before in order to cancel an individual's DACA … I understand [Rueda] has applied for DACA.  She does not currently have DACA … .  If I have sent this to the wrong place as she does not currently have DACA to terminate, please let me know.").

Again, the only plausible explanation presented to the Court for Rueda's unique treatment is that, at the time of this email, Rueda's protests were generating intense media scrutiny of Defendants.  Dkt. No. 67-4, Exs. 5-52; *Ochoa*, 2017 WL 2423183, at *7 (where "subject [of plaintiff's speech] had been covered in the media" and was the subject of "tension and discord," court could infer defendant "may have been irked" by speech and retaliated).

Another indication of Defendants' animus is that, after Rueda's arrest, they detained her for three weeks without filing any immigration charges.  Yet, when a neutral Immigration Judge reviewed her case, she released Rueda without bond and found her a "prime candidate" for DACA whose application was "likely to succeed."

CAR 0142.  Again, what distinguishes Rueda from the 12 million who live in the shadows, and the 800,000 applicants to whom USCIS granted DACA, is her activism against Defendants.  As the Immigration Judge found, she was not placed in detention for weeks for any colorable reason and she posed no threat to public safety.  CAR 0142.

Defendants argue their DACA denial could not have been retaliatory because there is no "settled course of adjudication" preventing their denial of DACA.  Dkt. 69, at 28:25-28.[7]  But, even if Defendants had discretion to deny DACA, it does not follow that Defendants acted without a retaliatory motive.  *Perry*, 408 U.S. at 597.  Indeed, Defendants' own statistics show that 95% of all DACA applications were granted after case review.  Dkt No. 67-4, at 44.  Thus, even though Defendants believe DACA denials to be totally discretionary, DACA denials are extraordinarily unusual events.[8]  Moreover, Defendants have not presented a single example of any person similarly situated to Rueda—a person who met all of DACA's objective criteria and who was strongly supported by national and community leaders but whose parents allegedly were part of a criminal organization—who was denied DACA.  In light of the unprecedented nature of the denial of Rueda's DACA application, Defendants' mere discretion to deny her application "does little to prove or disprove the causal connection between animus and injury."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019).

The evidence before the Court establishes that Defendants (1) rarely deny DACA applications; (2) had a strong motive to deny Rueda's DACA application because of her speech critical of Defendants; (3) took a number of unusually harsh

---

[7] While Rueda does not waive appellate review of the Court's motion to dismiss ruling on whether there is a settled course of adjudication, the Court need not find there was a settled course of adjudication to determine that Defendants exercised their discretion with a retaliatory motive.

[8] These statistics were not before the Court on the motion to dismiss.  Thus, Defendants' reliance on the Court's statement that "nothing in the record indicates that USCIS consistently granted DACA status to certain aliens who satisfied the program's objective criteria," is misplaced in light of the expanded record on summary judgment.  Dkt. No. 69, at 28:1-3 (quoting Dkt. No. 48, at 16).

18
US 167567697v1

actions during the same period of time as Rueda's protest activity and their denial of her application, including the arrest, detention, and unsolicited email to USCIS; (4) contemporaneously targeted others who spoke out about immigration enforcement policies and practices; and (5) presented no evidence of denial of a similarly situated person's application.  In response to this evidence, Defendants argue only that they had discretion to deny Rueda's application and therefore the denial theoretically could have been non-retaliatory.   But a theoretical possibility that something could occur is not evidence that it actually did occur.  Without evidence supporting Defendants' claim of non-retaliation, the Court should deny Defendants' motion and grant Rueda's cross-motion.  *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 377 F. Supp. 3d 1093, 1106 (S.D. Cal. 2019) ("[I]f … evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (quoting *Anderson v. Liberty, Inc.*, 477 U.S. 242, 249-50 (1986)).

## IV.    Defendants Are Not Entitled to Judgment on Rueda's Equal Protection Claim.

Defendants assert that the factual basis for Rueda's Equal Protection claim is "thread-bare" and based on "speculation."  Dkt. No. 69, at 28:12-21.  Not so. Rueda's Equal Protection claim is based on Defendants' unambiguous admission in the administrative record that they denied her DACA application because of her relationship to her family.  Specifically, Defendants determined "there is no evidence" Rueda participated in a criminal operation.  CAR 0124.  Defendants nevertheless classified her as an "associate" of a criminal operation "by virtue of familial relation" and denied her DACA on that basis.  *Id.*

Defendants also accuse the Court of "fail[ing] to apply the Ninth Circuit standard for establishing an equal protection claim."  Dkt. No. 69, at 29:7-10. Defendants are again mistaken.

RUEDA'S OPP. TO AGENCY DEFENDANTS' MSJ

US 167567697v1

Where government action "substantially burdens fundamental rights … strict scrutiny applies." *Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003).  As this Court noted, "[a] parent has a *fundamental liberty interest* in companionship with his or her child."  Dkt. No. 48, at 11 (quoting *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011)).  Since Defendants "denied Plaintiff's DACA application because of Plaintiff's decision to live with her family," the Court correctly held strict scrutiny applied.  Dkt. No. 48, at 22; *see also* Dkt. No. 67-1, at 14:18-18:28. Defendants' assertion that "the Court did not identify what … fundamental right [their DACA denial] implicated" or why strict scrutiny applied is wrong.  Dkt. No. 69, at 30:12-14.

Defendants' argument that there is no right to "family unity" conflates unrelated legal doctrines.  Dkt. No. 69, at 30:4-10.  The right to family unity refers to a person's right to avoid deportation because her family is lawfully present in this country.  *See De Mercado*, 566 F.3d at 816 n.5.  Rueda has not asserted such a right in this case.  Rather, Rueda asserts she may not be denied a government benefit— DACA—as retribution for her parents' alleged misdeeds.  That right is firmly established, as government action "directing the onus of a parent's misconduct against his children does not comport with fundamental conceptions of justice."  *Plyler*, 457 U.S. at 220.

*Talib v. Guerrero*, No. CV1503825-JAK(DFM), 2019 WL 7039623, at *7 (C.D. Cal. Oct. 17, 2019), has no relevance here.  There, the plaintiff was "found guilty of resisting, obstructing, or delaying a peace officer in the performance of his duties" during the plaintiff's arrest.  *Id.*  The Court rejected several claims Talib brough against police officers arising from his arrest, but the right of familial association was not one of them.  *Id.* at *8-16.  Here, Rueda was not convicted of a crime.  To the contrary, in the administrative record, Defendants find that there is "no evidence" that Rueda committed a crime.  CAR 0124.  Indeed, she has never been charged with a crime at any time.  Thus, *Talib* provides no support for Defendants'

US 167567697v1

contention that Rueda may be denied a benefit because agents "arrested members of her family."  Dkt. No. 69, at 29:23-25.

Further, whether or not there is a settled course of adjudication for DACA is of no moment to Rueda's Equal Protection claim.  Dkt. No. 69, at 31:3-5.  Even assuming Defendants could deny DACA to people who meet the objective criteria "for any number of reasons, there are some reasons upon which the government may not rely," including an individual's desire to associate with her parents.  *Perry*, 408 U.S. at 597.

Finally, Defendants do not even attempt to justify their actions under strict scrutiny.  Instead, after crafting a strawman version of Rueda's claim and the Court's motion to dismiss order, they assert that the strawman is "insufficient to place any burden on Federal Agency Defendants to respond."  Dkt. No. 69, at 83:1-2.[9]

Defendants bear the burden of persuasion at trial on strict scrutiny.  *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 310 (2013) (holding "the government … bears the burden to prove" it passes strict scrutiny).  "As the party with the burden of

---

[9] Defendants state rhetorically that "refusing to reward an individual who chooses, as an adult, to live in an apartment where as much as 33 pounds of cocaine and hundreds of thousands of dollars in drug money are kept as part of a criminal operation" should be permitted.  Dkt. No. 69, at 4-8.  If this rhetoric was intended to satisfy Defendants' strict scrutiny burden, it falls far short of doing so.  The government has no legitimate interest in coercing individuals of any age from dissociating themselves from their parents, even if the government believes the parents are wrongdoers.  *Plyer*, 457 U.S. at 220 ("[L]egislation directing the onus of a parent's misconduct against his children does not comport with fundamental conceptions of justice."); The Federalist No. 43, at 269 (James Madison) (Henry Cabot Lodge ed., New York, G.P. Putnam's Sons 1888) (stating government must be prohibited "from extending the consequences of guilt beyond the person of its author.").  Moreover, there are far more narrowly tailored ways for the government to redress a parent's wrongdoing than denying a widely available benefit to their children, such as seeking redress directly from the parent.  *King v. Smith*, 392 U.S. 309, 320 (1968) (holding state's "interests in discouraging immorality and illegitimacy" did not permit denial of welfare benefits to children whose mother "cohabits" with a man).  Furthermore, if Defendants assert an interest in discouraging Rueda from being financially dependent on her parents, granting her DACA application, including a work permit, supports their asserted interest, whereas a denial is counterproductive to it.  If Rueda had any personal culpability for the criminal conduct alleged by the Defendants, Defendants could have easily denied her DACA on that basis.  *See* No. 67-1, at 14 n.7.    But Defendants concede there is "no evidence" of her personal culpability, CAR 0124, and the Constitution prohibits Defendants from imputing the alleged guilt of others on Rueda.

RUEDA'S OPP. TO AGENCY DEFENDANTS' MSJ

US 167567697v1

persuasion at trial," Defendants seeking summary judgment "must establish beyond controversy every essential element" of the defense. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation omitted).  Because Defendants did not even attempt to make this showing, the Court must deny their motion.

## V.    The Court Has Jurisdiction to Grant Declaratory Relief.

Defendants contend that "a declaration that Defendants have violated the First and Fifth Amendments serves [no] purpose if the Court finds for Ms. Rueda on the substantive claims under Count Two" and cite in support *Lai v. Quality Loan Service Corp.*, No. CV-10-2308 PSG (PLAx), 2010 WL 3419179, at *3 (C.D. Cal. Aug. 26, 2010).  *Lai*, however, incorrectly relied on California state law to construe the federal Declaratory Relief Act.  *Lai*, 2010 WL 3419179, at *3.  In federal court, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." *McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (internal quotation omitted); Fed. R. Civ. P. 57, 1937 Advisory Committee Note ("[T]he fact that another remedy would be equally effective affords no ground for declining declaratory relief.").

Declaratory relief is appropriate if it "will serve a useful purpose in clarifying and settling the legal relations in issue" or "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *McGraw-Edison*, 362 F.2d at 342.  Both purposes are served here.  Even if Rueda prevails in obtaining relief from denial of DACA under Count 2, Defendants are likely to continue to hold power over Rueda in similar situations into the future.  The parties bitterly dispute basic legal points about their relationship, such as whether Defendants have discretion to ignore the Constitution in their interactions with Rueda.  The Court may, accordingly, maintain jurisdiction to enter declaratory relief resolving their dispute.

US 167567697v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment.


Dated:  May 15, 2020                    Respectfully submitted,

                                        ARNOLD & PORTER KAYE SCHOLER LLP


                                        /s/ John C. Ulin
                                        John C. Ulin
                                        Oscar Ramallo
                                        Vanessa Adriance

                                        *Attorneys for Plaintiff*
                                        Claudia Sarahi Rueda Vidal

RUEDA'S OPP. TO AGENCY DEFENDANTS' MSJ

US 167567697v1