JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Deputy Director
JAMES J. WALKER
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov


*Counsel for Federal Agency Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CLAUDIA SARAHI RUEDA VIDAL, | ) ) ) | Case No. 2:18-cv-9276- DMG-PLA |
| Plaintiff, | ) ) | **RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al*., | ) ) ) ) | **Judge**: Hon. Dolly M. Gee **Courtroom**: 8C **Hearing**: Friday, June 12, 2020 **Time**: 9:30am |
| Defendants. | ) ) | |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

I.    The Court may not re-weigh the evidence to arrive at a different outcome, nor consider extra record evidence in its review of an agency decision.... 2

II.   A prima facie showing of an inference of animus is inadequate to survive summary judgment. .................................................................................. 4

III.  Strict scrutiny is not the standard for reviewing the denial of a discretionary grant of deferred action. ...................................................... 8

IV.   Ms. Rueda's new claims should be rejected. .......................................... 10

V.    The Court should strike Ms. Rueda's declaration and exhibits, and all references to them in her motion, as impermissible extra-record evidence. .............................................................................................. 11

VI.   The Court should strike the 62 alleged news articles and tweets under the heading "Internet Sources & Publications." ............................................ 14

CONCLUSION ................................................................................................. 16

2:18-cv-9276- DMG-PLA

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Bar MK Ranches v. Yuetter,*
   994 F.2d 735 (10th Cir. 1993) ............................................................... 11

*Bullard v. Wastequip Mfg. Co. LLC,*
   No. CV1401309MMMSSX, 2015 WL 12766467 (C.D. Cal. Apr. 14, 2015) ...... 10

*Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011) ................................................................. 2

*Camp v. Pitts,*
   411 U.S. 138 (1973) ............................................................................. 11

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971) ..................................................................... 3, 11, 13

*Coleman v. Quaker Oats Co.,*
   232 F.3d 1271 (9th Cir. 2000) ................................................................. 4

*Cook Inletkeeper v. U.S. E.P.A.,*
   400 F. App'x 239 (9th Cir. 2010) ........................................................... 11

*Coszaltzer v. City of Salem,*
   320 F.3d 968 (9th Cir. 2003) ................................................................... 5

*De Mercado v. Mukasey,*
   566 F.3d 810 (9th Cir. 2009) ................................................................ 8, 9

*Eagle v. Am. Tel. & Tel. Co.,*
   769 F.2d 541 (9th Cir. 1985) ................................................................. 10

*Family Inc. v. U.S. Citizenship & Immigration Servs.,*
   469 F.3d 1313 (9th Cir. 2006) ................................................................. 3

*Fanni v. Northrop Grumman Corp.,*
   No. CV 98-5197 DT AIJX, 2000 WL 35905106 (C.D. Cal. Apr. 10, 2000) .. 13, 14

*Gerritsen v. Warner Bros. Entm't Inc.,*
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) ............................................... 14, 15

iii

2:18-cv-9276- DMG-PLA

*Hartman v. Moore*,
   547 U.S. 250 (2006) ...................................................................................9

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ...................................................................................4

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
   189 F.3d 971 (9th Cir. 1999) ..................................................................14

*Hill Dermaceuticals, Inc. v. FDA*,
   709 F.3d 44 (D.C. Cir. 2013)...................................................................11

*Inland Empire Pub. Lands Council v. Glickman*,
   88 F.3d 697 (9th Cir. 1996) ....................................................................12

*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) ...........................................................3, 10

*Karam v. City of Burbank*,
   352 F.3d 1188 (9th Cir. 2003) ...........................................................5, 14

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005) ................................................................12

*McKinney v. American Airlines, Inc.*,
   641 F. Supp. 2d 962 (C.D. Cal. 2009) ....................................................10

*Nw. Motorcycle Ass'n. v. Dep't of Agriculture*,
   18 F.3d 1468 (9th Cir. 1994) .............................................................6, 13

*Nat'l Audubon Soc. v. U.S. Forest Serv.*,
   46 F.3d 1437 (9th Cir. 1993) ..................................................................12

*Ravidath Lawrence Ragbir et al. v. Ronald D. Vitiello et al.*,
   S.D.N.Y 1:18-cv-01159-PKC...................................................................15

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014) ...............................................................3, 4

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
   100 F.3d 1443 (9th Cir. 1996) ................................................................12

iv

*Texas Dept. of Community Affairs v. Burdine,*
   450 U.S. 248 (1981) ...................................................................... 2

*Tri-Valley CARES v. United States Department of Energy,*
   671 F.3d 1113 (9th Cir. 2012) ................................................... 12

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
   592 F.3d 954 (9th Cir. 2010) ..................................................... 15

*Wallis v. J.R. Simplot Co.,*
   26 F.3d 885 (9th Cir. 1994) .......................................................... 5


**Federal Statutes**

5 U.S.C. § 701(a)(2) ....................................................................... 2

8 U.S.C. § 1252(a)(2)(D) ............................................................... 9

8 U.S.C. §§ 1252(a)(5) ................................................................... 9

8 U.S.C. §§ 1252(b)(9) ................................................................... 9

8 U.S.C. § 1252(g) .............................................................. 1, 2, 16

**Federal Rules**

FRE 201(b) ..................................................................................... 14

2:18-cv-9276- DMG-PLA

**INTRODUCTION**

Ms. Rueda's motion for summary judgment does not establish the Court's jurisdiction to consider her challenge to USCIS's discretionary denial of a DACA request over the clear authority at 8 U.S.C. § 1252(g) and the APA, and it fails to establish that the evidence in the Administrative Record does not support USCIS's determination or that USCIS's determination was based on retaliatory animus.

As Defendants demonstrate in their motion for summary judgment, the Court's previous findings of jurisdiction were based on the mistaken premise that Ms. Rueda is at risk of removal due to the denial of her DACA request—and Ms. Rueda relies solely on that incorrect premise in support of her motion for summary judgment. In fact, Ms. Rueda cannot establish a protected interest in DACA because, as this Court also found, DACA is not an entitlement and no legal consequence can flow from the denial of a discretionary request for deferred action. *See* Order at 12 n.11, 15-16, 21. Ms. Rueda's hyperbolic assertions that Federal Agency Defendants, in denying her DACA request, have imposed a "severe penalty"; have "mete[d] out punishment" on her or her parents; that the Government is "imposing disabilities on the [25 year old] child"; and "work[ing] Corruption of Blood," akin to the internment camps at issue in *Korematsu*, *see* ECF No. 67-1, Plaintiff's Memorandum of Points and Authorities in Support of her Motion for Summary Judgment ("Mot.") at 11-14, are simply not correct as a matter of law. Under a proper analysis of the single decision at issue here—the denial of a discretionary request for deferred action—the Court should dismiss the remaining claims for lack of jurisdiction.

If the Court finds that it has jurisdiction to adjudicate Ms. Rueda's claims, it should still grant Federal Agency Defendants summary judgment because the evidence in the Administrative Record (or "the Record") supports USCIS's lawful denial of Ms. Rueda's request for deferred action, and Ms. Rueda makes no showing of animus as a cause of the denial, and certainly not the but-for cause required by law. Rather, she relies only on the

1

1   Court's previous willingness to infer retaliatory animus, based on a mistaken analysis of a
2   threat of removal that does not exist here, and allowed the claim to proceed under the
3   generous Rule 12 pleading standard. *See*, *e.g*., Mot. at 25 ("[T]he Court may reasonably
4   infer that Rueda's activism was a 'but-for' cause of the DACA denial.").

5          However, a plausible inference of animus is not sufficient either to grant Ms.
6   Rueda summary judgment or to deny Federal Agency Defendants' motion for summary
7   judgment. Rather, the Government has rebutted the thin inference of retaliation the Court
8   found plausible in Ms. Rueda's First Amended Complaint ("FAC"), such that the burden
9   shifts back to her to establish, with specific, non-speculative evidence in the
10  Administrative Record, that her DACA request would not have been denied "but for" an
11  unconstitutional reason. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248,
12  254, 255 n.10 (1981) (If the defendant carries its burden of introducing "evidence of
13  legitimate, nondiscriminatory reasons for its actions," "the presumption raised by the
14  prima facie case is rebutted [and] drops from the case.") (internal quotations omitted);
15  *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1061 (9th
16  Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative
17  evidence of specific facts, not sweeping conclusory allegations.").

18         Where Ms. Rueda fails to meet her burden in her motion for summary judgment
19  and cannot cure the deficiencies through new arguments raised in a reply brief, the Court
20  should grant Federal Agency Defendants' motion for summary judgment.

21  **I.    The Court may not re-weigh the evidence to arrive at a different outcome, nor
22         consider extra record evidence in its review of an agency decision.**

23         As the Court already found that the DACA denial decision itself is not reviewable,
24  pursuant to 5 U.S.C. § 701(a)(2) and possibly 8 U.S.C. § 1252(g),[1] Order at 12, the only

25  _____

26  [1] 8 U.S.C. § 1252(g) is a second bar to this Court's jurisdiction over Ms. Rueda's claims,
27  and the lawful denial of a discretionary request for deferred action does not create
    jurisdiction. F.A. Defs' Mot. at 12-13; 12 n.4.
28

2:18-cv-9276- DMG-PLA

merits question that the Court could consider is whether the reason for USCIS's decision—Ms. Rueda's likely benefit from her family's criminal drug organization—was a pretext to hide a retaliatory motive, or was itself an unconstitutional ground violating fundamental rights.

In her ask for summary judgment on this point, however, Ms. Rueda fails to identify non-speculative evidence in the Administrative Record to support her position that USCIS's decision is erroneous. Ms. Rueda offers no evidence in support of her allegations that the denial was based in animus. Rather, she asks the Court to re-weigh the evidence and find that she *should have been* granted DACA, and that the "only reasonable explanation" for why her request was denied was retaliation for her protest activity against the Government. Mot. at 22.

Then, in an apparent acknowledgment of a lack of evidence to support her position, she asserts only that "the Court *may reasonably infer* that Rueda's activism was a 'but-for' cause of the DACA denial." Mot. at 25 (emphasis added). Finally, she summarizes her motion for summary judgment with the equivocal conclusion that she has "raised a plausible inference 'that her application was denied on account of retaliatory animus.'" *Id*. However, summary judgment may not be granted on proposed reasonable explanations (nor on new evidence presented to the Court), but must be supported by non-speculative evidence in the Administrative Record. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (reviewing court may not "substitute its judgment for that of the agency") (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971)).

Even if the Court reweighed the record evidence and considered the extra-record evidence, it does not support finding that USCIS's decision was retaliatory or pretextual. Here, reference to supporting letters and the immigration judge's release order, *see* Mot. at 21-22, are not sufficient to compel a conclusion that Ms. Rueda's DACA request must have been granted, *see Family Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d

2:18-cv-9276- DMG-PLA

1313, 1315 (9th Cir. 2006), nor do they amount to evidence of animus in the denial. First, the DACA SOP simply does not mandate a DACA grant to anyone under any circumstance. *See* Order at 21 ("[T]he DACA Memo and other relevant administrative guidance confer upon USCIS the unfettered discretion to deny a DACA request."). Second, there is no indication of whether Senator Harris or others were aware that Ms. Rueda lived in an apartment with leaders of a transnational criminal organization, or that 33 pounds of cocaine and hundreds of thousands of dollars in drug money were found there, or whether they would have drafted such letters had they known all of these facts.[2]

It is precisely because the USCIS adjudicator is in the best position to evaluate the evidence and conduct "a complicated balancing of factors which are peculiarly within [an agency's] expertise," that courts are precluded from second-guessing such exercises of pure discretion. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985). To the extent the Court entertained Ms. Rueda's inference of animus at the Rule 12 stage, the evidence in the Record supports the denial decision and refutes that inference, and the Court may not re-weigh that evidence to arrive at a different decision. *Jewell*, 747 F.3d at 601.

## II.   A prima facie showing of an inference of animus is inadequate to survive summary judgment.

Ms. Rueda's motion also fails because she has not met her burden—she argues only that an inference of retaliation is sufficient, Mot. at 24, 25; *see id*. at 9 ("[T]he evidence supports this Court's suspicion that the stated reason was a Pretext"), rather than establishing that she has met the standard necessary to survive a motion for summary judgment. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000) (a plaintiff "cannot defeat summary judgment simply by making out a prima facie case") (citation

---

[2] At least one letter indicates the author was not aware of these facts. *See* CAR 0093, Letter in support from Jose Huizar, Councilmember, 14th District, City of Los Angeles, dated May 23, 2017 ("if she is being detained solely for her immigration status, she should be released without question.").

4

2:18-cv-9276- DMG-PLA

omitted). Rather, once the defendant provides "a legitimate nondiscriminatory reason" for its action, a plaintiff "must produce 'specific, substantial evidence of pretext.'" *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir. 1994) (citation omitted).

The Court permitted Ms. Rueda's claims to go forward based on her arguments that the timing of the decision and a then-redacted email exchange might have supported an inference of animus. Order at 20-21. However, she is unable to point to any record evidence in support of either allegation. In contrast, Federal Agency Defendants have now shown through the Record that the timing of Ms. Rueda's DACA denial (coming months after her protest activity) coincided with the filing of her DACA request, refuting any implication that the timing was orchestrated by Federal Agency Defendants as a means of retaliation. *Coszaltzer v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) ("[T]he length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment.").

The Record also shows that Ms. Rueda provided very little detail related to her protest activities in her DACA request, *see* CAR 0079, and there is no evidence that the USCIS adjudicator was otherwise aware of it. Ms. Rueda's assertions that the adjudicator *must have known* because of the so-called "'Free Claudia' media firestorm," Mot. at 24, is nothing more than speculation, insufficient to support her claim. *See Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) ("[S]peculation as to [defendant's] improper motive does not rise to the level of evidence sufficient to survive summary judgment").

Ms. Rueda appears to believe the Court's prior finding of an inference of animus is sufficient based on her mistaken assertion that "[Federal Agency] Defendants have chosen not to present any evidence in rebuttal." Mot. at 2. However, the Administrative Record is replete with evidence of USCIS's consideration of her close ties to a criminal drug organization in deciding to deny her DACA request. *See* CAR 0117-22, 0336-37, 0400-408 (emails between the USCIS adjudicator, Border Patrol, and USCIS

5

Headquarters (SCOPS)); *see also id*. at 0125-27 (Deconfliction report); 0130-34 (Risk and Fraud report); 0379-82 (CBP Report of Investigation, Rueda Transnational Criminal Organization); 0392 (RAG with HQ Service Center Operations (SCOPS) response); 0393-94 (RAG attachment - EARM report of Border Patrol Narrative).

Notably, Ms. Rueda has never attempted to rebut the evidence as to the arrest of her father or the charges that he led a transnational criminal operation out of her family's home. *See* FAC at ¶ 77 ("On April 24, 2017, Ms. Rueda's mother, Teresa Vidal-Jaime, was swept up as a collateral arrest during a criminal investigation of another member of their household. Ms. Vidal-Jaime was not a person of interest in the criminal investigation."); *see also* Mot. at 2, 6, 20, 22-23 (asserting only her mother's innocence). Both of Ms. Rueda's parents, as well as her uncle, were arrested at the same time, as part of the raid of Ms. Rueda's apartment that uncovered 33 pounds of cocaine and $630,000 in cash. CAR 0393-94, 0397. Thus, her assertion that Federal Agency Defendants "*purport to believe* her parents are part of a criminal organization" is inaccurate. Mot. at 9 (emphasis added). The Record, at least as to her father's criminal activity, is clear and unrefuted. It was eminently reasonable for USCIS to rely on these findings to determine that Ms. Rueda, who chose to live in this home as an adult, did not demonstrate that she warranted a favorable exercise of prosecutorial discretion. *Nw. Motorcycle Ass'n. v. Dep't of Agriculture*, 18 F.3d 1468, 1472 (9th Cir. 1994) (reviewing court must find only that the agency's evidence "provided a rational and ample basis for its decision.").

The Record also offers evidence to rebut Ms. Rueda's speculative assertion that one redacted email created an inference of animus. The Record contains an unredacted version of the email on which Ms. Rueda and the Court relied, debunking the theory that the redaction might have been hiding an impermissible reason for the USCIS adjudicator to "rewrite" her analysis. *See* CAR 0121-22. Instead, the content of the email shows that the analysis was rewritten following a request to protect information from being disclosed about an ongoing investigation. *Id*. Finally, the Record notably contains no discussion

6

with the USCIS adjudicator of any protest activity from anyone at USCIS or CBP, including BP Agent Holmes, whom Ms. Rueda casts as the main villain responsible for the denial of her DACA request. Mot. at 24-25.

In fact, Ms. Rueda's argument that BP Agent Holmes orchestrated the denial of her DACA request is hyperbolic and incorrect. Agent Holmes noted in his first email to the DACA BCU team that he was acting in the normal course of business to inform the DACA team that Ms. Rueda was recently placed into removal proceedings because of her close ties to her parents' criminal drug organization. CAR 0122; *see* DACA SOP at 74 ("The existence of deportation, exclusion, or removal proceedings may have an effect on the exercise of prosecutorial discretion for DACA."). The USCIS adjudicator confirmed that Agent Holmes was correct in contacting her team, and noted that the information and incident report he provided would be considered in the adjudication. CAR 0121-22; *see* DACA SOP at 77 ("Do not rely solely on the grounds listed in the charging document and/or EARM, as not all issues may have necessarily been captured, or new issues may have arisen since the charging document was issued. It is necessary to review all derogatory information in its totality and then make an informed assessment regarding the appropriate exercise of prosecutorial discretion for DACA.").

Finally, Agent Holmes' single follow up email to inquire as to a decision on Ms. Rueda's DACA request does not demonstrate animus. CAR 0119. In fact, Agent Holmes did not indicate any preference for what the decision should be; he merely asked for an update, given Ms. Rueda's upcoming removal proceedings. *Id*. Ms. Rueda's claims that Agent Holmes was "intricately involved" and that he "followed up several times to make sure the denial happened" are just wrong and wholly unsupported by the Record.[3] The

---

[3] Ms. Rueda appears to try to characterize Agent Holmes' response emails to the USCIS adjudicator, consisting of "thank you" responses to the adjudicator's emails *to him*, as evidence that he "followed up several times" with some vendetta in mind. *See* ECF No.

2:18-cv-9276- DMG-PLA

1
2
3

Record proves instead that Agent Holmes provided relevant information as part of his job to the USCIS adjudicator and then followed up once, making no indication of whether he wanted the decision to go one way or the other.

4
5
6
7

Where Ms. Rueda fails to even try to establish the "specific, substantial evidence" necessary to obtain summary judgment, and where she offers only misdirection, hyperbole, and continued speculation to support her claim, the Court should grant Federal Agency Defendants summary judgment. *Wallis,* 26 F.3d at 890.

8
9

### III. Strict scrutiny is not the standard for reviewing the denial of a discretionary grant of deferred action.

10
11
12
13
14
15
16
17
18
19

Ms. Rueda argues in her motion that "withholding" a requested discretionary grant of deferred action is itself a "severe penalty" that triggers strict scrutiny. *See* Mot. at 11. This simply is not the law. As Federal Agency Defendants make clear in their motion for summary judgment, there is no right to family unity that can be asserted in the context of denial of a discretionary immigration request. F.A. Defs' Mot. at 11; *De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009). Furthermore, the act of denying a discretionary request is not an act of government interference in anything. Ms. Rueda never had DACA and was not entitled to receive DACA, and the threat of removal that she asserts here is not a consequence of the denial of her DACA request.[4]

20
21

67-2, Plaintiff's Proposed Statement of Undisputed Facts, at Fact #60. In fact, he initiated just one follow up email to ask the status of the adjudication, and nothing more. CAR 0119.

22
23
24
25
26
27

[4] The Court previously found that strict scrutiny applies to the discretionary denial of a request for deferred action. However, the Court incorrectly "evaluate[d] the gravity of the constitutional right affected" as the risk of Ms. Rueda's removal, which is not at issue here. Now, Ms. Rueda relies entirely on the same mistaken premise (i.e., that denying a request for deferred action somehow constitutes "unwarranted state interference" in a family relationship, Mot. at 10) to perpetuate strict scrutiny as the review standard, and offers no new arguments to overcome the lack of any constitutional interest in DACA. To the extent

28

2:18-cv-9276- DMG-PLA

Rather, the consequence Ms. Rueda faces, possible removal following her immigration proceedings, is by Ms. Rueda's own concession and this Court's holding, entirely independent of her DACA request. *See* FAC ¶ 30, 49; *id*. at Count Two ¶¶ 138, 140-43; *id*. at ¶ 145; *id*. at Prayer for Relief ¶¶ 2, 3, 4, 5; *see also* ECF No. 41, Plaintiff's Opposition to Motion to Dismiss, at 10-11; *id*. at 29; Order at 17. Any interference with her ability to live with her parents or exercise her right to protest will flow from her removal proceedings, not from the discretionary decision not to grant her deferred action.

The Ninth Circuit has rejected such an argument in similar circumstances. In *Martinez–Rosas v. Gonzales*, 424 F.3d 926 (9th Cir. 2005)*,* the Court held that 8 U.S.C. § 1252(a)(2)(D) [permitting judicial review of constitutional questions related to certain discretionary decisions that are otherwise unreviewable] does not provide the Court with jurisdiction to review the agency's discretionary determination "as to whether a petitioner's immediate family members would suffer an 'exceptional and extremely unusual hardship' upon the petitioner's removal." *De Mercado*, 566 F.3d at 816 (citing 424 F.3d at 929-30. The Ninth Circuit found that "[c]reating an exception to this rule for any case where the petitioner's family unity is implicated would swallow the rule itself." *Id*.

Thus, if every one of the 98,000 denied DACA requests since 2012, Mot. at 21 n.4 (citing ECF No. 67-4 at 44), were subject to review under strict scrutiny because each DACA requestor is by definition an undocumented immigrant who will likely be separated from family if he or she is ordered removed, like in *De Mercado*, the exception would swallow the rule. Instead, Ms. Rueda's ability to seek judicial review of claims arising out of her removal proceedings, including constitutional challenges that the immigration court cannot relieve, are properly channeled exclusively through the

---

the Court relied on Ms. Rueda's claim that she was denied DACA based on her protest activity, her only evidence to support is claim is based on speculation.. F.A. Defs' Mot. at 19-22; *Hartman v. Moore*, 547 U.S. 250, 260 (2006).

2:18-cv-9276- DMG-PLA

appropriate court of appeals. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032-33 (9th Cir. 2016); 8 U.S.C. §§ 1252(a)(5), (b)(9).

## IV.   Ms. Rueda's new claims should be rejected.

Ms. Rueda's addition of a substantive due process claim [Mot. at 1, 19-20], a new definition of "similarly situated" [*id*. at 25], and her new request that the Court order Federal Agency Defendants to grant her DACA [ECF No. 67-5, Proposed Judgment] were not presented in the First Amended Complaint and should be stricken from her motion for summary judgment. On a motion for summary judgment, "the plaintiff's allegations and theories of liability are confined to those found in the operative complaint." *Bullard v. Wastequip Mfg. Co. LLC*, No. CV1401309MMMSSX, 2015 WL 12766467, at *12 (C.D. Cal. Apr. 14, 2015); *McKinney v. American Airlines, Inc.,* 641 F. Supp. 2d 962, 981–82 (C.D. Cal. 2009). Allowing a plaintiff "to seek summary judgment on an unpled claim . . . would be unfair to defendants." *Bullard*, 2015 WL 12766467 at *12 (citing *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 548 (9th Cir. 1985)).

Here, Ms. Rueda made no substantive due process claim in her FAC, and she should not be permitted to raise that claim for the first time in her motion for summary judgment. The Court should reject all of Section C.II of Ms. Rueda's motion. *See* Mot. at 19-20. Additionally, the Court should reject Ms. Rueda's attempt to revive her equal protection claim by alleging a new group to form the basis of her claim for the first time at summary judgment. As Federal Agency Defendants pointed out previously, Ms. Rueda failed to identify a group to which she was similarly situated in her FAC. *See* Federal Agency Defendants' Motion for Summary Judgment ("F.A. Defs' Mot.") at 20 n.8; *see also* ECF No. 39, Federal Agency Defendants' Motion to Dismiss at 24. She now provides a definition as "*i.e.* a person who meets all of DACA's objective criteria and who received glowing support in her community from everyone from her Senator on down." Mot. at 25. In opposition to Federal Agency Defendants' motion to dismiss, Ms. Rueda defined her group of similarly situated individuals as "those who meet the DACA

10

program's objective criteria," ECF No. 41 at 8, and that is the definition Federal Agency Defendants responded to in their motion for summary judgment. The Court should reject her attempt to amend her pleadings to support this claim for the first time at summary judgment.

Lastly, Ms. Rueda's Proposed Judgement seeks relief that she did not seek in her FAC, namely that this Court order USCIS to grant Ms. Rueda DACA. ECF No. 67-5, Proposed Judgment. In contrast, the FAC asks that the Court order USCIS to re-adjudicate her request. FAC at 48, Prayer for Relief. The Court should reject the proposed order for seeking new relief.

## V.   The Court should strike Ms. Rueda's declaration and exhibits, and all references to them in her motion, as impermissible extra-record evidence.

Along with her motion for summary judgment, Ms. Rueda submitted a new declaration (ECF No. 67-3), and a request for judicial notice of 68 exhibits (ECF No. 67-4). This Court should strike the declaration and strike or deny the request for judicial notice of all proposed exhibits. Judicial review under the APA "is limited to the administrative record that was before the agency when it made its decision," *Citizens to Preserve Overton Park, Inc.,* 401 U.S. at 416, and "not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142 (1973); *Hill Dermaceuticals, Inc. v. FDA,* 709 F.3d 44, 47 (D.C. Cir. 2013) ("A reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'") (citation omitted).

A reviewing court assumes that an "agency properly designated the Administrative Record absent clear evidence to the contrary." *Cook Inletkeeper v. U.S. E.P.A.*, 400 F. App'x 239, 240 (9th Cir. 2010) (citing *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 740 (10th Cir. 1993)). The Ninth Circuit allows supplementation of the administrative record only: (1) if necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) when the agency has relied on documents not in the

11

record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith. *Tri-Valley CARES v. United States Department of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012); *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). But Ms. Rueda has not moved for supplementation of the administrative record, she does not assert any of these exceptions, and none of the exceptions are applicable here.[5]

Ms. Rueda' only supporting argument for the inclusion of new exhibits is a misappropriation of Ninth Circuit case law supplied in a footnote, suggesting that "the Court consider extra-administrative record materials where the agency is likely to have relied on documents not in the record, such as administrative materials governing the exercise of discretion; where necessary to explain the technical and complex subject matter of DACA applications; and to establish that denial of DACA was in bad faith or for illegitimate reasons." Mot. at 21 n.3 (citing *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). Ms. Rueda gratuitously misrepresents the Ninth Circuit's holding here in two important ways. The Court in *Sw. Ctr. for Biological Diversity* actually held, in relevant part, "This circuit has only allowed extra-record materials: [. . .] *when* the agency has relied on documents not in the record," and "when plaintiffs *make a showing* of agency bad faith." 100 F.3d 1443, 1450 (emphasis added) (citing *Inland Empire Pub. Lands Council v. Glickman,* 88 F.3d 697, 703–04 (9th Cir. 1996) for the first quote, and *Nat'l Audubon Soc. v. U.S. Forest Serv.,* 46 F.3d 1437, 1447 n.9 (9th Cir. 1993) for the second). Ms. Rueda's manipulated version of the Court's

_____

[5] Moreover, exceptions to the normal rule regarding consideration of extra-record materials "only apply to information available at the time, not post-decisional information." *Tri-Valley CARES*, 671 F.3d at 1130. Post-decision information "may not be advanced as a new rationalization either for sustaining or attacking an agency's decision" because "it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Id.* at 1130-31. Ms. Rueda's new declaration and proposed exhibits 4 and 63-68 post-date the denial decision at issue here and should be struck for that additional reason.

holding creates much more generous conditions for supplementing the Record, but those are not to be found in actual Ninth Circuit case law.

Furthermore, Ms. Rueda received the Administrative Record on November 1, 2019, and since then has made no allegation that the Administrative Record is incomplete or that it was created in bad faith, nor has she moved the Court to allow supplementation on any grounds. Rather, she filed the Record with her motion for summary judgment, implicitly acknowledging that it is complete and that this matter is subject to the constrictions of an administrative record-review case under the APA. *See Citizens to Preserve Overton Park, Inc.,* 401 U.S. at 416; *Nw. Motorcycle Ass'n.*, 18 F.3d at 1472.

To the extent that Ms. Rueda suggests in her footnote that Federal Agency Defendants relied on documents not in the record, she has made no such showing. Although she references "administrative materials governing the exercise of discretion," it is unclear to what she is referring. Mot. at 21 n.3. The Court has already taken judicial notice of Ms. Rueda's proposed exhibits 1-3, including the DACA Memo, DACA SOP, and DACA Rescission Memo, "because these documents are administrative publications and/or official records maintained in USCIS's and/or DHS's files." Order at 2. The Court need not judicially notice documents a second time. *Fanni v. Northrop Grumman Corp.*, No. CV 98-5197 DT AIJX, 2000 WL 35905106, at *7 (C.D. Cal. Apr. 10, 2000), *aff'd*, 23 F. App'x 782 (9th Cir. 2001) ("Having already taken judicial notice of such documents . . . this Court need not repeat its reasons for taking judicial notice of them. As having been judicially noticed by this Court, they are already a part of the record of this action."). Thus, while Federal Agency Defendants do not concede that these documents

13

belong in the Administrative Record, it was not necessary to include them in the Record and it is not necessary for the Court to admit them as extra-record exhibits now.[6]

## VI.   The Court should strike the 62 alleged news articles and tweets under the heading "Internet Sources & Publications."

Ms. Rueda's proposed exhibits 5-67, alleged news articles and random tweets submitted for the truth of their content, should be struck because they constitute impermissible extra-record evidence and because newspapers are not generally subject to judicial notice. A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FRE 201(b); *Fanni*, 2000 WL 35905106 at *5. However, courts take judicial notice of newspaper articles in only a narrow set of circumstances not at issue here, for example "in securities cases for the purpose of showing that particular information was available to the stock market." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1028 (C.D. Cal. 2015) (citing *Heliotrope Gen., Inc. v. Ford Motor Co.,* 189 F.3d 971, 981 n.18 (9th Cir. 1999)).[7] The reason is that "often, the accuracy of information in newspaper articles and press releases cannot be readily determined and/or can be reasonably questioned." *Id.*

---

[6] Although Federal Agency Defendants refer to Ms. Rueda's use of proposed exhibit 4, DACA Statistics, that exhibit should be struck as well. In addition to constituting impermissible extra-record evidence, the statistics are dated September 2019, nearly two years after the date Ms. Rueda's DACA request was denied, and thus may not be considered by the Court.

[7] The "availability" of the information related to Ms. Rueda's protest activity is not at issue, only whether she can establish the USCIS adjudicator's actual knowledge. *See* F.A. Defs' Mot. at 14-15; *Karam,* 352 F.3d at 1194.

2:18-cv-9276- DMG-PLA

Even if Ms. Rueda had made a showing that the Administrative Record is subject to supplementation, she makes only a conclusory comment here that "[t]he existence and publication of the following documents and facts may be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." ECF No. 67-4 at 2. Where the facts in each article and tweet are not "generally known" and likely subject to considerable dispute, it would be entirely inappropriate for the Court to take judicial notice of any of these exhibits.[8]

Furthermore, the Court should strike from Ms. Rueda's motion for summary judgment any reference to these exhibits, which she cites to liberally to establish factual circumstances not supported by the Administrative Record. *See, e.g.,* Mot. at 2 ("The evidentiary record shows instead that Defendants repeatedly targeted for adverse action those who exercised their First Amendment rights in support immigrants [sic]."); *id*. at 4-5 ("B. Defendants' Animus Towards Immigration Activists"); *id*. at 6, 7, 20, 23-24; *Gerritsen,* 112 F. Supp. 3d at 1029 ("Finally, and most fundamentally, to the extent the court *can* take judicial notice of press releases and news articles, it can do so only to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'") (court's emphasis) (citing *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010)). Where the exhibits may not be submitted either to supplement the Record or to prove the truth of their assertions, the Court should strike them and all references to them.

Similarly, Ms. Rueda's new declaration is largely repetitive of assertions that exist in the Record and briefing before the Court, with the exception of the last paragraph,

---

[8] While a court may generally take judicial notice of other court proceedings, the Court should strike proposed exhibit 68, a copy of the amended complaint in *Ravidath Lawrence Ragbir et al. v. Ronald D. Vitiello et al.*, S.D.N.Y 1:18-cv-01159-PKC, because Ms. Rueda fails to demonstrate that the Record warrants supplementation and because Ms. Rueda makes no citation to the exhibit in her motion, making it superfluous under any standard.

which attempts to bolster the truthfulness of her new exhibits. *See* ECF No. 67-3 ¶ 17. The declaration should be struck in its entirety for post-dating the DACA denial decision at issue, for Ms. Rueda's failure to show that the Administrative Record needs to be supplemented, and because the Court may not take judicial notice of controversial facts submitted for their truth.

## CONCLUSION

In sum, Ms. Rueda has failed to establish jurisdiction for this Court to consider her challenge to USCIS's discretionary denial of her DACA request. Congress expressly precluded such jurisdiction through 8 U.S.C. § 1252(g). If the Court concludes it has jurisdiction to adjudicate Ms. Rueda's claim, the Court should find that, based on the evidence in the Administrative Record, Ms. Rueda has not established animus as the but-for causation of her DACA denial, either as retaliation for her political activism or in violation of a fundamental right to live with her family. For these reasons, the Court should deny Ms. Rueda's motion for summary judgment and grant Federal Agency Defendants summary judgment.

2:18-cv-9276- DMG-PLA

DATED: May 15, 2020

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

JEFFREY S. ROBINS
Deputy Director

Respectfully Submitted,

*/s/ James J. Walker*
JAMES J. WALKER
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Counsel for Federal Agency Defendants*

17

2:18-cv-9276- DMG-PLA