JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Deputy Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 616-1246
Fax: (202) 305-7000
Email: jeffrey.robins@usdoj.gov
JAMES J. WALKER
Trial Attorney
*Counsel for Federal Agency Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA SARAHI RUEDA VIDAL, | Case No. 2:18-cv-9276- DMG-PLA |
| Plaintiff, | **FEDERAL AGENCY DEFENDANTS' [PROPOSED] STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | **Judge**: Hon. Dolly M. Gee **Courtroom**: 8C **Hearing**: Friday, June 12, 2020 **Time**: 9:30am |
| Defendants. | |

**PROPOSED STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**

Federal Agency Defendants provide this statement of disputed facts in response to Ms. Rueda's submission of her statement of undisputed facts (ECF No. 67-2), in compliance with Section 5.i. of Judge Gee's Initial Standing Order. However, Federal Agency Defendants renew their concern that a statement of proposed disputed facts is inconsistent with the Court's role in deciding a summary judgment motion on an agency action. As explained in Federal Agency Defendants' motion briefing, in the context of a challenge to an agency action, summary judgment is a question of law limited to review of the administrative record, and there are no facts in dispute. *Occidental Engineering Co. v. INS,* 753 F.2d 766, 769 (9th Cir. 1985). Instead, the agency is the finder-of-fact and the district court functions as an appellate body, deciding only whether, as a matter of law, the agency was permitted to make the decision it made. *Id.*; *Park Hill Sch. Dist. v. Dass,* 655 F.3d 762, 768 (8th Cir. 2011); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 443–44 (7th Cir. 1990) (citing *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44 (1985)).

| No. | Rueda's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 1. | The DACA program's purpose is to protect "certain young people who were brought to this country as children and know only this country as home [because] these individuals lacked the intent to violate the law" when they were brough to this country. [SIC]<br><br>Request for Judicial Notice In Support of Motion for Summary Judgment ("RJN") Ex. 1 [DACA Memo], at p. 1. | Disputed to the extent that DACA confers no protection to recipients. *See* DACA Memo at 3. |

2:18-cv-9276- DMG-PLA

| 2. | Among other benefits of the program, DACA recipients are permitted to remain in the United States for specific renewable periods of time and are eligible to receive employment authorization.<br><br>*Id.*; 8 C.F. R. § 274a.12(c). | Disputed to the extent that DACA recipients are eligible to *apply* for employment authorization, but still must establish eligibility to receive it.<br><br>8 C.F. R. § 274a.12(c) ("An alien within a class of aliens described in this section must apply for work authorization. *If authorized*, such an alien may accept employment . . .") |
|---|---|---|
| 3. | The DACA Memo that established the program set forth the following criteria for eligibility. An applicant must show she (1) arrived in the United States before age 16; (2) has five years continuous residence in the United States; (3) meets certain educational or military service requirements; (4) has no significant criminal convictions and does not "otherwise pose a threat to national security or public safety"; and (5) is younger than 30.<br><br>RJN Ex. 1 [DACA Memo], at p. 1 | Undisputed. |
| 4. | The DACA Memo directs that the Government "should" defer action "against individuals who meet the above criteria."<br><br>RJN Ex. 1 [DACA Memo] at pp. 2-3. | Undisputed. |
| 5. | The "USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the [DACA Memo], but still had his or her application denied based solely upon discretion."<br><br>RJN Ex. 3 [Rescission Memo], at fn 1. | Undisputed to the extent that the Rescission Memo is accurately quoted. |

2

| 6. | DACA was established in 2012. DACA Memo.<br><br>RJN Ex. 1 [DACA Memo]. | Undisputed. |
|---|---|---|
| 7. | In 2017, the Trump administration sought to rescind DACA, but that rescission was enjoined by several courts, including the Ninth Circuit.<br><br>*See Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 510 (9th Cir. 2018); RJN Ex. 3 [Rescission Memo]. | Undisputed. |
| 8. | In March 2017, after Daniela Vargas spoke in favor of DACA at a news conference, it was reported she "was arrested in what Immigration and Customs Enforcement called a 'targeted immigration enforcement action.'"<br><br>RJN Ex. 59. | Disputed as impermissible extra-record evidence, subject to reasonable dispute, and submitted for the truth asserted.<br><br>*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1028-29 (C.D. Cal. 2015); FRE 201(b). |
| 9. | In June 2017, two Migrant Justice activists were reportedly arrested by ICE officers after they participated in a demonstration on behalf of immigrant farmworkers.<br><br>RJN Ex. 62. | Disputed as impermissible extra-record evidence, subject to reasonable dispute, and submitted for the truth asserted.<br><br>See response to Fact #8. |

3

2:18-cv-9276- DMG-PLA

| 10. | In December 2017, after Baltazar Aburto Gutierrez was quoted in local newspapers about his girlfriend's deportation, an ICE officer reportedly arrested him and told him "My supervisor asked me to come find you because of what appeared in the newspaper."<br><br>RJN Ex. 63. | Disputed as impermissible extra-record evidence, subject to reasonable dispute, and submitted for the truth asserted.<br><br>See response to Fact #8. |
|---|---|---|
| 11. | In January 2018, Amer Othman Adi, began a well-publicized hunger strike while in ICE custody. The House Judiciary Committee passed a private bill to allow him to remain in the country, but ICE officers reportedly deported him before the bill could become law.<br><br>RJN Ex. 66. | Disputed as impermissible extra-record evidence, subject to reasonable dispute, and submitted for the truth asserted.<br><br>See response to Fact #8. |
| 12. | Rueda was brought to this country from Mexico in 2001, when she was six years old.<br><br>Declaration of Claudia Rueda In Support of Her Motion for Summary Judgment ("Rueda Decl.") ¶ 2. | Undisputed pursuant to CAR 0092.<br><br>Disputed because the new declaration cited here is extra-record evidence created after the agency decision at issue, which prevents the Court from considering it.<br><br>*Tri-Valley CARES v. United States Department of Energy*, 671 F.3d 1113, 1130-31 (9th Cir. 2012). |
| 13. | Rueda came to the United States with her mother, Teresa Vidal Jaime.<br><br>Rueda Decl. ¶ 2. | Undisputed pursuant to CAR 0092.<br><br>Disputed per response to Fact #12. |

4

2:18-cv-9276- DMG-PLA

| | | |
|---|---|---|
| 14. | Rueda is a college graduate. Rueda Decl. ¶ 4. | Disputed as a fact not in the Administrative Record.<br><br>Disputed per response to Fact #12; CAR 0092 ("I am currently a full-time student at California State University Los Angeles (CSU LA)."). |
| 15. | Rueda worked with the Los Angeles Immigrant Youth Coalition and the California Immigrant Youth Justice Alliance.<br><br>Rueda Decl. ¶ 5. | Undisputed pursuant to CAR 0092.<br><br>Disputed per response to Fact #12. |
| 16. | Rueda has conducted outreach and education programs for undocumented youth, including Know Your Rights workshops, and built relationships with Los Angeles area high schools.<br><br>Rueda Decl. ¶ 5. | Undisputed pursuant to CAR 0092.<br><br>Disputed per response to Fact #12. |
| 17. | Prior to the events of this litigation, Rueda's only encounters with law enforcement consist of two arrests at peaceful protests.<br><br>Rueda Decl. ¶ 15. | Undisputed pursuant to CAR 0154.<br><br>Disputed per response to Fact #12. |

| | | | |
|---|---|---|---|
| 18. | In April 2017, Rueda garnered media attention and the backing of community and political leaders in support of her successful campaign protesting the arrest and detention of her mother by Defendants' immigration officers. After Rueda's mother was arrested on April 24, 2017, she led a rally to free her mother, set up a call line for people to contact ICE and CBP on her mother's behalf, spoke with the media in protest of her mother's arrest, and attended the Sherriff's Civilian Oversight Commission where she again publicly spoke out against her mother's arrest.<br><br>Rueda Decl. ¶¶ 6-7; RJN Ex. 5 - 11. | Disputed as to the characterizations and claims subject to reasonable dispute.<br><br>Disputed per responses to Fact #8 and #12. | |
| 19. | Less than one week after Ms. Rueda's campaign helped secure her mother's release, Defendants' plainclothes officers surrounded and arrested Rueda in the early morning outside of her home.<br><br>Rueda Decl. ¶¶ 8-9 | Undisputed pursuant to CAR 0381-82.<br><br>Disputed per response to Fact #12. | |
| 20. | Defendants held her in detention from her family for approximately three weeks.<br><br>*Id.* ¶ 12. | Undisputed pursuant to CAR 0154.<br>Disputed per response to Fact #12. | |
| 21. | On May 18, 2017, the Los Angeles Times published an article about Rueda titled "Border Patrol detains 22-year-old Cal State L.A. student activist; her lawyer says it is retaliation," available at https://www.latimes.com/local/lanow/la-me-ln- immigration-activist-20170518-story.html<br><br>RJN Ex. 12 | Disputed as impermissible extra-record evidence, subject to reasonable dispute, and submitted for the truth asserted.<br><br>Disputed per response to Fact #8. | |

6

| | | |
|---|---|---|
| 22. | While Rueda was detained, a "Free Claudia" photo went viral on the internet, and media outlets picked up and followed the story of Rueda's unjust detention.<br><br>Rueda Decl,. ¶ 14; RJN Exs. 15- 21; 58. | Disputed as impermissible extra-record evidence, subject to reasonable dispute, and submitted for the truth asserted.<br><br>Disputed per response to Facts #8 and #12. |
| 23. | On June 9, 2017, an Immigration Judge—citing the high likelihood that Rueda's then-forthcoming DACA application would be granted and the lack of any evidence to justify her detention—released her without bond.<br><br>Federal Agency Defendants Certified Administrative Record ("CAR") 0154-55, 0173. | Undisputed. |
| 24. | The Immigration Judge found she was not a flight risk or threat to public safety and described her as a person with "humility, respect, and passion," who is "inspiring … based on her pursuit of education, advocacy for gender and racial justice, and her ties to the community," and who is "not a danger to the community." The Immigration Judge described Rueda as a "prime candidate" for DACA whose application was "likely to succeed."<br><br>CAR 141, 0154-55, 0165-70. | Undisputed. |

2:18-cv-9276- DMG-PLA

| 25. | Rueda's bond determination application was supported by 45 letters from elected officials, local and national organizations, leaders and professors at Cal. State L.A., Roosevelt High School teachers, and other leaders and community members describing Rueda as a highly valued asset to the community.<br><br>CAR 0189-295. | Undisputed to the extent that there are letters in the Administrative Record advocating for Ms. Rueda's release from detention. |
|---|---|---|
| 26. | Eighty-seven immigrant, civil rights, faith based, and legal service providers signed a letter in support of Rueda and asking for her release.<br><br>CAR 0202-216 | Undisputed. |
| 27. | On June 6, 2017, 84 faith leaders wrote a letter urging Rueda's release.<br><br>CAR 0217-230 | Undisputed. |
| 28. | On May 22, 2017, Pablo Alvarado, the Executive Director of the National Day Laborer Organizing Network, wrote a letter in support of Rueda's release.<br><br>CAR0231-32 | Undisputed. |
| 29. | On May 23, 2017, Pedro Rios, the director of the US-Mexico Border Program, wrote a letter in support of Rueda's release, saying that she is "well-respected and highly regarded…with demonstrative good moral character and judgment."<br><br>CAR 0233 | Undisputed. |

2:18-cv-9276- DMG-PLA

| | | | |
|---|---|---|---|
| 30. | On May 21, 2017, Luis M. Borjon, coordinator of the Dreamers Resource Center, wrote a letter in support of Rueda's release, saying that her "ability to finish school and complete her dreams will only make all of us stronger" and describing Rueda as one of "our best and brightest." <br><br> CAR 0234 | Undisputed. |
| 31. | On May 2, 2017, Paulina Olvera, Organizer, Immigrant Youth Coalition, wrote a letter in support of Rueda's release. <br><br> CAR 0235 | Undisputed. |
| 32. | On May 21, 2017, Sandy Valenciano, statewide Coordinator Director, California Immigrant Youth Justice Alliance, wrote a letter in support of Rueda's release, calling Rueda "an important person not just in her Los Angeles community but throughout the state of California." <br><br> CAR0236 | Undisputed. |
| 33. | On May 5, 2017, the North Bay Immigrant Youth Union wrote a letter in support of Rueda's release, saying that Rueda is "a kind and selfless individual who constantly is considering the needs of her family, friends, and community." <br><br> CAR 0238 | Undisputed. |

9

2:18-cv-9276- DMG-PLA

2Case 2:18-cv-09276-DMG-PLA   Document 73-1   Filed 05/15/20   Page 11 of 24   Page ID
#:2383

| 34. | On May 21, 2017, Ericka Verba, Director of Latin American Studies at California State University, Los Angeles, wrote a letter in support of Rueda's release, stating that Rueda "is a constructive and caring person who strives to give back to her community" and "is a true representative of all that is good in her generation." CAR0241 | Undisputed. |
|-----|-----|-----|
| 35. | On May 5, 2017, Julie Cortez, an English teacher at Theodore Roosevelt High School, wrote a letter in support of Rueda's release, stating that Rueda is "a strong leader [and] also a strong individual." CAR0249 | Undisputed. |
| 36. | On May 20, 2017, Alice Im, English Department Chairperson at Roosevelt High School, wrote a letter in support of Rueda's release, saying that Rueda is "the type of citizen that any nation would be blessed to have—kind, compassionate, intelligent, hardworking, persistent, and empowered." CAR0250 | Undisputed. |
| 37. | On May 22, 2017, Jason Victor Yan, a teacher at Roosevelt High School, wrote a letter in support of Rueda's release. CAR0251 | Undisputed. |

10

2:18-cv-9276- DMG-PLA

| | | |
|---|---|---|
| 38. | On May 20, 2017, Mariana E. Ramirez, History teacher & department chair at Roosevelt High School, wrote a letter in support of Rueda's release, stating that Rueda's "dedication to her community is exceptional." <br><br> CAR0253 | Undisputed. |
| 39. | On June 5, 2017, Aleida Perez, a math and Spanish teacher at Roosevelt High School, wrote a letter in support of Rueda's release. <br><br> CAR0254 | Undisputed. |
| 40. | On June 5, 2017, Lakhbir Bamotra, teacher of 12th grade English at Roosevelt High School, wrote a letter in support of Rueda's release, stating that Rueda is "a hardworking, community minded student." <br><br> CAR0255 | Undisputed. |
| 41. | On June 5, 2017, Joan Sullivan, CEO of Partnership for Los Angeles Schools, wrote a letter in support of Rueda's release, saying that Rueda has "outstanding character." <br><br> CAR0256 | Undisputed. |
| 42. | On June 5, 2017, Kent Wong, Vice President of the California Federation of Teachers, wrote a letter in support of Rueda's release, calling her "an incredible asset to our community." <br><br> CAR0257 | Undisputed. |
| 43. | Rueda filed her DACA application on June 16, 2017. <br><br> CAR0023 | Undisputed. |

| 44. | Rueda's DACA application contained letters of support from numerous community and political leaders, including federal and local lawmakers, university administrators, and professors<br><br>CAR 0054-60, 81-84, 93-95 | Disputed. The letters noted here are not in support of Ms. Rueda's DACA request, but are letters advocating her release from detention. |
|---|---|---|
| 45. | On June 15, 2017, United States Senator Kamala Harris wrote a letter to the Director of U.S. Immigration and Customs Enforcement, Thomas Homan, in support of Rueda's DACA application. Senator Harris stated that "Claudia embodies those fundamental ideals that define who we are as Americans," "is a treasured member of her community," and "exhibits tremendous character."<br><br>CAR 0054 | Undisputed. |
| 46. | On May 21, 2017, Dr. Ericka Verba, director of Latin American Studies at California State University, Los Angeles, wrote a letter in support of Rueda, "urg[ing] that she be allowed to remain in the United States so that she may continue her education," and explaining that Rueda is "exceptionally gifted and hard-working."<br><br>CAR 0057 | Undisputed. |

12

2:18-cv-9276- DMG-PLA

| 47. | On May 24, 2017, Untied States Representative Karen Bass wrote a letter in support of Rueda's DACA application, which described her as a "valuable member and leader in her community" who would have a "positive impact … if she were allowed to remain in the United States." <br><br> CAR 0055; CAR 0197 | Undisputed. |
|---|---|---|
| 48. | On May 24, 2017, Los Angeles City Council Member Gilbert A. Cedillo wrote a letter in support of Rueda's release from custody, which stated she "has demonstrated intelligence and heart that has been invaluable to her community" and "is deeply respected by her peers and the broader community." <br><br> CAR 0056; CAR 0200 | Undisputed. |
| 49. | On May 21, 20187, Dr. Alejandra Marchevsky, Associate Chair of the Department of Liberal Studies and Professor of women's, gender, and sexuality studies at California State University, Los Angeles, wrote a letter in support of Rueda's release, stating that she "exemplifies the qualities of character that we celebrate in our nation" and "embodies the best promise for our future." <br><br> CAR 0058; CAR0245 | Undisputed. |

13

2:18-cv-9276- DMG-PLA

| | | |
|---|---|---|
| 50. | On May 21, 2017, Dr. Beth F. Baker, Professor of anthropology, California State University, Los Angeles, wrote a letter in support of Rueda in which she stated that Rueda is "a beloved member of our campus community" and "an upstanding citizen" who is "kind, hard-working, committed to helping others, and family and community oriented," and is "the very kind of person I want in the world where my children are growing up."<br><br>CAR 59; CAR 247 | Undisputed. |
| 51. | On May 23, 2017, Los Angeles Mayor Eric Garcetti wrote a letter in support of Rueda's DACA application, stating that Rueda is "just the sort of 'Dreamer' for whom Deferred Action for Childhood Arrivals (DACA) was created.<br><br>Brought to our country as a young child, she has built a successful life here as a student leader and activist in Los Angeles."<br><br>CAR 0081; CAR 0198 | Undisputed. |
| 52. | On May 24, 2017, Untied States Representative Karen Bass wrote a letter in support of Rueda's DACA application, stating that Rueda "is a valuable member and leader in her community. She cares deeply about issues that affect her community and has worked tirelessly to make changes where she sees injustice."<br><br>CAR 0055; CAR 0197 | Undisputed. |

14

2:18-cv-9276- DMG-PLA

| | | |
|---|---|---|
| 53. | On June 6, 2017, Los Angeles Supervisor Hilda L. Solis wrote a letter in support of Rueda's DACA application, stating that "I am very concerned by the appearance that immigration enforcement agencies may be targeting individuals who are involved in immigrant rights activism." <br><br> CAR 0082; CAR 0202 | Undisputed. |
| 54. | On May 23, 2017, William A. Covino, President of California State University, Los Angeles, wrote a letter in support of Rueda's DACA application. <br><br> CAR 83; 0239 | Disputed. CAR 0083 and 0239 are copies of the same letter written on May 23, 2017, and make no mention of DACA. |
| 55. | On May 20, 2017, Enrique C. Ochoa, professor of Latin American studies and history at California State University, Los Angeles, wrote a letter in support of Rueda's DACA application, stating that Rueda is "a vital member of the Latin American Studies community here on campus." <br><br> CAR 0084; CAR243 | Disputed. CAR 0084 and 0243 are copies of the same letter written on May 20, 2017, and make no mention of DACA. |
| 56. | On May 23, 2017, Los Angeles City Councilmember Jose Huizar wrote a letter in support of Rueda's release from custody. <br><br> CAR 0093; 0199 | Undisputed. |

2:18-cv-9276- DMG-PLA

| | | |
|---|---|---|
| 57. | On May 24, 2017, Los Angeles Supervisor Sheila Kuehl wrote a letter in support of Reuda's request for prosecutorial discretion and release, stating that Rueda "is a dedicated advocate and has earned, through her words and her actions, genuine and profound respect from people all around the community." CAR 0094; CAR 0201 | Undisputed. |
| 58. | On May 23, 2017, Victor Narro, Project Director at University of California Los Angeles, wrote a letter in support of Rueda's DACA application, saying that Rueda is "an invaluable member of her communities." CAR0095; CAR 0258-59 | Undisputed. |
| 59. | On June 29, 2017 Border Patrol Agent Holmes sent an unsolicited email to the "DACA Terminations" email address at USCIS. CAR 0122. | Disputed as to the characterization of "unsolicited." Agent Holmes indicated that he sends emails to that email address regarding DACA recipients and applicants as part of his job, thus not unsolicited. CAR 0122. |
| 60. | Agent Holmes sent follow up emails to his June 29, 2017 email, on October 3, 2017, October 11, 2017, and October 19, 2017. CAR 0117-22. | Disputed. Agent Holmes' emails of October 11 and 19, 2017, are mere "Thank you" emails in response to communications *to* him. They are not "follow up" emails that he initiated, as implied here. CAR 0117-18. |
| 61. | USCIS issued a memorandum recommending denial of Rueda's DACA application. CAR 0123-24. | Undisputed. |

2:18-cv-9276- DMG-PLA

| 62. | The stated reason for the denial was that "[a]lthough there is no evidence that requestor has ever been directly involved in her parents' [alleged criminal] operation, she has lived with them into adulthood," and "CBP classifies her as an associate to the Rueda TCO by virtue of familial relation in [REDACTION]." <br><br> CAR 0123-24 | Undisputed. |
|---|---|---|
| 63. | When denying her DACA application, Defendants did not contend that Rueda herself posed a threat to national security or public safety. <br><br> CAR 0109, 0123-24. | Undisputed. |
| 64. | Under the DACA SOP, a denial based on public safety concerns would have contained the language "you do not warrant a favorable exercise of prosecutorial discretion because of public safety concerns." <br><br> RJN Ex. 2 [DACA SOP], at 105 & Appx. F. | Undisputed. |
| 65. | Rueda's denial did not contain language indicating that the denial was based on public safety concerns. <br><br> CAR 0109. | Undisputed. |

17

| 66. | The Government's stated reason for denying Rueda's DACA application is that the Government purports to believe her parents are part of a criminal organization.<br><br>CAR 0124 | Disputed.<br><br>The Record shows that Ms. Rueda's father and mother are part of a criminal drug organization, it is not a belief. Ms. Rueda argues only that her mother is innocent.<br><br>*See* First Amended Complaint at ¶ 77 ("On April 24, 2017, Ms. Rueda's mother, Teresa Vidal-Jaime, was swept up as a collateral arrest during a criminal investigation of another member of their household. Ms. Vidal-Jaime was not a person of interest in the criminal investigation.").<br><br>CAR 0393-94 ("This interdiction, where 15 kilogram-sized packages of cocaine and approximately $630,000 in U.S. currency was, seized, occurred at [redacted], in the Boyle Heights neighborhood of Los Angeles, CA. [redacted]. [Dad] and [mom] were arrested during this event."); CAR 0397 ("Claudia RUEDA-Vidal is the daughter of [redacted] and [redacted], who were residing at [redacted] Apt [redacted] Los Angeles, CA, the residence where the arrests and seizure of $630,000.00 U.S. Dollars and the 33 lbs of cocaine were made. [. . .] Claudia was living at [redacted], sleeping on the couch, and arrived on scene when Border Patrol arrested her mother, father, and uncle."). |
| --- | --- | --- |

18

| | | |
|---|---|---|
| 67. | The Government denied her DACA application, on the stated reasoning that "[a]lthough there is no evidence the requestor has ever been directly involved in her parents' [alleged] TCO operation, she has lived with them into adulthood."<br><br>CAR 0124. | Undisputed. |
| 68. | The Government "classifies [Rueda] as an associate" of criminal activity or an organization "by virtue of her familial relation" and denied her DACA application on that basis.<br><br>*Id.*; *see also* Dkt. No. 48, at 22-23 (Defendants "submitted email correspondence showing that USCIS denied Plaintiff's DACA application **because of** Plaintiff's decision to live with her family.") | Undisputed as to CAR 0124.<br><br>Disputed as to the Court's characterization of the facts, which is not itself a fact in the Administrative Record, and is subject to dispute. |
| 69. | The Government further stated that "Since the requestor has lived into adulthood at both addresses being targeted by the investigation, it is very likely that she is aware of her parents' criminal activities and is a beneficiary of the profits from their TCO."<br><br>CAR0124. | Undisputed. |
| 70. | As of September 30, 2019, the Government approved 2,508,958 DACA applications after case review, denied 98,868, and 38,595 were still pending.<br><br>RJN Ex. 4 [DACA Stats.], at p. 2. | Disputed.<br><br>The statistics cited here constitute extra-record evidence created after the agency decision at issue, which prevents the Court from considering it.<br><br>See response to Fact #12. |

2:18-cv-9276- DMG-PLA

| 71. | The administrative record does not contain any examples of individuals, other than Rueda, purportedly denied DACA because of the actions of their parents or their association with their parents.<br><br>CAR0001-0409. | Undisputed. |
|---|---|---|

## **Conclusions of Law**

1.      "When [governmental] conduct burdens a fundamental right or makes a distinction based on a suspect classification, the court employs strict scrutiny review." *Spirit of Aloha Temple v. Cty. of Maui*, 409 F. Supp. 3d 889, 910 (D. Haw. 2019) (citing *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002) ("We apply strict scrutiny if the governmental enactment targets a suspect class or burdens the exercise of a fundamental right.") (internal quotation omitted)).

Undisputed to the extent that the case law is accurately cited.

2.      Thus, government interference with the right of familial relations is subject to strict scrutiny.  *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978); *Chi Iota 7' Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York*, 502 F.3d 136, 143 8  (2d Cir. 2007).

Undisputed to the extent that the case law is accurately cited.

3.      The "fundamental liberty interest" protected under Equal Protection and substantive due process in familial relations protects "the companionship and society of [a parent] and his or her child." *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001); *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) ("The substantive due process right to family integrity or to familial association is well established.").

Undisputed to the extent that the case law is accurately cited.

4.      There is no compelling interest in punishing children for the alleged wrongdoing of their parents. To the contrary, "if any fundamental assumption underlies our system, it is that guilt is personal and not inheritable." *Korematsu v. United States*, 323 U.S. 214, 243 (1944) (Jackson, J., dissenting); *Plyler v. Doe*, 457 U.S. 202, 220 (1982) ("Even if the State found it expedient to control the conduct of adults by acting against their children, legislation directing the onus of a parent's misconduct against his

2:18-cv-9276- DMG-PLA

children does not comport with fundamental conceptions of justice.") (emphasis added).
Thus, Defendants' stated reason for denying Rueda's DACA application does not serve
any compelling or even legitimate government interest.

Disputed to the extent that Ms. Rueda asserts legal arguments in support of her
claims instead of conclusions of law.

5.     Under the narrow tailoring aspect of strict scrutiny analysis, the state's
action "must advance a compelling state interest by the least restrictive means available."
*Bernal v. Fainter*, 467 U.S. 216, 219 (1984) (internal quotation omitted). Denying
Rueda's DACA application was not the least restrictive means for redressing wrongs
allegedly committed by Rueda's parents.

Disputed to the extent that Ms. Rueda asserts legal arguments in support of her
claims instead of conclusions of law.

6.     The Court has the authority and obligation to review Defendants'
unwarranted interference with Rueda's right to associate with her family. *Washington v.
Trump*, 847 F.3d 1151, 1161 (9th Cir. 2017) ("[U]nreviewability … runs contrary to the
fundamental structure of our constitutional democracy.").

Disputed to the extent that Ms. Rueda asserts legal arguments in support of her
claims instead of conclusions of law.

7.     A plaintiff may establish a First Amendment retaliation claim if (1) she
engaged in constitutionally protected activity, (2) she suffered adverse action that would
chill an ordinary person, and (3) there was a substantial causal relationship between the
protected activity and the adverse action. *Blair v. Bethel Sch. Dist.*, 608 11    F.3d 540,
543 (9th Cir. 2010).

Undisputed to the extent that the case law is accurately cited.

8.     "[C]ausation is under stood to be but-for causation." *Hartman v. Moore*, 547
U.S. 250, 260 (2006). "[U]pon a prima facie showing of retaliatory harm, the burden
shifts to the defendant official to demonstrate that even without the impetus to retaliate he
would have taken the action complained of …" *Id.*

Undisputed to the extent that the case law is accurately cited.

9.     Rueda's campaign to secure the release of her mother was constitutionally
protected activity of the highest order.

Disputed to the extent that Ms. Rueda asserts legal arguments in support of her
claims instead of conclusions of law.

10.    The adverse action Rueda suffered as a result of her protected activity would
chill an ordinary person. *Mendia v. Garcia*, No. 10-CV-03910-MEJ, 2016 WL 2654327,

21

2:18-cv-9276- DMG-PLA

at *9 (N.D. Cal. May 10, 2016).

      Disputed to the extent that Ms. Rueda asserts legal arguments in support of her claims instead of conclusions of law.

      11.    Rueda has presented sufficient evidence to raise an inference that the adverse actions against Rueda were a result of her constitutionally protected activity, which Defendants have not rebutted.

      Disputed to the extent that Ms. Rueda asserts legal arguments in support of her claims instead of conclusions of law.

2:18-cv-9276- DMG-PLA

1

DATED: May 15, 2020                    Respectfully Submitted,

2

JOSEPH H. HUNT                         */s/ James J. Walker*

3

Assistant Attorney General             JAMES J. WALKER
                                       Trial Attorney

4

WILLIAM C. PEACHEY                     U.S. Department of Justice

5

Director                               Civil Division
                                       Office of Immigration Litigation

6

JEFFREY S. ROBINS                      District Court Section

7

Deputy Director                        P.O. Box 868, Ben Franklin Station
                                       Washington, D.C. 20044

8

                                       Phone: (202) 532-4468

9

                                       Fax: (202) 305-7000

10

                                       Email: james.walker3@usdoj.gov

11

                                       *Counsel for Federal Agency Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

2:18-cv-9276- DMG-PLA